Donald Charles Schwartz, Esq. (SBN 122476)
Law Offices of Donald C. Schwartz
7960 Soquel Drive, No. 291
Aptos, CA  95003
831-331-9909; Facsimile 815-301-6556
Email: triallaw@cruzio.com

Attorney for Plaintiffs
Schwartz Foundation, Donald Charles Schwartz
Michael L. Osterberg, Honorable Willie L. Brown, Jr.,
Charles P. Schwartz, III, Paul David Schwartz,
David L. Schwartz

UNITED STATES DISTRICT COURT,

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCHWARTZ FOUNDATION, DONALD CHARLES SCHWARTZ, MICHAEL L. OSTERBERG, WILLIE L. BROWN, JR., CHARLES P. SCHWARTZ, III, PAUL DAVID SCHWARTZ, DAVID RICHARD SCHWARTZ, <br><br> Plaintiffs, <br><br> vs. <br><br> MARGOT WOOD SCHWARTZ, an individual; and DOES 1 through 50, inclusive, <br><br> Defendants. | No. 23-cv-06086 <br><br> **PLEADINGS AND ORDERS IN RESPONSE TO REQUEST FOR REMOVING PARTIES TO PROVIDE ADDITIONAL INFORMATION** <br><br> Volume 1 - Partial |

Removing Parties Schwartz Foundation, Donald Charles Schwartz, Michael L. Osterberg, Honorable Willie L. Brown, Jr., Charles P. Schwartz, III, Paul Schwartz, David Schwartz hereby respond to the Court's Order Requesting Removing Parties to Provide Additional Information (Dkt 8) as follows:

**Pleadings in Case No. 21CV00023**

Exhibit 1: Removing Party Complaint

1

**Pleadings in Case No. 21CV00416**

Exhibit 2: Removing Parties Cross-Complaint

Exhibit 3: Defendant Margot Schwartz Complaint

**Substantive Motions and Orders in Cases No. 21CV00416 and 21CV00032**

Exhibit 4: Protective Order Stopping Margot Schwartz from Selling Eden Roc
      Apartments

Exhibit 5: Protective Order Stopping Margot Schwartz from Using Schwartz Foundation
      Funds for her Attorneys Fees and Costs

Date: December 13, 2023      */s/ **Donald Charles Schwartz***

                     _____

                     Donald C. Schwartz

                    Attorney for Plaintiffs

        Schwartz Foundation, Donald Charles Schwartz

      Michael L. Osterberg, Honorable Willie L. Brown, Jr.,

Charles P. Schwartz, III, Paul David Schwartz, David L. Schwartz

**EXHIBIT 1**

1  Daniel J. Russo (SBN 77991)
2  MAAS & RUSSO LLP
   521 Georgia Street
3  Vallejo, CA 94590
   Telephone:  (707) 644-4004
4  Facsimile:  (707) 644-7528

5  Attorney for Cross-Complainants
6  DONALD C. SCHWARTZ and
   MICHAEL LEANOR OSTERBERG
7

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
9/23/2021 2:47 PM
Alex Calvo, Clerk
By: Helena Hanson, Deputy

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF SANTA CRUZ**

10

11  SCHWARTZ FOUNDATION, a California        CASE NO.: 21CV00416
    corporation; MARGOT SCHWARTZ, an
12  individual; and NOAH SCHWARTZ, an        **VERIFIED CROSS-COMPLAINT FOR:**
    individual,

13                  Plaintiffs               1)  **FOR DETERMINATION**
                                                 **PURSUANT TO**
14          v.                                    **CORPORATIONS CODE § 5617**

15  DONALD C. SCHWARTZ, an individual;      2)  **DECLARATORY RELIEF**
16  PAUL D. SCHWARTZ, an individual;
    CHARLES P. SCHWARTZ, III, an
17  individual; DAVID RICHARD SCHWARTZ,
    an individual; STEVON S. SCHWARTZ, an
18  individual; and DOES 1-50, inclusive,

19                  Defendants.

20  DONALD C. SCHWARTZ; and MICHEAL
21  LEANOR OSTERBERG,

22                  Cross-Complainants

23          v.

24  MARGOT SCHWARTZ, an individual;
25  NOAH SCHWARTZ, an individual; RABBI
    MORICAI SCHWARTZ, an individual; and
26  ROES 1-50, inclusive,

27                  Cross-Defendants.

28       COME NOW cross-complainants DONALD C. SCHWARTZ and MICHAEL

                                                                              1

LEANOR OSTERBERG (collectively, "Cross-Complainants") and allege against cross-defendants MARGOT SCHWARTZ, NOAH SCHWARTZ, RABBI MORICAI SCHWARTZ, and ROES 1-50, inclusive (collectively, "Cross-Defendants") as follows:

### PARTIES

1.      Donald C. Schwartz is, and at all times herein relevant was, an individual residing in the State of California and in the County of Santa Cruz.  At all times herein relevant Donald C. Schwartz was a Co-Founder of the Schwartz Foundation, a Nonprofit Public Benefit Corporation governed by the California Corporations Code Title 1, Division 2, Part 2 Nonprofit Public Benefit Corporations (Chs. 1-19), and a Member of the Board of Directors of the Schwartz Foundation. Donald C. Schwartz is a State of California licensed attorney with a law practice operating out of Aptos, CA.

2.      Michael Leanor Osterberg is, and at all times herein relevant was, an individual residing in the State of California and in the County of Alameda.  At all times herein relevant Michael Leanor Osterberg was a Member of the Board of Directors of the Schwartz Foundation, a Nonprofit Public Benefit Corporation governed by the California Corporations Code Title 1, Division 2, Part 2 Nonprofit Public Benefit Corporations (Chs. 1-19). Michael L. Osterberg is the Controller of the Aquarium of the Bay and its affiliates.

3.      Margot Schwartz is, and at all times herein relevant was, an individual residing in the State of Wisconsin and in the County of Milwaukee.

4.      Noah Schwartz is, and at all times herein relevant was, an individual residing in the State of Illinois and in the County of Cook.

5.      Cross-defendant Rabbi Mordecai Schwartz is a resident of New York and claims to be a Director of the Schwartz Foundation.

6.      Cross-defendants ROES 1 through ROES 50, inclusive, are fictitious names of unknown cross-defendants sued herein under the provisions of California Code of Civil Procedure § 474. Cross-Complainants are informed and believe, and thereon allege, that each of the fictitiously named Cross-Defendants are responsible in some manner for the occurrences herein alleged, and that Cross-Complainants damages as herein alleged were proximately

2

caused by such cross-defendants. Cross-Complainants will seek leave of Court to amend this Cross-Complaint to set forth the true names and capacities of such cross-defendants when their identities become known.

7.     Cross-Complainants are informed and believe, and thereon allege, that each of the Cross-Defendants herein were, at all times relevant to this action, the agents, employees, representing partners, joint venturers and/or co-conspirators of the remaining Cross-Defendants and acting within the course and scope of that relationship. Cross-Complainants are further informed and believe, and thereon allege, that each of the Cross-Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Cross-Defendants.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10.

9.     Venue is proper because the facts and circumstances giving rise to the allegations in this Cross-Complaint, including the initiation of this action by Plaintiffs, occurred in the County of Santa Cruz, in the State of California.

## FACTUAL ALLEGATIONS

10.     On August 14, 1979 Robert A.D. Schwartz, Cross-Complainant Donald C. Schwartz and Thom R. Picarello signed and had notarized "ARTICLES OF INCORPORATION OF SCHWARTZ FOUNDATION" (the "Articles of Incorporation"). The Articles of Incorporation were filed with the Secretary of State of the State of California on November 14, 1979. A true and correct copy of the Articles of Incorporation filed with the Secretary of State of the State of California are attached hereto as Exhibit 1. This Court has previously taken judicial notice of these Articles of Incorporation.

11.     The Articles of Incorporation, Article V provides "The names and addresses of the persons who are to act in the capacity of directors until the selection of their successors are Robert A.D. Schwartz . . . Donald C. Schwartz . . . Thom R. Picarello[.]" Article VI of the Articles of Incorporation further provides:

3

1

2    "Any action required or permitted to be taken by the Board of Directors under
any provisions of law may be taken without a meeting, if all members of the
3    Board shall individually or collectively consent in writing to such action. Such
written consent or consents shall be filed with the minutes of the proceedings of
4    the Board. Such action by written consent shall have the same force and effect
as the unanimous vote of such directors. Any certificate or other document filed
5    under any provision of law which relates to action so taken shall state that the
action was taken by the unanimous written consent of the Board of Directors
6    without a meeting and that the Articles of Incorporation authorize the Directors
to so act, and such statement shall be prima facie evidence of such authority."
7

8        12.    Article VII of the Articles of Incorporation provides, in pertinent part,
9    that:

10   "The manner of which Directors shall be chosen and removed from office, their
qualifications, powers, duties, compensation, and tenure of office, the manner of
11   filling vacancies on the Board, and the manner of calling and holding meetings
of Directors, shall be stated in the Bylaws."
12

13       13.    On December 1, 1979 Co-Founders Robert A.D. Schwartz, Donald Charles

14   Schwartz and Thom R. Picarello signed "BYLAWS OF SCHWARTZ FOUNDATION"

15   ("Bylaws of Schwartz Foundation") in their capacity as Directors of the Schwartz Foundation.

16   A true and correct copy of the "BYLAWS OF SCHWARTZ FOUNDATION" are attached

17   hereto as Exhibit 2. This Court has previously taken judicial notice of these Bylaws of Schwartz

18   Foundation.

19       14.    On November 4, 1983 a duly authorized "SPECIAL MEETING OF BOARD OF

20   DIRECTORS OF THE SCHWARTZ FOUNDATION" was held in which it was acknowledged

21   that Thom R. Picarello resigned from the Board of Directors of the Schwartz Foundation and

22   Michael Leanor Osterberg was elected to serve on the Board of Directors of the Schwartz

23   Foundation with Co-Founders Robert A.D. Schwartz and Donald C. Schwartz going forward.[1]

24   A true and correct copy of the minutes of the "SPECIAL MEETING OF BOARD OF

25   DIRECTORS OF THE SCHWARTZ FOUNDATION" are attached hereto as Exhibit 3. This

26   Court has previously taken judicial notice of these Minutes of Special Meeting of Board of

27   ───────────────
[1] Thom Picarello was previously Robert A. D. Schwartz's law partner and in 1983 the law
28   partnership had dissolved. Michael Leanor Osterberg was Robert A.D. Schwartz's trusted and loyal
nephew from Robert's second marriage. Mr. Osterberg would also become a C.P.A and attorney.

4

Directors of the Schwartz Foundation.

15.     Article 3 of the Bylaws of Schwartz Foundation pertain to the Directors. Article 3, Section 1 states, in pertinent part that "The corporation shall have three Directors and collectively they shall be known as the Board of Directors." Article 3, Section 1 was amended on November 4, 1983 to provide in pertinent part that "The corporation shall have **four** Directors and collectively they shall be known as the Board of Directors." The Court has taken judicial notice of this change in the Schwartz Foundation Bylaws in recognizing the minutes of the November 4, 1983 meeting.

16.     Article 3, Section 3 of the Bylaws provides, in pertinent part, that: "It shall be the duty of the Directors to: . . . (c) supervise all officers, agents, and employees of the corporation to assure that their duties are performed properly."

17.     Article 3, Section 11 of the Bylaws provides, in pertinent part, that:

"A quorum shall consist of a majority of the Board of Directors. Except as otherwise provided in these Bylaws or in the Articles of Incorporation of the corporation, or by law, no business shall be conducted by the Board at any meeting at which a quorum, as hereinafter defined, is not present[.]"

18.     Article 3, Section 15 of the Bylaws provides, in pertinent part, that:

"Vacancies on the Board of Directors shall exist (1) on the death or resignation of any Director; and (2) whenever the number of authorized directors is increased.
[¶]
Vacancies caused by the death or resignation of a Director, or by an amendment of the Articles of Incorporation or of these Bylaws increasing the number of authorized directors shall be filled by a majority of the remaining Directors."

19.     Article 4 of the Bylaws of Schwartz Foundation is entitled "Officers". Article 4, Section 1 provides, in pertinent part, that "The officers of the corporation shall be a President, a Vice President, a Secretary, and a Treasurer." Article 4, Section 2 provides that:

"Any person may serve as an officer of this corporation. Officers shall be elected by the Board of Directors, at any time, and each officer shall hold office until he or she resigns or is removed or is otherwise disqualified to serve, or until his successors shall be elected and qualified, whichever occurs first."

20.     In 1983 Robert A.D. Schwartz was the president and CEO of Key Source

International, Inc. (aka United Plastics Corporation), United Lighting & Ceiling Corporation, and a partner in Schwartz & Lindheim Electrical Contractors, and the Litrex Corporation. Key Source International, Inc. manufactures custom computer and point of sale keyboards. These other Schwartz businesses engaged profitable operations. Schwartz had made multiple investments in real estate that had yielded significant gains. Robert A.D. Schwartz was also a licensed California attorney, State Bar No. 62699.

21.     As a savvy businessman, entrepreneur and licensed California attorney (in 1973), Robert A.D. Schwartz was readily familiar with how to add or remove directors for the Schwartz Foundation and neither took any action to remove, nor did he ever want to remove, his son Donald C. Schwartz or nephew Michael L. Osterberg as directors of Schwartz Foundation. At no time from 1983 to his death in 2017 did he arrange for a quorum of Schwartz Foundation directors to assemble and elect new and/or different board members of Schwartz Foundation other than Michael L. Osterberg, Donald C. Schwartz and himself, or take steps for such action to be taken by unanimous written consent.

22.     The primary source of funding of Schwartz Foundation was gifts by Robert A.D. Schwartz. Robert A. D. Schwartz passed away in February of 2017. Given his advanced age, his passing was not unexpected. At the point up to the time of his passing the amount of his net worth that had been given to Schwartz Foundation was a very small percentage of his total net worth.

23.     At the time of his death, Robert A.D. Schwartz was the owner of two large apartment buildings that were worth tens of millions of dollars.

24.     During the time that Robert A.D. Schwartz was alive he did not work with his third wife Debbra in any of the family businesses nor did he wish to. Robert Sr. occasionally utilized the assistance of his third wife, Debbra Schwartz, and (possibly) cross-defendant Margot Schwartz to help him with administrative day-to-day functioning of Schwartz Foundation. But, Robert Sr. never made them directors of the Schwartz Foundation (nor could he acting on his own) or called a meeting where a quorum of directors of Schwartz Foundation were present in this regard. Nor did cross-complainants Donald C. Schwartz or Michael L.

Osterberg ever convene any meeting of the Board of Directors of the Schwartz Foundation to elect Debbra Schwartz or Margot Schwartz to the Board of the Schwartz Foundation, nor did cross-complainants ever engage in any meeting of any kind where the topic of adding Debbra Schwartz or Margot Schwartz to the Board of the Schwartz Foundation was ever so much as even discussed or ever mentioned in any way. Neither were Debbra Schwartz or Margot Schwartz were ever identified as 'Directors' on any corporate documents, certainly no corporate documents prepared in compliance with the Articles and Bylaws. Information to the contrary in filings made on behalf of the Schwartz Foundation were not accurate, were perjurious and in violation of the California Corporations and Penal Codes.

25.     After the death of Robert A.D. Schwartz the aforementioned apartment buildings became part of a trust that would provide income to Debbra Schwartz income for the rest of her life. Upon the death of Debbra Schwartz the apartment buildings would become property of the Schwartz Foundation.

26.     On July 31, 2020 Debbra Schwartz passed away unexpectedly. On her deathbed, Debbra Schwartz was seen talking feverishly to her daughter Margot giving instructions on how to handle estate matters.

27.     Then, just days after the death of her mother Debbra Schwartz, while her mother's body still lay in the home where she passed, on or about August 3, 2020 cross-defendant Margot Schwartz attempted to stage an unlawful hostile takeover of the Schwartz Foundation. She fraudulently purported to convene a "Special meeting of RAD Schwartz Foundation" to elect "new board officers." Listing only herself in attendance as "secretary" cross-defendant Margot Schwartz purported to elect cross-defendant Noah Alexander Schwartz as a "Board Director, in the position of Treasurer" without any right of any kind whatsoever in a bald attempt to manufacture standing to bring a lawsuit thereon. Presumably, this was intended to be a Board of Directors meeting, despite the fact Margot had never been elected to serve on the Board. See the unsigned minutes dated August 3, 2020 attached hereto as Exhibit 4.

28.     Margot Schwartz's "board meeting" was not a *bona fide* board meeting because

Cross-Defendant Margot Schwartz had no right to call it under Article 3, Section 7 of the Bylaws. Moreover, the minutes of the meeting reference the wrong corporate name, there was no notice or waiver of notice as required under Article 3, Sections 8, 9, and 10 of the Bylaws, no quorum was present as required under Article 3, Section 11 of the Bylaws, the meeting was not conducted in accordance with Article 3, Section 13 of the Bylaws, and it generally demonstrates a lack of understanding of the distinction between officer and director roles. Assuming, *arguendo*, that Cross-Defendant Margot Schwartz did have the right to call the meeting, it was not a meeting of the Board of Directors of the Schwartz Foundation because it did not include Cross-Complainants, the two surviving Directors of Schwartz Foundation. At no time did Cross-Defendant Margot Schwartz contact, attempt to contact, and/or provide proper notice[2] to Cross-Complainants regarding a "board meeting." For that reason the August 3, 2020 board meeting lacked the requisite a quorum and it was not possible to elect new 'directors.'

29.    Cross-Defendants then instructed the Schwartz Foundation's corporate counsel to prepare a Unanimous Written Consent of the Board of Directors ("UWC") for them that wrongfully purports to ratify, confirm, and approve actions of the Board of Directors of the Schwartz Foundation since 1983. A true and correct copy of the UWC is attached hereto as Exhibit 4. For a number of reasons, the UWC is not a valid unanimous written consent of the Board of Directors of the Schwartz Foundation, first and foremost because it is falsely premised upon cross-defendants being the directors of the Schwartz Foundation. Moreover, the UWC attempts to ratify actions that were never taken and retroactively take actions that cannot be taken retroactively and adopt a new set of Bylaws giving cross-defendants the exclusive right as "designators" to name the directors of the Schwartz Foundation during their lifetimes. The fact that the UWC is not dated or signed further undermines its pretense as a valid corporate action. The purported retroactive actions included authorizing the removal and/or resignation of Donald C. Schwartz as director, Vice President, and Secretary, effective December 31, 1990

---

[2] Or any notice whatsoever.

(i.e. back dated) and the removal and/or resignation of Michael Osterberg as director and Treasurer effective December 31, 1990 (again, back dated). No such removals or resignations took place in 1990, and they cannot be manufactured retroactively. The UWC also purports to recognize Margot Schwartz and Noah Schwartz as directors and officers of the Foundation since 2009 and 2020, respectively (i.e., back dated). In addition to being factually and procedurally incorrect, the UWC eliminates the possibility of oversight and control by a Board of Directors comprised primarily of disinterested directors as required under California Corporations Code Section 5227. Margot Schwartz and Noah Schwartz were circa 3 years old and 1 year old (respectively) in 1990 and couldn't possibly have operated the Schwartz Foundation retroactively.

30.     Cross-defendants' systematic attempt to gain unsupervised, unaccountable control over the Schwartz Foundation extended to interfering with Donald C. Schwartz's efforts as a Director of the Schwartz Foundation to exercise oversight and control over the corporation's assets, including corporate bank and investment accounts, and to engage the Schwartz Foundation's longstanding nonprofit corporate counsel to assist with corrective actions after learning of cross-defendants' improper actions. In fact, after learning of the dispute over the Board of Directors[3], and possible Penal Code 115 responsibility, Margot Schwartz stole all of the corporate records of the Schwartz Foundation (i.e., without proper legal authority) from the bookkeeper and secreted them away – to this day.

31.     The actions described in the paragraph above, and all communications relating to those actions are not subject to any attorney/client privilege because of the crime/fraud exclusion of Evidence Code § 956 that provides:

> "There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."

32.     Cross-Defendants then caused falsified Statement(s) of Information to be filed

---

[3] Donald has contacted corporate counsel, engaged a confidential consultation. On information and belief, that corporate counsel then informed Margot Schwartz of her legal exposure. Margot then rushed out to the bookkeeper's office and stole all the corporate legal records.

9

with the Secretary of State's Office, State of California in violation of Penal Code section 115 claiming themselves as corporate officers of the Schwartz Foundation.

33.     Cross-Defendants initiated the action herein and improperly named Schwartz Foundation as a plaintiff. Schwartz Foundation is not within the class of persons enumerated in Corporations Code § 5617(a). That statute refers only to "any director or member, or by any person who had the right to vote in the election at issue[.]" Moreover, no legitimate corporate action was taken to authorize a complaint being filed on behalf of the Schwartz Foundation. However, in filing such action and naming Donald C. Schwartz and Michael L. Osterberg as defendants in the litigation, together with other members of the deceased co-founder's family, they entitled Mr. Schwartz, Mr. Osterberg, and others, to indemnification by the Schwartz Foundation under California law and Article 3, Section 17 of the Bylaws of the Schwartz Foundation, thereby unjustifiably causing financial loss to the Schwartz Foundation, and damaging the reputations of the Schwartz Foundation, its co-founders, and rightful officers and directors.

34.     Cross-Defendants allege on information and belief that Cross-Defendants, and their attorneys, improperly named Schwartz Foundation as a plaintiff in this action as part of a stratagem to have Schwartz Foundation illegally pay Cross-Defendants'/Plaintiffs' attorney's fees. These actions constitute an embezzlement of funds targeted for charitable purposes.

35.     Cross-complainants offer the Unanimous Written Consent of the Directors of Schwartz Foundation dated July 26, 2021 and attached hereto as Exhibit 5, as the appropriate action to elect officers and directors, and authorize other actions for the governance of the Schwartz Foundation going forward, subject to the relief requested below in light of cross-defendants' actions and interim orders granted in the underlying action.

36.     With the proper enactment of the Exhibit 5 Unanimous Written Consent the Board of Directors of the Schwartz Foundation will consist of Donald Charles Schwartz, Esq., Michael Leanor Osterberg, Paul David Schwartz and the Honorable Mayor Willie Lewis Brown, Jr.

37.     With the filing of its Articles of Incorporation on November 14, 1979, the Schwartz Foundation was founded by Robert A. D. Schwartz, Donald C. Schwartz, and Thom R.

Picarello, each a California attorney, who served as the Schwartz Foundation's initial directors and incorporators. This Court has previously taken judicial notice of the Articles of Incorporation.

38.    The last recorded minutes of a properly conducted meeting or properly executed unanimous written consent of the Board of Directors of the Schwartz Foundation are the minutes of a meeting to elect officers and directors and amend the Bylaws of the corporation on November 4, 1983, for which all the original directors named in the Articles of Incorporation were present namely, Robert A. D. Schwartz, Donald C. Schwartz, and Thom R. Picarello. A true and correct copy attached hereto as Exhibit 3.

39.    The number of directors who serve on the Board of Directors was expanded to four (4) effective November 4, 1983, by unanimous approval of an amendment to Article 3, Section 1 of the Bylaws of the corporation.

40.    Pursuant to Article 3, Section 4 of the corporation's Articles of Incorporation, a director is to hold office until the next annual meeting for the election of directors or until his or her successor is duly elected and qualified.

41.    No new directors have been duly elected since 1983 and no existing director has resigned or legally been removed since 1983, such that Cross-Complainants comprise all the current members of the Board of Directors.

42.    Margot and Noah Schwartz have alleged that the four Schwartz Brothers were estranged from their father through to the time of his death in February 2017. In fact, just the opposite is true. The brothers from Robert A. D. Schwartz' (Robert Sr.) first and second marriages all worked together in the family businesses up to the time of their father's passing in February 2017.  Conversely, Plaintiffs never worked at any of the family businesses – **ever**.

43.    Robert D.D. Schwartz ("Robert, Jr."), the oldest son, while achieving an undergraduate and graduate marketing, accounting and business degrees at the California State University, Hayward and University of California, Berkeley, in the 1970s and through to the time of his father's passing, worked as a payroll employee assisting in the marketing, accounting and management in the family-owned United Plastics Corporation, in Oakland, CA.

Robert Jr. also assisted in the day-to-day management of family-owned real estate, both commercial and residential. In fact, Robert Jr. was literally placed "in charge" of all Schwartz family-owned real estate by Robert Sr. which continued to the time of his father's passing in 2017. Contrary to allegations in the Complaint, at no time did Robert Jr. ever "file a lawsuit" in any court of law or otherwise maintain an adverse claim of any kind against his father or the family business operations. To state otherwise is an absolute falsehood.

44.     Stevon Schwartz ("Stevon"), the second oldest son, while earning two degrees at the University of California, Berkeley (accounting, real estate) assisted in the management and performed all booking and accounting work for the Schwartz family-owned commercial real estate. Stevon also worked as a full-time employee at United Plastics Corporation engaging, among other things, production activities and assisting his brother Paul in the development of special tooling and production machine and processes. Stevon remained a confidant to his father on family matters up until the time of his father's passing in 2017. Contrary to allegations in the Complaint, at no time did Stevon ever "file a lawsuit" in any court of law or otherwise maintain a claim of any kind against his father or the family business operations. To state otherwise is an absolute falsehood.

45.     Paul David Schwartz (Paul), the third oldest son, literally grew-up on the factory floor at the family-owned United Plastics Corporation, enjoying learning to work with his hands in the metal shop, wood shop and plastics shop. A tested genius (likely as was Robert Sr) Paul went on to earn degrees in Industrial Technology (B.S.) and Physics (Minor) at the California State University Chico and a Masters' Degree in Electrical Engineering (M.S.E.E.) at the California State University, San Jose. Spending his summers on the factory floor and, later, as a full-time employee, Paul innovated manufacturing tooling, machinery and processes at United Plastics Corporation. Later, at Key Source International ("KSI"), Paul focused on computer keyboard design and manufacture and headed-up all software design and development. As Robert Sr. had earned a Bachelor of Science in Electrical Engineering (B.S.E.E.) from the Massachusetts Institute of Technology (M.I.T.), Robert Sr. worked with his son Paul on the development of various patents now on file at the United States Patent Office, whereupon they

are both listed. Paul worked with his father at the KSI family-owned business up until the time

of his father's passing in 2017. Contrary to allegations in the Complaint, at no time did Paul

ever "file a lawsuit" in a court of law against his father or the family operated businesses. To

state otherwise is an absolute falsehood.

46.     Cross-defendant Donald C. Schwartz ("Donald") also literally grew-up in the

family businesses. As a child he swept and cleaned around the factory floor machines on

weekends for 10 cents per machine. In his early teens, Donald worked summers for another

family-partnered business, Schwartz & Lindheim Electrical Contractors (the largest electrical

contractor in the East Bay Area). In his later teens and college years, Donald worked with all

three of his older brothers both on the factory floor and in the office (engaged in marketing) at

United Plastics Corporation, as well as running significant building painting and maintenance

operations at the family-owned real estate. During his summers from the Georgetown

University Law Center and after, Donald worked in his father's law office of Rose, Schwartz,

Pineda & Picarello. Donald and his father co-founded Golden Gate Broadcasting, Inc. with San

Francisco Giant Willie McCovery, eight-time Emmy Award Winner Belva Davis, California

Appellate Court Justice Harry Low, KGO radio business reporter Lynn Jimenez, Mrs. Ronald

V. Dellums, and East Bay Spanish Speaking Unity Council Chair Henry Mestre, and others.

This broadcast operation pursued a successful litigation in the D.C. Court of Appeals resulting

in the dismantling of the RKO Radio Network and returning 13 major market radio licenses to

community control. After passing the State Bar of California, Donald became the personal

attorney for his father and the family businesses, performing legal work therefore, as well as

for the Schwartz Foundation, up until the time of his father's passing in 2017. In fact, while

paid for all of his legal work for his father or family-owned business matters, Donald never

charged for legal work performed for the Schwartz Foundation for the specific reason that he

is a director and did not wish to raise any questions of propriety in this regard. For example,

Donald assisted his father in marshalling a donation to the Schwartz Foundation from an estate

probated in the Alameda County Superior Court. Contrary to allegations in the Complaint, at

no time did Donald ever "file a lawsuit" in any court of law or otherwise maintain an adverse

claim of any kind against his father or the family business operations. To state otherwise is an absolute falsehood.

47.     David Richard Schwartz is Robert, Sr.'s son from his second marriage and worked for a couple of decades at the Schwartz Family owned KeySource International as the head of quality control, testing and all internal computer operations up to the time of his father's death in February 2017.

48.     Michael Leanor Osterberg is and was a Director of the Schwartz Foundation continuously from the 1983 Special Meeting. Michael was a trusted friend, C.P.A./Attorney for Robert, Sr. Michael is also Robert's much respected and loved nephew from Robert's second marriage. Michael Leanor Osterberg is the Controller of the Aquarium of the Bay and its affiliates.

49.     The Honorable Mayor Willie Lewis Brown, Jr. was a trusted compatriot of Robert A. D. Schwartz. As progressive Democrats they worked together to implement reforms for California's Democratic Party and were, inter alia, co-plaintiffs in litigation involving the same. To this day, Mayor Brown has a deep respect for his friend "Bob" Schwartz and has agreed to actively serve on the Board of the Schwartz Foundation. The Honorable Mayor Brown brings to the Schwartz Foundation a diversity that was important to Robert A.D. Schwartz, the latter (Bob) being a man who had tapped Berkeley City Councilman Ronald V. Dellums for a successful run for Congress in 1970 and organized Jewish support, therefore. Bob Schwartz had a significant role in placing Jerry Brown in the Office of the Governor in 1975. Mayor Brown's continuing love for "Bob Schwartz" is what drives him to bring his full time and attention to the Board of the Schwartz Foundation, from which the Schwartz Foundation and the community at large will surely benefit.

Wherefore, Cross-Complainants further plead as follows:

## FIRST CAUSE OF ACTION
### (For Determination Pursuant to Corporations Code § 5617)
### Against All Cross-Defendants

48.     Cross-Complainants incorporate by reference herein, as though fully set forth,

14

each of the allegations contained in Paragraphs 1-47 above.

49.    California Corporations Code § 5617 states that "[u]pon the filing of an action therefor by any director or member, or by any person who had the right to vote in the election at issue, the superior court of the proper county shall determine the validity of any election or appointment of any director of any corporation."   Cross-Complainants are individuals authorized by Corporations Code § 5617(a) to bring this action.

50.    California Corporations Code § 5617(d) states that "[t]he court . . . may determine the person entitled to the office of director or may order a new election to be held or appointment to be made."

51.    A dispute and actual controversy has arisen between Cross-Complainants and Cross-Defendants regarding the validity of two (2) individuals, Margot Schwartz and Noah Schwartz, to serve as 'Directors' of Schwartz Foundation as follows:

a.    Cross-Defendants wrongfully contend that the election of Margot Schwartz and Noah Schwartz as directors and officers was valid and proper.

b.    Cross-Complainants contend that the election of Margot Schwartz and Noah Schwartz was invalid and improper and that cross-complainants remain the duly elected directors of Schwartz Foundation.

52.    Cross-Complainants hereby pray for a determination by this Court of the invalidity of the election of Margot Schwartz and Noah Schwartz as directors and officers of the Schwartz Foundation.

53.    Cross-Complainants further allege that all subsequent actions taken by Margot Schwartz and Noah Schwartz in their capacity as directors and officers of Schwartz Foundation are invalid and void as a matter of law, and Cross-Complainants demand a determination of invalidity and a voiding of all actions taken by Margot Schwartz and Noah Schwartz in their capacity as directors and officers of Schwartz Foundation.

54.    Unless so enjoined by order of this Court, Cross-Defendants will continue to claim that the election of Margot Schwartz and Noah Schwartz to the Board of Directors and as officers of Schwartz Foundation was proper and that proper procedures pursuant to Schwartz

Foundation Bylaws and California law need not be followed.

55.     There is no adequate remedy at law of monetary relief under the facts set forth herein.

56.     If Cross-Complainants prevail in this matter then substantial benefit will result to Schwartz Foundation and Cross-Complainants are therefore entitled to recover reasonable attorney's fees incurred herein.

WHEREFORE, Cross-Complainants pray for a judgment as set forth below.

### SECOND CAUSE OF ACTION
**(Declaratory Relief)**
**Against Cross-Defendants Margot and Noah Schwartz**

57.     Cross-Complainants incorporate by reference herein, as though fully set forth, each of the allegations contained in Paragraphs 1-56 above.

58.     A determination that Cross-Complainants are the sole directors of Schwartz Foundation is a proper subject of declaratory relief and within the scope of California Code of Civil Procedure section 1060; and for a determination that the attached Exhibit 5 Unanimous Written Consent constitutes the valid action of the Board of Directors of the Schwartz Foundation, and properly elects a new Board of Directors consisting of the following individuals going forward:

        A.     The Honorable Willie L. Brown, Jr.

        B.     Donald Charles Schwartz, Esq.

        C.     Michael L. Osterberg; and

        D.     Paul D. Schwartz

59.     A present and actual controversy involving justiciable questions related to Cross-Complainants' legal rights exists because Cross-Defendants claim that Cross-Complainants were removed or resigned as directors of Schwartz Foundation whereas Cross-Complainants contend that they were never removed or resigned as directors of Schwartz Foundation and remain the sole directors to this day.

60.     Cross-Complainants desire a judicial determination of this controversy, and a

judicial declaration is necessary and appropriate at this time so that Cross-Complainants may resume their duties as the sole directors of Schwartz Foundation.

WHEREFORE, Cross-Complainants pray for a judgment as set forth below.

### THIRD CAUSE OF ACTION
### (Declaratory Relief)
### Against Cross-Defendant Rabbi Mordecai Schwartz

61.     Cross-Complainants incorporate by reference herein, as though fully set forth, each of the allegations contained in Paragraphs 1-60 above.

62.     A determination that Cross-Complainants are the sole directors of Schwartz Foundation is a proper subject of declaratory relief and within the scope of California Code of Civil Procedure section 1060 and that cross-defendant Rabbi Mordecai Schwartz is not a Director of the Schwartz Foundation; and for a determination that the attached Exhibit 5 Unanimous Written Consent constitutes the sole valid action of the legal Board of Directors of the Schwartz Foundation, and properly elects a new Board of Directors consisting of the following individuals going forward:

A.     The Honorable Willie L. Brown, Jr.

B.     Donald Charles Schwartz, Esq.

C.     Michael L. Osterberg; and

D.     Paul D. Schwartz

63.     A present and actual controversy involving justiciable questions related to Cross-Complainants' legal rights exists because Cross-Defendant Rabbi Mordecai Schwartz claims that he is a Director of the Schwartz Foundation whereas Cross-Complainants contend that they were never removed or resigned as directors of Schwartz Foundation and remain the sole directors to this day.

64.     Cross-Complainants desire a judicial determination of this controversy, and a judicial declaration is necessary and appropriate at this time so that Cross-Complainants may resume their duties as the sole directors of Schwartz Foundation.

WHEREFORE, Cross-Complainants pray for a judgment as set forth below.

## **PRAYER FOR RELIEF**

Now, therefore, Cross-Complainants pray for relief as follows:

1.      Invalidate and void the election of Margot Schwartz and Noah Schwartz as directors and officers at the August 3, 2020 meeting;

2.      Invalidate and void all actions taken by the improper board of directors of Schwartz Foundation subsequent to the illegal selection of Margot Schwartz and Noah Schwartz as directors at the August 3, 2020 meeting;

3.      For a judicial declaration under Corporations Code section 5617 that Cross-Complainants are the only two directors of Schwartz Foundation;

4.      For a permanent injunction that precludes Cross-Defendants from purporting to act as directors of Schwartz Foundation;

5.      For an order setting aside and vacating that "Amended Order" of this Court in case no. 21CV00032 erroneously issued under the purported authority of Corporations Code §709 on March 24, 2021, nunc pro tunc to that date;

6.      For an order of restitution of any and all personal expenses paid by the Schwartz Foundation at the direction of or on behalf of Margot and/or Noah Schwartz, including, but not limited to, attorney's fees and costs expended for this hostile takeover attempt;

7.      For a judicial declaration that Cross-Complainants were not validly removed as Directors of Schwartz Foundation and therefore remain the sole directors of Schwartz Foundation and recognizing the Exhibit 5 Unanimous Written Consent as a valid corporate action establishing the Board of Directors of the Schwartz Foundation as follows:

A.      The Honorable Willie L. Brown, Jr.

B.      Donald Charles Schwartz, Esq.

C.      Michael L. Osterberg; and

D.      Paul D. Schwartz

8.      For reasonable attorney's fees in an amount according to proof;

9.      Costs of suit; and

10.     For other such relief as the Court deems just and proper.

18

1

Dated: September 22, 2021                    MAAS & RUSSO LLP

2                                            */s/ Daniel J. Russo*

3                                            Daniel J. Russo
                                             Attorney for Cross-Complainants
4                                            DONALD C. SCHWARTZ and
                                             MICHAEL LEANOR OSTERBERG
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I, Donald C. Schwartz am a cross-complainant in the above-entitled action; I have read the foregoing Verified Cross-Complaint for: 1) For Determination Pursuant to Corporations Code § 5617; and 2) Declaratory Relief and know the contents thereof; the same is true of my own knowledge, except as to those matters which are therein stated upon my information and belief, and as to those matters, I believe them to be true.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed the _14_ day of August 2021 in Aptos, California.

Donald C. Schwartz

## VERIFICATION

I, Michael L. Osterberg am a cross-complainant in the above-entitled action; I have read the foregoing Verified Cross-Complaint for: 1) For Determination Pursuant to Corporations Code § 5617; and 2) Declaratory Relief and know the contents thereof; the same is true of my own knowledge, except as to those matters which are therein stated upon my information and belief, and as to those matters, I believe them to be true.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed the _15_ day of August 2021 in Tracy, California.

Michael L. Osterberg

19

EXHIBIT 1

PB 967388

FILED

In the office of the Secretary of State
of the State of California

NOV 14 1979

MARCH FONG EU, Secretary of State

By Gloria Carroll

Deputy

# ARTICLES OF INCORPORATION

## OF

## SCHWARTZ FOUNDATION

**ONE:** The name of this Corporation is:

Schwartz Foundation

**TWO:** The purposes for which this corporation is formed are:

(a) The specific and primary purposes are to promote, encourage and assist the development of vocational, musical and citizenship education.

(b) The general purposes and powers are to have and exercise all rights and powers conferred on non-profit corporations under the laws of California, including the power to contract, rent, buy, or sell personal or real property; provided, however, that this corporation shall not, except to an insubstantial degree, engage in activities or exercise any powers that are not in furtherance of the primary purposes of this corporation.

(c) No substantial part of the activities of this corporation shall consist of the carrying on of propaganda or otherwise attempting to influence legislation, nor shall the corporation participate in, or intervene in (including publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

**THREE:** This corporation is organized pursuant to the General Non-profit Corporation Law of the State of California, and does not contemplate pecuniary gain or profit to the members of the corporation and is organized for non-profit purposes.

**FOUR:** The county in this state where the principal office for the transaction of business of the corporation is located is Alameda County.

**FIVE:** The names and addresses of the persons who are to act in the capacity of directors until the selection of their successors are:



Robert A. D. Schwartz

81 Kimberlin Hts. Drive
Oakland, California  94621

Donald C. Schwartz

513 Independent Road
Oakland, California  94621

Thom R. Picarello

4860 Seven Hills Road
Castro Valley, California  94546

SIX:    Any action required or permitted to be taken by the
Board of Directors under any provisions of law may be taken
without a meeting, if all members of the Board shall individually or
collectively consent in writing to such action.  Such written consent
or consents shall be filed with the minutes of the proceedings of the
Board.  Such action by written consent shall have the same force and
effect as the unanimous vote of such Directors.  Any certificate or other
document filed under any provision of law which relates to action so taken
shall state that the action was taken by the unanimous written consent
of the Board of Directors without a meeting and that the Articles of
Incorporation authorize the Directors to so act, and such statement shall
be prima facie evidence of such authority.

SEVEN:    The manner of which Directors shall be chosen and removed from
office, their qualifications, powers, duties, compensation, and tenure of
office, the manner of filling vacancies on the Board, and the manner of
calling and holding meetings of Directors, shall be stated in the Bylaws.

        The authorized number, if any, the qualifications of members of
the corporation, the filling of vacancies, the different classes of membership,
if any, the property, voting, and other rights and privileges of members,
and their liability for dies and assessments and the method of collection
thereof, and the termination of membership or transfer thereof shall be
stated in the Bylaws.

EIGHT:    The property of this corporation is irrevocably dedicated to
charitable purposes and no part of the net income or assets of the organi-
zation shall ever inure to the benefit of any director, officer, or member
thereof or to the benefit of any private persons.

        On the dissolution or winding up of the corporation, its assets
remaining after payment of or provision for payment of, all debts and
liabilities of this corporation, shall be distributed to a non-profit fund,
foundation, or corporation which is organized and operated exclusively for
charitable purposes and which has established its tax-exempt status under
Section 501 (c) (3) of the Internal Revenue Code.

        If this corporation holds any assets on trust, or the
corporation is formed for charitable purposes, such assets shall be disposed
of in such manner as may be directed by the decree of the superior court of
the county in which the corporation has its principal office, on petition
therefore by the Attorney General or by any person concerned in the liquida-
tion, in a proceeding to which the Attorney General is a party.

NINE:     Notwithstanding any other provision of these Articles of Incorporation, if this corporation is classified as a private foundation under Section 509 of the Internal Revenue Code, the corporation shall be, while such status is in effect, subject to the following limitations and restrictions:

(a)   The corporation shall distribute its income for each taxable year at such time and in such manner as not to become subject to the tax on indistributed income imposed by Section 4942 of the Internal Revenue Code of 1954.

(b)   The corporation shall not engage in any act of self-dealing as defined in Section 4941(d) of the Internal Revenue Code of 1954.

(c)   The corporation shall not retain any excess business holdings as defined in Section 4943(c) of the Internal Revenue Code of 1954.

(d)   The corporation shall not make any investments in such manner as to subject it to tax under Section 4944 of the Internal Revenue Code of 1954.

(e)   The corporation shall not make any taxable expenditures as defined in Section 4945(d) of the Internal Revenue Code of 1954.

IN WITNESS WHEREOF, the undersigned, being persons named above as the first Directors, have executed these Articles of Incorporation on _August 14th_, 1979.

Robert A. D. Schwartz

Donald C. Schwartz

Thom. R. Picarello

OFFICIAL SEAL
MARILYN L SOARES
NOTARY PUBLIC - CALIFORNIA
COUNTY OF ALAMEDA
My Commission Expires March 1, 1982

State of California
County of Alameda

On _August 14_ , 1979, before me, _Marilyn L_

_Soares_ , a Notary Public for the State of

California, personally appeared Robert A. D. Schwartz, Donald Schwartz,

and Thom R. Picarello, known to me to be the persons whose names and

subscribed to the foregoing Articles of Incorporation, and acknowledged

that they executed the same.

Notary Public for the State of California.
My Commission expires _3/1_ , ~~1979.~~
_1980_

# EXHIBIT 2

BYLAWS OF

SCHWARTZ FOUNDATION

ARTICLE 1.   OFFICES

SECTION 1.   PRINCIPAL OFFICE

The principal office of the corporation for the transaction of its business is located in Alameda County, California.

SECTION 2.   CHANGE OF ADDRESS

The county of the corporation's principal office can be changed only by amendment of the Articles of Incorporation of this corporation and not otherwise. The Board of Directors may, however, change the principal office from one location to another within the named county by noting the changed address and effective date below, and such changes of address shall not be deemed an amendment of these Bylaws:

_____ Dated: _____, 1979

_____ Dated: _____, 1979

_____ Dated: _____, 1979

SECTION 3.   OTHER OFFICES

The corporation may also have offices at such other places, within or without the State of California, where it is qualified to do business, as its business may require and as the Board of Directors may, from time to time designate.

ARTICLE 2.   MEMBERS

SECTION 1.   DETERMINATION OF MEMBERS

The corporation shall make no provision for members thereof as such except, however, pursuant to Section 9603 of the Corporations Code of the State of California, for the purpose of any statutory provision or rule of law relating to nonprofit corporations, the persons constituting its Board of Directors shall be considered the members of the corporation and shall exercise all of the rights and powers of members thereof.

ARTICLE 3.   DIRECTORS

SECTION 1.   NUMBER

The corporation shall have three Directors and collectively they shall be known as the Board of Directors. The number may be changed by amendment of this Bylaw, or by repeal of this Bylaw and adoption of a new Bylaw, as provided in these Bylaws.

## SECTION 2.  POWERS

The Directors shall exercise the powers of the corporation, control its property, and conduct its affairs, except as otherwise provided by law.

## SECTION 3.  DUTIES

It shall be the duty of the Directors to:

(a)  Perform any and all duties imposed on them collectively or individually by law, by the Articles of Incorporation of this corporation, or by these Bylaws.

(b)  Appoint and remove, employ and discharge, and, except as otherwise provided in these Bylaws, prescribe the duties and fix compensation, if any, of all officers, agents and employees of the corporation.

(c)  Supervise all officers, agents, and employees of the corporation to assure that their duties are performed properly.

(d)  Meet at such times and places as required by these Bylaws.

(e)  Register their addresses with the Secretary of the corporation, and notices of meetings mailed or telegraphed to them at such addresses shall be valid notices thereof.

## SECTION 4.  TERMS OF OFFICE

Each Director shall hold office until the next annual meeting for election of the Board of Directors as specified in this Article, and until his or her successor is elected and qualifies.

## SECTION 5.  PLACE OF MEETINGS

Meetings shall be held at the principal office of the corporation unless otherwise provided by the Board or at such place within or without the State of California which has been designated from time to time by resolution of the Board of Directors.  In the absence of such designation, meetings shall be held at the principal office of the corporation, provided that any such meeting held elsewhere shall be valid if held on the written consent of all directors given either before or after the meeting and filed with the Secretary of the corporation.

## SECTION 6.  REGULAR AND ANNUAL MEETINGS

Regular meetings of Directors shall be held on the second Monday of each January at 10:00 a.m., unless such day falls on a legal holiday, in which event the regular meeting shall be held at the same hour and place on the next succeeding day.

At the Annual regular meeting of Directors the Directors shall be elected by the Board of Directors.  Cumulative voting for the election of Directors shall not be permitted.  The candidates receiving the highest number of votes up to the number of Directors to be elected shall be elected.  Each Director shall cast one vote, with voting being by ballot only.

## SECTION 7.   SPECIAL MEETINGS

Special meetings of the Board of Directors may be called by the President, or, if he or she is absent or is unable to refuses to act, by the Vice-President, or by any two Directors, and such meetings shall be held at the place, within or without the State of California, designated by the person or persons calling the meeting, and in the absence of such designation, at the principal office of the corporation.

## SECTION 8.   NOTICE OF MEETINGS

The Secretary of the corporation, or other person designated by the President, shall deliver notice of the time and place of meetings of the Board of Directors to each Director personally or by telegram within three (3) days or by United States mail at least seven (7) days, prior to the day of the meeting, except that notice of all regular meetings of Directors, except for the annual regular meeting of Directors held for the election of Directors, it hereby dispensed with and except as otherwise provided in these Bylaws or under law.  If sent by mail or telegram, the notice shall be deemed to be delivered on its deposit in the United States mail or on its delivery to the telegraph company.  Such notice shall be addressed to each Director at his or her address as shown on the books of the corporation.  If the address of a Director is not so shown and is not readily ascertainable, the notice shall be addressed to him or her at the city or place in which the meetings of Directors are regularly held. Notice of the time and place of holding of an adjourned meeting need not be given to absent Directors if the time and place are fixed at the meeting adjourned.

## SECTION 9.   CONTENT OF NOTICE

Notice of meetings not herein dispensed with shall specify the place, day and hour of the meeting and the general nature of the business to be transacted.

## SECTION 10.   WAIVER OF NOTICE AND CONSENT TO HOLDING MEETINGS

The transactions of any meeting of the Board, however called and noticed or wherever held, are as valid as though the meeting had been duly held after proper call and notice, provided a quorum, as hereinafter defined, is present and provided that either before or after the meeting each Director not present signs a waiver of notice, a consent to holding the meeting, or an approval of the minutes thereof.  All such waivers, consents, or approvals shall be filed with the corporate records or made part of the minutes of the meeting.

## SECTION 11.   QUORUM FOR MEETINGS

A quorum shall consist of a majority of the Board of Directors.

Except as otherwise provided in there Bylaws or in the Articles of Incorporation of the corporation, or by law, no business shall be considered by the Board at any meeting at which a quorum, as hereinafter defined, is not present, and the only motion which the Chair shall entertain at such meeting is a motion to adjourn from time to time until the time fixed for the next regular meeting of the Board.

When a meeting is adjourned for lack of a quorum, it shall not be necessary to give any notice of the time and place of the adjourned meeting or of the business to be transacted at such meeting, other than by announcement at the meeting at which the adjournment is taken.

The Directors present at a duly called and held meeting at which a quorum is initially present may continue to do business notwithstanding the loss of a quorum at the meeting due to a withdrawal of Directors from the meeting.

## SECTION 12.   MAJORITY ACTION AS BOARD ACTION

Every act or decision done or made by a majority of the Directors present at a meeting duly held at which a quorum is present is the act of the Board of Directors, unless the law, the Articles of Incorporation of this corporation, or these Bylaws require a greater number.

## SECTION 13.   CONDUCT OF MEETINGS

Meetings of the Board of Directors shall be presided over by the President of the corporation or, in his or her absence, by the Vice-President of the corporation or, in the absence of both, by a Chairman chosen by a majority of the Directors present at the meeting.  The Secretary of the corporation shall act as Secretary of all meetings of the Board, provided that in his or her absence, the presiding officer shall appoint another person to act as Secretary of the meeting.

Meetings shall be governed by Roberts' Rules of Order, as such rules may be revised from time to time, insofar as such rules are not inconsistent with or in conflict with these Bylaws, with the Articles of Incorporation of this corporation, or with law.

## SECTION 14.   ACTION BY UNANOMOUS WRITTEN CONSENT WITHOUT MEETING

Any action required or permitted to be taken by the Board of Directors under any provision of law may be taken without a meeting, if all members of the Board shall individually or collectively consent in writing to such action.  Such written consent or consents shall be filed with the minutes of the proceedings of the Board.  Such action by written consent shall have the same force and effect as the unanimous vote of the Directors.  Any certificate or other document filed under any provision of law which relates to action so taken shall state that the action was taken by unanimous written consent of the Board of Directors without a meeting and that the Articles of Incorporation and Bylaws of this corporation authorize the Directors to so act, and such statement shall be prima facie evidence of such authority.

## SECTION 15.   VACANCIES

Vacancies on the Board of Directors shall exist (1) on the death or resignation of any Director; and (2) whenever the number of authorized Directors is increased.

The Board of Directors may declare vacant the office of a Director (1) if he or she is declared of unsound mind by an order of court; or (2) if within sixty (60) days after notice of his or her election to fill a vacancy he or she does not accept the officer either in writing or by attending a meeting of the Board of Directors.

Vacancies caused by the death or resignation of a Director, or by an amendment of the Articles of Incorporation or of these Bylaws increasing the number of authorized Directors shall be filed by a majority of the remaining Directors.

A person elected to fill a vacancy as provided in this section shall hold office until the annual election of the Board of Directors or until his or her death or resignation from office.

## SECTION 16.   NON-LIABILITY OF DIRECTORS

The Directors shall not be personally liable for the debts, liabilities, or other obligations of the corporation.

## SECTION 17.   INDEMNITY BY CORPORATION FOR LITIGATION EXPENSES OF OFFICER, DIRECTOR, OR EMPLOYEE

Should any person be sued, either alone or with others, because he or she was or is a Director, officer, or employee of the corporation, in any proceeding arising out of his or her alleged misfeasance of nonfeasance in the performance of his or her duties or out of any alleged wrongful act against the corporation, indemnity for his or her reasonable expenses, including attorney's fees incurred in the defense of the proceeding, may be assessed against the corporation, its receiver, or its trustee, by the court in the same or a separate proceeding if (1) the person sued is successful in whole or in part, or the proceeding against him or her is settled with the approval of the court; and (2) the court finds that his or her conduct fairly merits such indemnity.  The amount of such indemnity shall be so much of the expenses, including attorney's fees incurred in the defense of the proceeding, as the court finds to be reasonable.

## ARTICLE 4.   OFFICERS

## SECTION 1.   NUMBER OF OFFICERS

The officers of the corporation shall be a President, a Vice-President, a Secretary, and a Treasurer.  The corporation may also have, as determined by the Board of Directors, one or more addition Vice-Presidents, Assistant Secretaries, Assistant Treasurers, or other such officers.  One person may hold two or more offices, except those of President and Secretary.

## SECTION 2.   QUALIFICATION, ELECTION, AND TERM OF OFFICE

Any person may serve as officer of this corporation.  Officers shall be elected by the Board of Directors, at any time, and each officer shall hold office until he or she resigns or is removed or is otherwise disqualified to serve, or until his or her successor shall be elected and qualified, whichever occurs first.

## SECTION 3.   SUBORDINATE OFFICERS

The Board of Directors may appoint such other officers or agents as it may deem desirable, and such officers shall serve such terms, have such authority, and perform such duties as may be prescribed from time to time by the Board of Directors.

## SECTION 4.   REMOVAL AND RESIGNATION

Any officer may be removed, either with or without cause, by the Board of Directors, at any time. Any officer may resign at any time by giving written notice to the Board of Directors or to the President or Secretary of the corporation. Any such resignation shall take effect at the date of the receipt of such notice or at any later date specified therein, and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The above provisions of this section shall be superseded by any conflicting terms of a contract which has been approved or ratified by the Board of Directors relating to the employment of any officer of the corporation.

## SECTION 5.   VACANCIES

Any vacancy caused by the death, resignation, removal, disqualification, or otherwise, of any officer shall be filled by the Board of Directors. In the event of a vacancy in any office other than that of President, such vacancy may be filled temporarily by appointment by the President until such time as the Board shall fill the vacancy. Vacancies occuring in offices of officers appointed at the discretion of the Board may or may not be filled as the Board shall determine.

## SECTION 6.   DUTIES OF PRESIDENT

The President shall be the chief executive officer of the corporation and shall, subject to the control of the Board of Directors, supervise and control the affairs of the corporation. He or she shall perform all duties incident to his or her affairs and such other duties as may be required by law, by the Articles of Incorporation of this corporation, or by these Bylaws, or which may be prescribed from time to time by the Board of Directors. He or she shall preside at all meetings of the Board of Directors and, if applicable, of the members of the corporation. Except as otherwise expressly provided by law, by the Articles of Incorporation, or by these Bylaws, he or she shall, in the name of the corporation, execute such deeds, mortgages, bonds, contracts, checks or other instruments which may from time to time be authorized by the Board of Directors.

## SECTION 7.   DUTIES OF VICE-PRESIDENT

In the absence of the President, or in the event of his or her inability or refusal to act, the Vice-President shall perform all the duties of the President, and when so acting shall have all the powers of, subject to all the restriction on, the President. The Vice-President shall have other such powers and perform such other duties as may be prescribed by law, by the Articles of Incorporation, or by these Bylaws, or as may be prescribed by the Board of Directors.

## SECTION 8.   DUTIES OF SECRETARY

The Secretary shall:

Certify and keep at the principal office of the corporation the original, or a copy, of these Bylaws as amended or otherwise altered to date.

Keep at the principal office of the corporation or at such other place as the Board may determine, a book of minutes of all meetings of the Directors, recording therein the time and place of holding, whether regular or special, and, if special, how called, how notice thereof was given, the names of those

present at the meeting, and the proceedings thereof.

See that all notices are duly given in accordance with the provisions of these Bylaws or as required by law.

Be custodian of the records and of the seal of the corporation and see that the seal is affixed to all duly executed documents, the execution of which on behalf of the corporation under its seal is authorized by law or by these Bylaws.

Keep at the principal office of the corporation a membership book containing the name and address of each and any member, and in the case where any membership has been terminated, he or she shall record such fact in the membership book together with the date on which such membership ceased.

Exhibit at all reasonable times to any Director of the corporation, or to his or her agent or attorney, on request therefore, the Bylaws, the membership book, and the minutes of the proceedings of the Directors of the corporation.

In general, perform all duties incident to the office of Secretary and such other duties as may be required by law, by the Articles of Incorporation of this corporation, or by these Bylaws, or which may be assigned to him or her from time to time by the Board of Directors.

## SECTION 9.  DUTIES OF TREASURER

Subject to the provisions of ARTICLE 6 of these Bylaws, the Treasurer shall:

Have charge and custody of, and be responsible for, all funds and securities of the corporation, and deposit all such funds in the name of the corporation in such banks, trust companies, or other depositories as shall be selected by the Board of Directors.

Receive, and give receipt for, monies due and payable to the corporation for any source whatsoever.

Disburse or cause to be disbursed the funds of the corporation as may be directed by the Board of Directors, taking proper vouchers for such disbursements.

Keep and maintain adequate and correct accounts of the corporation's properties and business transactions, including accounts of its assets, liabilities, receipts, disbursements, gains and losses.

Exhibit at all reasonable times the books of account and financial records to any Director of the corporation, or to his or her agent or attorney, on request therefore.

Render to the President and Directors, whenever requested, an account of any or all of his or her transactions as Treasurer and of the financial condition of the corporation.

Prepare, or cause to be prepared, and certify, or cause to be certified, the financial statements to be included in any required reports.

In general, perform all duties incident to the office of Treasurer and such other duties as may be required by law, by the Articles of Incorporation of the corporation, or by these Bylaws, or which may be assigned to him or her from time to time by the Board of Directors.

## ARTICLE 5.   COMMITTEES

### SECTION 1.   EXECUTIVE COMMITTEE

The Board of Directors may, by a majority vote of its members, designate two (2) or more of its members to constitute an Executive Committee and delegate to such Committee any of the powers and authority of the Board in manage,emt of the business and affairs of the corporation, except the power to adopt, amend, or repeal the Bylaws, and provided that the delegation of such Committee and the delegation thereto of authority shall not operate to relieve the Board of Directors or any individual Director of any responsibility imposed on it or him or her by law, by the Articles of Incorporation of this corporation, or by these Bylaws.  By a majority vote of its members, the Board may at any time revoke or modify any or all of the authority so delegated, increase or decrease but not below two (2) the number of its members, and fill vacancies therein from the members of the Board.  The Committee shall establish rules and regulations for its meetings and meet at such times as it deems necessary, provided that a reasonable notice of all meetings of the Committee shall be given to its members, and no act of the Committee shall be valid unless approved by a vote or written consent of a majority of its members.  The Committee shall keep regular minutes of its proceedings and report the same to the Board from time to time as the Board may require.

### SECTION 2.   STANDING AND AD HOC COMMITTEES

The corporation shall have such Standing and Ad Hoc Committees as may from time to time be designated by resolution of the Board of Directors.

## ARTICLE 6.   EXECUTION OF INSTRUMENTS, DEPOSITS AND FUNDS

### SECTION 1.   EXECUTION OF INSTRUMENTS

The Board of Directors, except as otherwise provided in these Bylaws, may be resolution authorize any officer or agent of the corporation to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.  Unless so authorized, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or engagement or to pledge its credit or to render it liable monetarily for any purpose or in any amount.

### SECTION 2.   CHECKS AND NOTES

Except as otherwise specifically determined by resolution of the Board of Directors, or as otherwise required by law, checks, drafts, promissory notes, orders for payments of money, and other evidence of indebtedness of the corporation shall be signed by the Treasurer and countersigned by the President of the corporation.

### SECTION 3.   DEPOSITS

All funds of the corporation shall be deposited from time to time to the

credit of the corporation in such banks, trust companies, or other
depositories as the Board of Directors may select.

SECTION 4.   GIFTS

The Board of Directors may accept on behalf of the corporation any
contribution, gift, bequest, or devise for the general purposes or for
any special purpose of the corporation.

ARTICLE 7.   CORPORATE RECORDS, REPORTS AND SEAL

SECTION 1.   MINUTES OF MEETINGS

The corporation shall keep at its principal office, or at such other
place as the Board of Directors may order, a book of minutes of all meetings
of Directors and of all meetings of members, if any, with the time and place
of holding, whether regular or special, and, if special, how called, the
notice given, the names of those present and the proceedings thereof.

SECTION 2.   BOOKS OF ACCOUNT

The corporation shall keep and maintain adequate and correct accounts
of its properties and business transactions, including accounts of its
assets, liabilities, receipts, disbursements, gains, and losses.

SECTION 3.   INSPECTION BY DIRECTORS

Every Director shall have the absolute right at any reasonable time
to inspect all books, records, documents of ebery kind, and the physical
properties of the corporation.

SECTION 4.   CORPORATE SEAL

The Board of Directors may adopt, use, and at will alter, a corporate
seal.  Such seal shall be affixed to all corporate instruments, but failure
to affix it shall not affect the validity of any such instrument.

ARTICLE 8.   FISCAL YEAR

SECTION 1.   FISCAL YEAR OF THE CORPORATION

The fiscal year of the corporation shall begin on the first day of
January and end on the last day of December.

ARTICLE 9.   BYLAWS

SECTION 1.   AMENDMENT

Subject to any provision of law applicable to the amendment of Bylaws
of nonprofit corporations, these Bylaws, or any of them, may be altered,
amended, or repealed and new Bylaws adopted as follows:

(a) Subject to the power of the members, if any, to change or repeal
them, by the vote of a majority of Directors present at any regular or
special meeting of Directors, at which a quorum is present, provided that
notice of such meeting and of the intention to change the Bylaws thereat
is given each Director as provided in ARTICLE 3, Section 9 of these Bylaws,
or by written consent of all Directors without a meeting as provided in

ARTICLE 3, Section 15, of these Bylaws, provided, however that a Bylaw fixing or changing the number of Directors of the corporation may not be adopted, amended, or repealed except as provided in Paragraph (b) of this section; or

(b) By the written consent of a majority of members entitled to vote, if any, or by the vote of a majority of a quorum of members entitled to vote, if any, at a meeting of members called and noticed as a special meeting for the purpose of changing the Bylaws.

## ARTICLE 10.   AMENDMENT OF ARTICLES

### SECTION 1.   AMENDMENT OF ARTICLES BEFORE ADMISSION OF MEMBERS

Before any member, other than the incorporators, have been admitted to the corporation, any amendment of the Articles of Incorporation may be adopted by a writing signed by two-thirds (2/3) of the incorporators of the corporation.

### SECTION 2.   AMENDMENT OF ARTICLES AFTER ADMISSION OF MEMBERS

After members, other than incorporators, have been admitted to the corporation, amendment of the Articles of Incorporation may be adopted by resolution of the Board of Directors and by the vote or written consent of two-thirds (2/3) of the number of voting members representing a quorum of members.

## ARTICLE 11.   PROHIBITION AGAINST SHARING CORPORATE PROFITS AND ASSETS

### SECTION 1.   PROHIBITION AGAINST SHARING CORPORATE PROFITS AND ASSETS

No member, Director, officer, employee, or other person connected with this corporation, or any private individual, shall receive at any time any of the net earnings or pecuniary profit from the operations of the corporation, provided, however, that this provision shall not prevent payment to any such person of reasonable compensation for services performed for the corporation in effecting any of its purposes as shall be fixed by resolution of the Board of Directors; and no such person or persons shall be entitled to share in the distribution of, and shall not receive, any of the corporate assets on dissolution of the corporation.  All members, if any, of the corporation shall be deemed to have expressly consented and agreed that on such dissolution or winding up of the affairs of the corporation, whether voluntarily or involuntarily, the assets of the corporation, after all debts have been satisfied, then remaining in the hands of the Board of Directors shall be distributed as required by the Articles of Incorporation of this corporation and not otherwise.

## WRITTEN CONSENT OF DIRECTORS ADOPTING BYLAWS

We, the undersigned, are all of the persons named as the first Directors in the Articles of Incorporation of Schwartz Foundation, a California corporation, and pursuant to the authority granted to the Directors in ARTICLE SIX of said Articles and by ARTICLE THREE, Section 14 of these Bylaws, to

take action by unanimous written consent without a meeting, consent to, and hereby do, adopt the foregoing Bylaws, consisting of 11 pages, as the Bylaws of said corporation.

DATED: _____12/1/79_____

_____
Robert A. D. Schwartz, Director

_____
Donald C. Schwartz, Director

_____
Thom R. Picarello, Director

EXHIBIT 3

# SCHWARTZ FOUNDATION

### CAMRON-STANFORD HOUSE 1418 LAKESIDE DRIVE
### OAKLAND, CALIFORNIA 94612
#### TELEPHONE 415/839-9232

MINUTES OF SPECIAL MEETING
OF
BOARD OF DIRECTORS OF
THE SCHWARTZ FOUNDATION
-------------------------------------

A special meeting of the board of directors of the Schwartz Foundation, was held at 11 A.M. on November 4, 1983, at One Kaiser Plaza, Suite 1450, Oakland, California.

The following directors were present at the meeting:

        Robert A.D. Schwartz
        Donald C. Schwartz
        Thom R. Picarello

The following directors were absent from the meeting:

        None

The following individuals were also present at the meeting:

        None

The chairman called the meeting to order and announced that the meeting was held pursuant to waiver of notice of meeting which was given to all directors of the corporation. A copy of this waiver was ordered inserted in the minutes book immediately preceeding the minutes of this meeting.

The minutes of the last meeting of directors were then read and approved.

A motion was raised, seconded and passed unanimously to amend the Bylaws of the Schwartz Foundation, "Article 3. Directors", "Section 1. Number" text thereof to read as follows:

        "The corporation shall have four directors and collectively they shall be known as the Board of Directors. The number may be changed by amendment of the Bylaw, or by repeal of this Bylaw and adoption of a new Bylaw, as provided in these Bylaws".

The chairman stated that the election of new officers was in order. The board then proceeded to elect new officers of the corporation. The following nominations were made and seconded:

| Name | Office |
|------|--------|
| Robert A.D. Schwartz | President |
| Donald C. Schwartz | Vice President & Secretary |
| Michael L. Osterberg | Treasurer |

No further nominations were made, and the persons named above were unanimously elected to the offices set forth opposite their respective names.

(A)

The chairman stated that the election of new directors was in order. The board then proceeded to elect new directors of the corporation.

The following nominations were made, seconded and unanimously approved:

Robert A.D. Schwartz

Donald C. Schwartz
Michael L. Osterberg

Thom R. Picarello has resigned from the board.

(A)

The chairman raised the issue of designation of agent for service of process. A motion was made, seconded and unanimously passed to designate Donald C. Schwartz at One Kaiser Plaza, Suite 1450, Oakland, California, 94612, agent for service of process.

There being no further business to come before the meeting, the meeting was duly adjourned.

Donald C. Schwartz
Secretary

The foregoing --- pages of minutes of the Special Meeting of the Schwartz Foundation have been read by me and approved.

Robert A.D. Schwartz
President &
Chairman of the Board

Thom R. Picarello
Secretary (resigned)
Member of Board (resigned)

-2-

Special Meeting Minutes continued

Donald C. Schwartz
Vice President and
Secretary
Member of the Board

Michael L. Osterberg
Treasurer
Member of the Board

EXHIBIT 4

# UNANIMOUS WRITTEN CONSENT
## OF THE BOARD OF DIRECTORS
### OF
### SCHWARTZ FOUNDATION

The undersigned, constituting all of the directors of the Schwartz Foundation, a California nonprofit public benefit corporation, in accordance with the authority provided Section 5211(b) of the California Nonprofit Public Benefit Corporation Law, hereby adopt the following recitals and resolutions:

*Past Activities*

**WHEREAS** documentation of many Board actions over the course of years since 1983 is unavailable or unclear, and the directors now wish to ratify, confirm, and approve the actions of this corporation and its officers;

**NOW, THEREFORE, IT IS RESOLVED** that the following actions of the Board of Directors of this corporation are hereby ratified, approved, and confirmed, notwithstanding any defect or inadequacy in Board process or documentation of Board action at the time:

- Authorizing and directing the President, or an individual delegated by the President, to execute and file with the California Secretary of State, as required by law, the biennial Statement by Domestic Nonprofit Corporation required by the California Corporations Code, as well as payment of any fees or penalties associated with such filings;
- Annually electing the following directors who served during the dates set forth below:

    Robert A. D. Schwartz - incorporation until his death in 2017
    Thom R. Picarello - incorporation through 1983
    Donald C. Schwartz - incorporation through 1990
    Michael Osterberg - 1983 through 1990
    Debbra Schwartz - 1991 until her death in 2020
    Robert D. D. Schwartz  - 2007 and 2008
    Margot Schwartz - 2009 to present
    Noah Schwartz - 2020 to present

- Annually electing the following officers who served during the dates set forth below:

    | | |
    |---|---|
    | President: | Robert A. D. Schwartz - incorporation until his death in 2017 |
    | | Debbra Schwartz - 2018 until her death in 2020 |
    | Vice President: | Donald C. Schwartz - 1983 to 1990 |
    | Secretary: | Donald C. Schwartz - 1983 - 1990 |

Debbra Schwartz - 1991 to 2006<br>
Robert D. D. Schwartz - 2007 to 2008<br>
Margot Schwartz - 2009 to present

Treasurer/CFO:      Michael Osterberg - 1983 to 1990<br>
                         Debbra Schwartz - 1991 to 2018<br>
                         Margot Schwartz - 2018 to 2020<br>
                         Noah Schwartz - 2020 to present

- Authorizing the removal and/or resignation of Donald Schwartz as director, Vice President, and Secretary of this corporation, effective December 31, 1990;
- Authorizing the removal and/or resignation of Michael Osterberg as director and Treasurer of this corporation, effective December 31, 1990;
- Authorizing the removal and/or resignation of Robert D. D. Schwartz as director and Secretary of this corporation, effective December 31, 2008;
- Engaging an accounting firm to prepare and file this corporation's annual federal and state tax returns, and legal counsel to review the same;
- Reviewing this corporation's annual tax returns, through the year ended December 31, 2019;
- Authorizing all direct charitable activity conducted in furtherance of this corporation's exempt purposes, including developing and implementing the Peer Tutoring Resource Center in Oakland beginning in 2012 and continuing to operate through present day, and The Therapists, a jazz band performing for the elderly in nursing and other residential facilities beginning in 2015; and
- Engaging and compensating all contractors and service providers to this corporation, as reported in applicable Forms 990-PF.

### Bylaws Amendment and Restatement

**WHEREAS** the Board has determined that it is in the best interests of this corporation to amend its Bylaws to conform to current law and best practices;

**NOW, THEREFORE, IT IS RESOLVED** that the proposed amended and restated Bylaws attached hereto as Exhibit A (the "Amended Bylaws") are hereby approved, such Amended Bylaws to become effective immediately; and

**RESOLVED FURTHER** that the Secretary of this corporation is hereby directed to notify this corporation's tax preparer and provide a copy of the Amended Bylaws to him or her, to facilitate proper reporting of these changes to the applicable regulators.

### Officer Elections

**WHEREAS** Margot Schwartz is currently the Secretary of this corporation and the position of President is vacant;

**NOW THEREFORE IT IS RESOLVED** that Margot Schwartz is

hereby removed from her position as Secretary, and is appointed as President of this corporation effective immediately; and

**RESOLVED FURTHER** that Noah Schwartz is hereby affirmed as the Treasurer, appointed August 3, 2020, and is hereby appointed as Secretary of this corporation, effective immediately.

### Omnibus Resolutions

**RESOLVED FURTHER** that the officers of this corporation are hereby authorized and directed to take all such further actions as they may deem necessary or appropriate in order to implement the foregoing resolutions, and any actions heretofore taken by the officers to further the purposes of the foregoing resolutions prior to the date of this Unanimous Written Consent are hereby ratified, approved, and confirmed.

**IN WITNESS WHEREOF**, each director has provided his or her written consent to the resolutions included in this Unanimous Written Consent as of the date set forth in the e-mail message sent by such director to margotduffyschwartz@gmail.com approving this Consent.  Such execution may be in counterparts.

Directors:                                          Margot Schwartz
                                                           Noah Schwartz

**EXHIBIT 5**

# UNANIMOUS WRITTEN CONSENT OF

# THE DIRECTORS OF

# SCHWARTZ FOUNDATION

### July 26, 2021

The undersigned directors of Schwartz Foundation, a corporation organized as a nonprofit public benefit corporation under the Nonprofit Public Benefit Corporation Law of the State of California for charitable purposes, do by this writing consent to the following actions and adopt the following resolutions pursuant to Article Six of the Articles of Incorporation, Article 3, Section 14 of the Bylaws of the corporation, and Section 5211(b) of the California Corporations Code:

WHEREAS, the corporation was founded on November 14, 1979, by Robert A. D. Schwartz, Donald C. Schwartz, and Thom R. Picarello, each a California attorney[1], who served as the corporation's initial directors and incorporators.

WHEREAS, the last recorded minutes of a properly conducted meeting or properly executed unanimous written consent of the Board of Directors of the corporation are the minutes of a meeting to elect officers and directors and amend the Bylaws of the corporation on November 4, 1983, for which all the original directors named in the Articles of Incorporation were present namely, Robert A. D. Schwartz, Donald C. Schwartz, and Thom R. Picarello.

WHEREAS, Thom R. Picarello's resignation from the Board was acknowledged and Robert A. D. Schwartz, Donald C. Schwartz, and Michael Leanor Osterberg (a Certified Public Accountant and California attorney[2]) were elected to serve on the Board of Directors at the November 4, 1983 meeting.

WHEREAS, pursuant to Article 3, Section 4 of the corporation's Articles of Incorporation, a director is to hold office until the next annual meeting for the election of directors or until his or her successor is duly elected and qualified.

WHEREAS no new directors have been duly elected since 1983 and no existing director has resigned or legally been removed since 1983, the undersigned Donald C. Schwartz and Michael Leanor Osterberg comprise all the current members of the corporation's Board of Directors.

WHEREAS, in addition to Co-Founder Donald C. Schwartz's role with the corporation, certain other members of the deceased Co-Founder Robert A. D. Schwartz's family (these other family members referred to collectively as "Managers") have assisted with the business of the corporation in recent years, including with regard to its day-to-day management.

---

1. At that time  or at later date(s).
2. At that time or at later date(s).

Unanimous Director Written Consent
July 26, 2021
Page 3 of 7

WHEREAS, Plaintiffs have taken a number of additional wrongful and damaging actions in their effort to gain control of the corporation since the death of Co-Founder Robert A. D. Schwartz's wife on July 31, 2020, including in an undated, unsigned director written consent, in which they are incorrectly identified as directors and attempt to rewrite the corporation's history, and adopt amended bylaws granting themselves the right during the remainder of their lifetimes to designate who shall serve on the Board of Directors of the corporation in direct contravention of Article 2, Section 1 of the Bylaws, Article 3, Section 6 of the Bylaws, and the intent of the corporation's co-founders.

WHEREAS, it has been determined to be in the best interests of the corporation for the Board of Directors to retain tax counsel to advise the Board on tax matters relating to the Assets, including with regard to potential corporate and manager liability under Internal Revenue Code Sections 4942 (taxes on failure to distribute income), 4943 (taxes on excess business holdings), 4944 (taxes on investments which jeopardize charitable purpose), and 4945 (taxes on taxable expenditures), as well as matters relating to Internal Revenue Code Section 4941 (taxes on self-dealing) in connection with the Litigation and other actions taken by Plaintiffs.

## Litigation

NOW, THEREFORE, BE IT RESOLVED, that the officers of the corporation be and hereby are authorized, directed, and empowered to terminate counsel purporting to act on behalf of the corporation, Donahue Fitzgerald LLP, and put them on notice that they were not legally retained on behalf of the corporation and that the corporation will be taking action to recover any fees wrongfully paid to them from corporate funds.

RESOLVED FURTHER, that the officers of the corporation be and hereby are authorized, directed, and empowered to retain Maas & Russo LLP as litigation counsel to defend all defendants in the Litigation who were sued because they were or are directors, officers, or employees of the corporation and, if necessary, to bring an action on behalf of the corporation to pursue its rights and recover damages for defamation, self-dealing, conversion, and other damages and losses of which it may not yet be fully aware.

RESOLVED FURTHER, that the officers of the corporation be and hereby are authorized, directed, and empowered to cause counsel for the corporation to dismiss all claims purportedly brought on behalf of the corporation in connection with the Litigation (references to "Plaintiffs" herein do not include the corporation).

RESOLVED FURTHER, that Maas & Russo LLP be and hereby are authorized, directed, and empowered to hire such experts and consultants as they may deem necessary in their representation of the corporation and the defendants in the Litigation and, if necessary, other actions in accordance with these resolutions.

8/6/2021

Unanimous Director Written Consent
July 26, 2021
Page 5 of 7

RESOLVED FURTHER, that the role of the Board of Directors is supervisory in nature, as provided under California Corporations Code Section 5210 and as described in Article 3, Section 3 of the Bylaws of the corporation.

RESOLVED FURTHER, that a majority of the Board shall be comprised of disinterested directors in accordance with California Corporations Code Section 5227.

RESOLVED FURTHER, that in the event an elected director declines to serve, the remaining directors shall take further action to fill the resulting vacancy.

**Election of Officers**

WHEREAS, Article 4, Section 1 of the Bylaws of the corporation provide that the corporation shall have at least a President, Vice President, Secretary, and Treasurer with the duties set forth in Article 4, Sections 6 through 9, respectively.

NOW, THEREFORE, BE IT RESOLVED, that the following individuals are hereby elected to the following corporation officer positions and to serve until their successors are duly elected:

|  |  |
|---|---|
| President: | Margot Schwartz |
| Vice President: | Charles P. Schwartz |
| Secretary: | Noah Schwartz |
| Treasurer: | Max Meregillano |

RESOLVED FURTHER, that the officers of the corporation be responsible for the day-to-day management of the corporation, directly and/or indirectly through persons they employ on behalf of the corporation, as provided under California law and the Bylaws of the corporation.

RESOLVED FURTHER, that in the event any of the elected officers decline to serve, the directors shall take further action to fill the resulting vacancy, ensuring that no individual serves as both the President and Secretary or Treasurer, in accordance with California Corporations Code Section 5213(a) and Article 4, Section 1 of the Bylaws of the corporation.

**Principal Executive Office**

WHEREAS, it has been determined to be in the best interests of the corporation to designate an address for its principal executive office in conformance with Article 1, Section 1 of the Articles of Incorporation requiring that the principal office of the corporation be located in Alameda County.

NOW, THEREFORE, BE IT RESOLVED, that 14665 Washington Ave. #26, San Leandro, California 94578 be and the same hereby is designated and fixed as the principal and

Unanimous Director Written Consent
July 26, 2021
Page 7 of 7

## **Omnibus**

RESOLVED FURTHER, that the officers of the corporation be and hereby are authorized, directed, and empowered to take such other action and to execute such additional documents as may be necessary to carry out the intent of the foregoing resolutions.

This unanimous consent is executed pursuant to Article Six of the Articles of Incorporation, Article 3, Section 14 of the Bylaws of the corporation, and Section 5211(b) of the California Corporations Code, which authorize the taking of action by the Board of Directors by unanimous written consent and shall be filed with the minutes of the proceedings of this Board of Directors.

Executed effective this 26th day of July 2021.

_____
Donald C. Schwartz, Director

_____
Michael L. Osterberg, Director

The following newly elected Directors hereby accept their positions on the Board of Directors of the corporation:

_____
Donald C. Schwartz

_____
Michael Osterberg

_____
Paul D. Schwartz                    8/6/2021

_____
Willie L. Brown Jr.

Unanimous Director Written Consent
July 26, 2021
Page 7 of 7

## Omnibus

RESOLVED FURTHER, that the officers of the corporation be and hereby are authorized, directed, and empowered to take such other action and to execute such additional documents as may be necessary to carry out the intent of the foregoing resolutions.

This unanimous consent is executed pursuant to Article Six of the Articles of Incorporation, Article 3, Section 14 of the Bylaws of the corporation, and Section 5211(b) of the California Corporations Code, which authorize the taking of action by the Board of Directors by unanimous written consent and shall be filed with the minutes of the proceedings of this Board of Directors.

Executed effective this 26th day of July 2021

Donald C. Schwartz, Director

Michael L. Osterberg, Director

The following newly elected Directors hereby accept their positions on the Board of Directors of the corporation:

Donald C. Schwartz

Michael Osterberg

Paul D. Schwartz

Willie L. Brown Jr.

**PROOF OF SERVICE BY EMAIL**

I am employed in the county of Solano, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 521 Georgia Street, Vallejo, CA 94590

On _9/2_, 2021 I served the following documents:

• **VERIFIED CROSS-COMPLAINT FOR: 1) FOR DETERMINATION PURSUANT TO CORPORATIONS CODE § 5617; 2) DECLARATORY RELIEF**

on the parties to said matter by causing a true copy of said document(s) to be transmitted by electronic mail to the email addresses known or represented to me to be the receiving email addresses of the parties/persons/firms listed below:

David A. Stein
dstein@donahue.com
Jessica M. Takano
jtakano@donahue.com
DONAHUE FITZGERALD LLP

Christopher Lamerdin
Attorney General's Office, State of California
Christopher.Lamerdin@doj.ca.gov

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed in Aptos, CA on _9/2_, 2021.

_____

**SAMUEL I. SCHWARTZ**

**EXHIBIT 2**

David A. Stein, SBN# 102556
dstein@donahue.com
Jessica M. Takano, SBN# 184079
jtakano@donahue.com
Kristoffer S. Jacob, SBN# 320286
kjacob@donahue.com
DONAHUE FITZGERALD LLP
Attorneys at Law
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone:    (510) 451-3300
Facsimile:    (510) 451-1527

Attorneys for Plaintiffs
SCHWARTZ FOUNDATION, MARGOT
SCHWARTZ, and NOAH SCHWARTZ

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/22/2021 1:28 PM
Alex Calvo, Clerk
By: Helena Hanson, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CRUZ

Schwartz Foundation, a California
corporation;
Margot Schwartz, an individual; and
Noah Schwartz, an individual,

Plaintiffs

v.

Donald C. Schwartz, an individual;
Paul D. Schwartz, an individual;
Charles P. Schwartz, III, an individual;
David Richard Schwartz, an individual;
Stevon S. Schwartz, an individual;
and DOES 1-50, inclusive,

Defendants.

Case No. 21CV00416

**COMPLAINT FOR RELIEF UNDER
CORPORATIONS CODE SECTION 709,
INCLUDING DECLARATORY AND
INJUNCTIVE RELIEF**

#4820-2007-4972.2

Come now Plaintiffs SCHWARTZ FOUNDATION, MARGOT SCHWARTZ, and NOAH SCHWARTZ (collectively, "Plaintiffs") and allege against Defendants DONALD C. SCHWARTZ, PAUL D. SCHWARTZ, CHARLES P. SCHWARTZ, III, DAVID RICHARD SCHWARTZ, STEVON S. SCHWARTZ, and DOES 1-50, inclusive (collectively, "Defendants"), as follows:

**PARTIES**

1.      Plaintiff SCHWARTZ FOUNDATION (the "Foundation") is a California corporation, duly organized and existing under the laws of the State of California.

2.      Plaintiff MARGOT SCHWARTZ ("Margot") is an individual currently residing in the State of Wisconsin, and with a residence in the State of California.

3.      Plaintiff NOAH SCHWARTZ ("Noah") is an individual residing in the State of California.

4.      Plaintiffs are informed and believe, and based thereon allege, that Defendant DONALD C. SCHWARTZ ("Donald") is an individual residing in the State of California, in Santa Cruz County.

5.      Plaintiffs are informed and believe, and based thereon allege, that Defendant PAUL D. SCHWARTZ ("Paul") is an individual residing in the State of California, in Alameda County.

6.      Plaintiffs are informed and believe, and based thereon allege, that Defendant CHARLES P. SCHWARTZ, III ("Charles") is an individual residing in the State of California, in Santa Cruz County.

7.      Plaintiffs are informed and believe, and based thereon allege, that Defendant DAVID RICHARD SCHWARTZ ("David") is an individual residing in the State of California, in Contra Costa County.

8.      Plaintiffs are informed and believe, and based thereon allege, that Defendant STEVON S. SCHWARTZ ("Stevon") is an individual residing in the State of California, in Alameda County.

9.      Plaintiffs are ignorant of the true names and capacities of Defendants sued as

1   DOES 1-50, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs

2   will amend this Complaint to allege their true names and capacities when ascertained.

3                              **GENERAL ALLEGATIONS**

4   **History and Activities of the Foundation**

5        10.     The Foundation was formed in 1979 by Robert A. D. Schwartz ("Robert), who had

6   a particular interest in education and improving academic outcomes. In the late 1970s, the

7   Foundation initiated a peer tutoring program in the Oakland Unified School District and

8   continued to support this program for twelve years. The program eventually served more than 30

9   schools and regularly brought together educators, civic leaders, and parents for learning

10  conferences.

11       11.     Based on the early success of this peer tutoring program, Robert, his wife Debbra

12  Schwartz ("Debbra"), and their daughter Margot became interested in having the Foundation

13  establish a permanent resource for those interested in using peer tutoring as an instructional

14  strategy. They commissioned a research report from the Urban Strategies Council (the "Council")

15  in 2012 and participated in numerous discussions with representatives of the Council and other

16  stakeholders regarding the planning and implementation of this significant project. Once the

17  Council produced a report demonstrating the effectiveness of peer tutoring in schools across the

18  United States, Robert, Debbra, and Margot decided to devote a substantial amount of their time

19  and Foundation resources to the development of an online Peer Tutoring Resource Center. In

20  2013, they launched https://www.peertutoringresource.org/ptrl/ – the Peer Tutoring Resource

21  Center website – which includes a research library, database of classroom and program materials,

22  and a forum for practitioners to share challenges and successes.

23       12.     In addition to its focus on peer tutoring and education, the Foundation's charitable

24  work during the time Margot has been a director and officer (since 2009) has included supporting

25  a music program for the elderly in nursing homes and other residential facilities, which includes

26  performances by a jazz band called The Therapists. This program has been ongoing since 2015.

27  Both Robert and one of his sons, Robert D. D. Schwartz ("Rob"), played in the band, which also

28  produced two studio albums paid for by the Foundation.

#4820-2007-4972.2                          -2-

**Foundation Governance**

13.     The Foundation was incorporated on November 14, 1979. The following individuals were listed as the Foundation's initial directors: (1) Robert; (2) Donald; and (3) Thom R. Picarello. On November 4, 1983, Mr. Picarello resigned from the Board. The meeting minutes reflecting Mr. Picarello's resignation were approved and signed by all members of the Board.

14.     Plaintiffs are informed and believe, and based thereon allege, that in the 1980s or 1990s, Donald and his three brothers (all children of Robert's first marriage) sued Robert for reasons unrelated to the Foundation, resulting in a lengthy and acrimonious dispute. Whether it was because of this lawsuit or for other reasons, Donald ceased having any involvement with the Foundation. In fact, there is no record of Donald acting or being identified as a director or officer of the Foundation after 1983. Instead, Robert and Debbra ran the Foundation together and were identified on its legal and tax filings as the Foundation's only directors and officers. (The sole exception to this was when Rob was listed as an officer on one Statement of Information in the 2007-2008 time period.)

15.     More recently, between 2009 and 2017, Margot assisted Robert and Debbra in running the Foundation. They were all directors and officers of the Foundation and were listed as such in the Foundation's tax filings and its filings with the California Secretary of State and Attorney General (Registry of Charitable Trusts). No one else was listed as a director or officer on any of these filings. There was also no indication that Donald remained involved with the Foundation.

16.     In February 2017, Robert passed away. Debbra and Margot then continued to manage the Foundation together.

17.     Corporate counsel for the Foundation worked with Debbra and Margot on Foundation matters. Among other things, the Foundation did not have minutes or other formal corporate records documenting its operations and corporate governance over the course of many years. In order to clarify the situation, counsel searched their firm's records and reviewed a number of publicly available filings for the Foundation to determine the identities of the directors and officers of the Foundation over the decades of its existence. They found no records indicating

1    that Donald had continued to be a director or officer of the Foundation after 1983.

2        18.    On July 31, 2020, Debbra unexpectedly passed away. As the sole remaining

3    officer or director of the Foundation, Margot called a special meeting on August 3, 2020. At this

4    meeting, Margot elected her brother, Noah Alexander Schwartz ("Noah"), to the Board of

5    Directors. Since that time, Margot and Noah have been handling the affairs of the Foundation as

6    its only two officers and directors. Attached hereto as **Exhibit A** is a true and correct copy of the

7    minutes for the August 3, 2020 special meeting.

8        19.    Based on the information gleaned from their own files and the Foundation's

9    publicly available filings, corporate counsel for the Foundation prepared a Unanimous Written

10   Consent ("UWC") for execution by the Foundation's Board, for the purpose of ratifying,

11   confirming, and approving the actions of the corporation and its officers since 1983. The UWC

12   confirmed past actions of the Foundation, including, but not limited to, <u>authorizing the removal</u>

13   <u>and/or resignation of Donald Schwartz as director, Vice President, and Secretary of the</u>

14   <u>corporation, effective December 31, 1990</u>. The UWC also recognized Margot and Noah as

15   directors and officers of the Foundation since 2009 and 2020, respectively. On August 27, 2020,

16   the Board of Directors of the Foundation executed the UWC. Attached hereto as **Exhibit B** is a

17   true and correct copy of the UWC approved by the Board.

18       20.    Also on August 27, 2020, the Board approved a set of Amended and Restated

19   Bylaws that corporate counsel had prepared for the Foundation, to conform to current law and

20   best practices. These amended bylaws name Margot and Noah as Designators with the authority

21   to appoint, remove and replace directors, and provide that each Designator shall serve for life or

22   until the Designator resigns or becomes incapacitated. Attached hereto as **Exhibit C** is a true and

23   correct copy of the Amended and Restated Bylaws approved by the Board.

24       21.    The Foundation filed an updated Statement of Information with the California

25   Secretary of State on September 11, 2020. This filing listed Margot as the Chief Executive

26   Officer and Noah as the Secretary and Chief Financial Officer, and it identified the Foundation's

27   corporate counsel Erik Dryburgh as its Agent for Service of Process. Attached hereto as **Exhibit**

28   **D** is a true and correct copy of this Statement of Information.

**Donald's Efforts to Deprive the Foundation of Assets**

22.     Donald is one of Robert's children from his first marriage and is a half-brother to Margot and Noah. Although Foundation records reflect that Donald was one of the original directors in 1979, he demonstrated no interest in the Foundation's charitable work or its mission during the entire time period of Margot's involvement with the Foundation, from at least 2009 to the present.

23.     Recently, Donald launched a campaign to try to take control of the Foundation (or at least its assets), because the Foundation stands to receive substantial property as a result of the death of Robert in February 2017 and Debbra in July 2020. Robert's estate plan provided for two large apartment buildings in San Leandro (the "Buildings"), which produce substantial rental income, to be held in trust to benefit Debbra during her lifetime. Upon Debbra's passing, the trust provides for the Buildings to be transferred to the Foundation to support its ongoing charitable work.

24.     After Robert's passing, Donald received a substantial cash gift per the terms of Robert's will, and the probate of Robert's will closed in January 2020. There was no formal objection from Donald or anyone else, although Donald clearly was not satisfied with his inheritance, either at the time of the probate of Robert's estate or thereafter. Donald presumably did not make any formal objection because the will contained a no-contest clause, and any objection would have carried with it the risk of losing his inheritance. However, by his actions described herein, Donald is actively attempting to violate Robert's estate plan and avoid Robert's testamentary intent, which was to provide assets to the Foundation to fund its ongoing operations and charitable mission.

25.     After Debbra's passing on July 31, 2020, Donald aggressively tried to enlist the support and consent of his six siblings and half-siblings (Robert's children from his three marriages) to prevent the Buildings from passing to the Foundation as Robert had intended.

26.     Donald began using veiled and overt threats, as well as outright lies, to try to bully Margot and Noah into going along with his plan to take the Foundation's rightful assets. Donald's campaign to rob the Foundation of its intended assets included the following:

a. On August 2, 2020 Donald called Margot and Noah, ostensibly to offer condolences on the passing of their mother on July 31. He expressed a desire to have a family meeting with all of their siblings. During this conversation, Donald stated that Margot and Noah had a choice to make between "working together" or "blowing up the family." Donald implied that he and his other brothers (Margot and Noah's half-brothers) had some kind of plan they hoped everyone would participate in, and that if Margot and Noah did not do what the sibling group wanted, they would be choosing to destroy the family. Donald even used the word "victim" at one point, describing what might happen to Margot and Noah if they chose unwisely. Margot perceived this at the time as a threat, but she agreed (in the interest of giving Donald the benefit of the doubt) to find a time to get together and told him she would be in touch about that when she and Noah were ready.

b. On the evening of August 4, 2020, Margot received a text message from Donald asking to "talk briefly in the morning." She responded the next day letting him know that she would be traveling and therefore would not be available to talk and that she would let him know when she was back in town. To this, he responded, "Very important we talk - briefly." Margot did not respond as she did not have the emotional bandwidth for a conversation with him at that moment. A true and correct copy of this text message chain is attached hereto as part of **Exhibit E**.

c. On August 12, 2020, Donald sent Margot a text message saying, "Not contacting me is a bad decision." She perceived this to be a threat but chose to respond the next day in a cordial manner, as she was aware of Donald's past history of violence and alcoholism and did not wish to provoke him. A true and correct copy of this text message is attached hereto as part of **Exhibit E**.

d. On August 15, 2020, Margot and Noah sent an email to all of the Schwartz half-brothers to set up a Zoom meeting for August 24. On August 22, Donald requested that a Trust attorney be added to the meeting. Margot responded, "who is this attorney planning to represent?" This elicited a lengthy response from Donald in which he explained in great detail an elaborate scheme to attempt to break the Will and Trust of Robert in order to divert funds away from the Foundation and into the hands of Donald and his siblings. His aim was to convince Margot and Noah to go along with this plan because "if we all agree, then we can get control of the Trust ourselves and directly benefit therefrom." Margot and Noah responded that they had no interest in participating in such a plan. Attached hereto as **Exhibit F** is a true and correct copy of this email chain, including Donald's August 22, 2020 email detailing his plan to deprive the Foundation of its intended assets.

e. In response to this refusal to go along with his plan, Donald sent Margot an email on August 23, 2020 stating, "I gave you an opportunity to do the right thing. You are choosing otherwise... Once again, we can choose to work together or against each other. The choice is yours." Margot perceived this to be a threat. Attached to this email was an Affadavit (sic), the author of whose name was redacted by Donald. It alleged, among other things, that Debbra and a close family friend, attorney David Kelvin, had "worked together to falsify a Trust document whereby Debbra Wood Schwartz would be the sole beneficiary of a Trust and thereby knocking-out (sic) Donald Charles Schwartz as a beneficiary of his father's estate plan — and thereby destroying the original Trust instrument." Despite the redaction, the name on the "Affadavit" was readable and was Derek Sean Wheat, a man who Plaintiffs are informed and believe has at least one felony conviction and who is a very close friend of Donald. Margot asked David Kelvin about these claims, and he of course denied the allegations. (Mr. Kelvin has since passed away.) Attached hereto as **Exhibit G** is a true and correct copy of Donald's

1    August 23, 2020 email to Margot with its attachment.

2    f.  On October 22, 2020, Donald sent Margot an email asking, "Do you have an
3        attorney on the Schwartz Foundation?   If not, I will address some concerns
         specific to the Foundation to you."   Margot did not respond to this email, as
         Donald had been told many times by that point not to contact her.   Attached hereto
4        as **Exhibit H** is a true and correct copy of Donald's October 22, 2020 email.

5    **Donald's Efforts to Gain Control of the Foundation**

6           27.    After Donald failed to convince all of his siblings to try to steal the Buildings from

7    the Foundation, he apparently decided to instead try to take control of the Foundation itself (and

8    presumably, its current and future assets). As Plaintiffs learned only after the fact, Donald filed a

9    lawsuit seeking declaratory relief on January 7, 2021, entitled *In re Schwartz Foundation*, Santa

10   Cruz County Superior Court Case No. 21CV00032. He then filed an ex parte application in that

11   action on January 8, 2021 – without giving notice to the Foundation, Margot, or Noah – seeking

12   to establish himself, one of his brothers, and his son as the Board of Directors of the Foundation.

13   Since no one had notice or an opportunity to oppose the request, on January 12, 2021, the Court

14   entered an order granting the requested relief (the "Order").

15          28.    After fraudulently obtaining entry of the Order, Donald proceeded to convene

16   meetings of the supposed Board of Directors appointed by the Order. He also electronically filed

17   his own Statement of Information on January 27, 2021, followed by another version on January

18   31, 2021, in a transparent effort to manufacture an "official" paper trail for the Foundation with

19   his name on it.

20          29.    Plaintiffs learned of Donald's legal machinations after Margot received a call on

21   February 10, 2021 from Tim Sanchez ("Tim") at Morgan Stanley, who is part of the investment

22   team for the Foundation. Since Debbra's death in 2020, Margot and Noah have been working

23   directly with Tim and his team concerning the investment of the Foundation's assets. Tim told

24   Margot that he had received some documents from Donald, and that Donald was claiming to be

25   the chairman of the Board of the Foundation.

26          30.    Margot called the Foundation's bookkeeper, Max Meregillano ("Max"), to ask if

27   he knew how Donald had learned about the Foundation's account at Morgan Stanley. Max

28   acknowledged that Donald had called and emailed him, claiming to be in charge of the

#4820-2007-4972.2                              -7-

Foundation, and Max had provided Donald with a voided check and the Morgan Stanley information.

31.     Margot also called one of her other half-brothers, Rob, to ask if he had heard anything about Donald claiming to be the chairman of the Board of the Foundation. Rob had been blind copied on Donald's February 10, 2021 email to Max, and he forwarded it to Margot.

32.     In his February 10, 2021 email, Donald provided Max with the fraudulent Order and other documents he had manufactured to support his claim that he is in control of the Foundation. After making various self-serving misstatements, Donald closed his email by stating, "**Please let me immediately know of any and all banking information for the Schwartz Foundation. I need the name of the Bank, the Branch (if possible), the account numbers and any contact information that you may have. I would like to see the most recent bank balances on the accounts**." Attached hereto as **Exhibit I** is a true a correct copy of Donald's February 10, 2021 email to Max, without the referenced attachments.

33.     On February 11, 2021, Tim sent Margot the email that Morgan Stanley had received from Donald the previous day, in which Donald asked that Morgan Stanley contact him "to discuss establishing new account privileges." Donald's email also stated, "Please be advised that Margot Schwartz and Noah Schwartz corporate officerships (if any they had) with the Schwartz Foundation have been terminated." Attached hereto as **Exhibit J** is a true and correct copy of Donald's February 10, 2021 email, as forwarded to Margot by Tim Sanchez at Morgan Stanley.

34.     On February 16, 2021, Margot received an email from Max with a copy of a "cease and desist" letter dated February 10, 2021 that he had received from Mark Steven Corrinet, Donald's co-counsel in Case No. 21CV00032. The letter stated, in part, that "the Board of Directors of the Schwartz Foundation has terminated any and all officer positions purportedly held by Margot Schwartz and Noah Schwartz. . . . You are hereby instructed to cease and desist from engaging [sic] any further corporate activities with Margot Schwartz and Noah Schwartz other than to receive the books and records that they return to you." Attached hereto as **Exhibit K** is a true a correct copy of Max's February 16, 2021 email to Margot and the attached February

10, 2021 cease and desist letter.

35.    Since Margot and Noah have been entirely responsible for all corporate activities, including hiring, supervising, and paying employees and independent contractors of the Foundation, Max was concerned by the cease and desist letter's purported directive to stop engaging in corporate activities with Margot and Noah.  Specifically, Max asked Margot, "Do I stop paying Temitayo [the Foundation's employee] for her services and inform her to stop working?" (See Exhibit K.)

36.    In addition to the confusion caused by his supposed "cease and desist" directives, Donald's conduct has caused serious, immediate harm to the Foundation and its day-to-day operations. Most significantly, as a result of the supposed "dispute" that Donald has manufactured regarding the identities of the authorized representatives of the Foundation, Morgan Stanley placed the Foundation's account on restricted status. The Foundation uses the Morgan Stanley account for purposes including its payroll distributions. Morgan Stanley's legal department has indicated that absent an agreement between the parties (which appears unlikely), Morgan Stanley will require a Court order if payroll distributions from the account are to continue.

## FIRST CAUSE OF ACTION

### Claim for Relief Under Corporations Code Section 709

### (Against All Defendants)

37.    Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 34, inclusive, of this Complaint as though fully set forth herein.

38.    California Corporations Code Section 709 provides as follows:

> (a) Upon the filing of an action therefor by any shareholder or by any person who claims to have been denied the right to vote, the superior court of the proper county shall try and determine the validity of any election or appointment of any director of any domestic corporation, or of any foreign corporation if the election was held or the appointment was made in this state. In the case of a foreign corporation the action may be brought at the option of the plaintiff in the county in which the corporation has its principal office in this state or in the county in which the election was held or the appointment was made.

(b) Upon the filing of the complaint, and before any further proceedings are had, the court shall enter an order fixing a date for the hearing, which shall be within five days unless for good cause shown a later date is fixed, and requiring notice of the date for the hearing and a copy of the complaint to be served upon the corporation and upon the person whose purported election or appointment is questioned and upon any person (other than the plaintiff) whom the plaintiff alleges to have been elected or appointed, in the manner in which a summons is required to be served, or, if the court so directs, by registered mail; and the court may make such further requirements as to notice as appear to be proper under the circumstances.

(c) The court may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, may determine the validity, effectiveness and construction of voting agreements and voting trusts, the validity of the issuance of shares and the right of persons to vote and may direct such other relief as may be just and proper.

39.     An actual and justiciable controversy now exists between and among Plaintiffs and Defendants regarding the identities of the Directors of the Schwartz Foundation. Defendants contend that Donald, Stevon, and Charles are the Directors, as a result of the Order entered by this Court on January 12, 2021 in Case No. 21CV00032. Plaintiffs contend that Donald obtained entry of the Order by fraud, and that Margot and Noah are the only Directors of the Foundation, for the reasons set forth fully above.

40.     Plaintiffs seek a determination under Corporations Code Section 709(c) that Margot and Noah are the only two persons entitled to the office of director of the Foundation. Plaintiffs further seek "such other relief as may be just and proper," including, but not limited to, the following:

a.  A declaration that any and all actions taken by Donald, Stevon, and/or Charles as purported individual directors, or collectively as the purported Board of Directors of the Foundation, are void ab initio.

b.  A declaration that any purported Board of Directors meetings held by Donald, Stevon, and/or Charles are a nullity, and that any actions, votes, or decisions at such meetings are void ab initio.

c.  A declaration that any purported election or appointment of officers of the Foundation by Donald, Stevon, and/or Charles – including, but not limited to, the election or appointment of all Defendants named in this action – is void ab initio.

d. A declaration that any legal, tax, or other official filing on behalf of the Foundation by Donald, Stevon, Charles, or anyone else acting in concert with any of them or at their direction is void ab initio. This shall include, but not be limited to, the filing of the January 27, 2021 and January 31, 2021 Statements of Information by Donald.

e. A permanent injunction precluding any of the Defendants herein from purporting to be or act as a director or officer of the Foundation, unless they are expressly permitted to do so by the legitimate directors declared by this Court.

41. As parties aggrieved by the fraudulent and wrongful Court Order appointing Donald, Stevon, and Charles as the Board of Directors of the Foundation, which was entered without notice to Plaintiffs or any opportunity for them to be heard, Plaintiff hereby requests that this Court immediately set a hearing pursuant to Corporations Code Section 709(b) to determine the identities of the directors of the Schwartz Foundation, and to determine the propriety of the additional relief requested by Plaintiffs as set forth above.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

Now, therefore, Plaintiffs prays for relief as follows:

1. For a judicial declaration under Corporations Code Section 709 that there are only two Directors of the Foundation – Margot Schwartz and Noah Schwartz.

2. For a declaration that any and all actions taken by Donald, Stevon, and/or Charles as purported individual directors, or collectively as the purported Board of Directors of the Foundation, are void ab initio.

3. For a declaration that any purported Board of Directors meetings held by Donald, Stevon, and/or Charles are a nullity, and that any actions, votes, or decisions at such meetings are void ab initio.

4. For a declaration that any purported election or appointment of officers of the Foundation by Donald, Stevon, and/or Charles – including, but not limited to, the election or appointment of all Defendants named in this action – is void ab initio.

5. For a declaration that any legal, tax, or other official filing on behalf of the Foundation by Donald, Stevon, Charles, or anyone else acting in concert with any of them or at their direction is void ab initio. This shall include, but not be limited to, the filing of the January

27, 2021 and January 31, 2021 Statements of Information by Donald.

6.     For a permanent injunction precluding any of the Defendants herein from purporting to be or act as a director or officer of the Foundation, unless they are expressly permitted to do so by the legitimate directors declared by this Court.

7.     For the costs of suit herein incurred, including attorneys' fees to the extent permitted by law; and

8.     For such other and further relief as this Court may deem proper.

Dated:  February 19, 2021                     DONAHUE FITZGERALD LLP

By:
Jessica M. Takano
Attorneys for Plaintiffs
SCHWARTZ FOUNDATION, MARGOT
SCHWARTZ, and NOAH SCHWARTZ

# EXHIBIT A

August 3, 2020.

Special meeting of RAD Schwartz Foundation for the purposes of electing new board officers.

In attendance: Margot Schwartz, secretary.

Meeting is called to order 5:40 pm, 2822 Hillegass Ave Berkeley CA 94705.

Margot Schwartz elects Noah Alexander Schwartz as a Board Director, in the position of Treasurer.

Meeting adjourned 5:45 pm.

# EXHIBIT B

---------- Forwarded message ---------
From: **noah schwartz** <schwoah@gmail.com>
Date: Thu, Aug 27, 2020 at 7:46 PM
Subject: Re: UWC Schwartz Foundation
To: Margot Schwartz <margotduffyschwartz@gmail.com>


Approved.

On Thu, Aug 27, 2020 at 5:30 PM Margot Schwartz <margotduffyschwartz@gmail.com>
wrote:

For your approval—

☐   UWC of Directors in Lieu of Meeting…

# UNANIMOUS WRITTEN CONSENT
# OF THE BOARD OF DIRECTORS
# OF
# SCHWARTZ FOUNDATION

The undersigned, constituting all of the directors of the Schwartz Foundation, a California nonprofit public benefit corporation, in accordance with the authority provided Section 5211(b) of the California Nonprofit Public Benefit Corporation Law, hereby adopt the following recitals and resolutions:

*Past Activities*

**WHEREAS** documentation of many Board actions over the course of years since 1983 is unavailable or unclear, and the directors now wish to ratify, confirm, and approve the actions of this corporation and its officers;

**NOW, THEREFORE, IT IS RESOLVED** that the following actions of the Board of Directors of this corporation are hereby ratified, approved, and confirmed, notwithstanding any defect or inadequacy in Board process or documentation of Board action at the time:

- Authorizing and directing the President, or an individual delegated by the President, to execute and file with the California Secretary of State, as required by law, the biennial Statement by Domestic Nonprofit Corporation required by the California Corporations Code, as well as payment of any fees or penalties associated with such filings;
- Annually electing the following directors who served during the dates set forth below:

  Robert A. D. Schwartz - incorporation until his death in 2017
  Thom R. Picarello - incorporation through 1983
  Donald C. Schwartz - incorporation through 1990
  Michael Osterberg - 1983 through 1990
  Debbra Schwartz - 1991 until her death in 2020
  Robert D. D. Schwartz  - 2007 and 2008
  Margot Schwartz - 2009 to present
  Noah Schwartz - 2020 to present

- Annually electing the following officers who served during the dates set forth below:

  | | |
  |---|---|
  | President: | Robert A. D. Schwartz - incorporation until his death in 2017 |
  | | Debbra Schwartz - 2018 until her death in 2020 |
  | | |
  | Vice President: | Donald C. Schwartz - 1983 to 1990 |
  | Secretary: | Donald C. Schwartz - 1983 - 1990 |

Debbra Schwartz - 1991 to 2006
Robert D. D. Schwartz - 2007 to 2008
Margot Schwartz - 2009 to present

Treasurer/CFO:        Michael Osterberg - 1983 to 1990
Debbra Schwartz - 1991 to 2018
Margot Schwartz - 2018 to 2020
Noah Schwartz - 2020 to present

- Authorizing the removal and/or resignation of Donald Schwartz as director, Vice President, and Secretary of this corporation, effective December 31, 1990;
- Authorizing the removal and/or resignation of Michael Osterberg as director and Treasurer of this corporation, effective December 31, 1990;
- Authorizing the removal and/or resignation of Robert D. D. Schwartz as director and Secretary of this corporation, effective December 31, 2008;
- Engaging an accounting firm to prepare and file this corporation's annual federal and state tax returns, and legal counsel to review the same;
- Reviewing this corporation's annual tax returns, through the year ended December 31, 2019;
- Authorizing all direct charitable activity conducted in furtherance of this corporation's exempt purposes, including developing and implementing the Peer Tutoring Resource Center in Oakland beginning in 2012 and continuing to operate through present day, and The Therapists, a jazz band performing for the elderly in nursing and other residential facilities beginning in 2015; and
- Engaging and compensating all contractors and service providers to this corporation, as reported in applicable Forms 990-PF.

## Bylaws Amendment and Restatement

**WHEREAS** the Board has determined that it is in the best interests of this corporation to amend its Bylaws to conform to current law and best practices;

**NOW, THEREFORE, IT IS RESOLVED** that the proposed amended and restated Bylaws attached hereto as Exhibit A (the "Amended Bylaws") are hereby approved, such Amended Bylaws to become effective immediately; and

**RESOLVED FURTHER** that the Secretary of this corporation is hereby directed to notify this corporation's tax preparer and provide a copy of the Amended Bylaws to him or her, to facilitate proper reporting of these changes to the applicable regulators.

## Officer Elections

**WHEREAS** Margot Schwartz is currently the Secretary of this corporation and the position of President is vacant;

**NOW THEREFORE IT IS RESOLVED** that Margot Schwartz is

hereby removed from her position as Secretary, and is appointed as President of this corporation effective immediately; and

        **RESOLVED FURTHER** that Noah Schwartz is hereby affirmed as the Treasurer, appointed August 3, 2020, and is hereby appointed as Secretary of this corporation, effective immediately.

*Omnibus Resolutions*

        **RESOLVED FURTHER** that the officers of this corporation are hereby authorized and directed to take all such further actions as they may deem necessary or appropriate in order to implement the foregoing resolutions, and any actions heretofore taken by the officers to further the purposes of the foregoing resolutions prior to the date of this Unanimous Written Consent are hereby ratified, approved, and confirmed.

        **IN WITNESS WHEREOF**, each director has provided his or her written consent to the resolutions included in this Unanimous Written Consent as of the date set forth in the e-mail message sent by such director to margotduffyschwartz@gmail.com approving this Consent.  Such execution may be in counterparts.

Directors:                                   Margot Schwartz
                                         Noah Schwartz

# EXHIBIT C

**AMENDED AND RESTATED**

**BYLAWS**

**OF**

**SCHWARTZ FOUNDATION**

# TABLE OF CONTENTS

**Page**

Article I        PRINCIPAL OFFICE ............................................................................. 1

Article II       MEMBERSHIP ...................................................................................... 1

Article III      DESIGNATORS ..................................................................................... 1

                Section 1.      Naming of Designators ............................................... 1
                Section 2.      Actions of Designators ............................................... 1
                Section 3.      Incapacity .................................................................... 2
                Section 4.      Authorization for Disclosure of Health Information ........ 2
                Section 5.      Determination of Incapacity by the Board .................... 2

Article IV       BOARD OF DIRECTORS .................................................................... 2

                Section 1.      Powers ......................................................................... 2
                Section 2.      Number of Directors .................................................... 2
                Section 3.      Limitations on Interested Persons ............................... 2
                Section 4.      Designation and Term of Office of Directors ............... 3
                Section 5.      Vacancies .................................................................... 3
                Section 6.      Resignation and Removal ............................................ 3
                Section 7.      Annual Meetings ......................................................... 3
                Section 8.      Special Meetings ......................................................... 3
                Section 9.      Notice .......................................................................... 3
                Section 10.     Waiver of Notice ......................................................... 3
                Section 11.     Quorum ........................................................................ 4
                Section 12.     Action Without a Meeting ........................................... 4
                Section 13.     Telephone and Electronic Meetings ............................ 4
                Section 14.     Standard of Care ......................................................... 4
                          A.        General ............................................. 4
                          B.        Investments ...................................... 5
                Section 15.     Inspection .................................................................... 6
                Section 16.     Director Compensation ............................................... 6
                Section 17.     Executive Compensation Review ................................ 6

Article V        COMMITTEES ...................................................................................... 6

                Section 1.      Board Committees ....................................................... 6
                Section 2.      Advisory Committees .................................................. 7
                Section 3.      Committee Supervision and Reliance .......................... 7
                Section 4.      Audit Committee ......................................................... 7
                Section 5.      Meetings ...................................................................... 8
                        A.        Of Board Committees ....................... 8
                        B.        Of Advisory Committees .................. 8

Article VI       OFFICERS ............................................................................................ 8

                Section 1.      Officers ........................................................................ 8
                Section 2.      Election ........................................................................ 8
                Section 3.      Removal ....................................................................... 8

# TABLE OF CONTENTS

**Page**

Section 4.       Resignation ................................................................................. 8
Section 5.       Vacancies .................................................................................... 8
Section 6.       Chair of the Board ...................................................................... 9
Section 7.       President ...................................................................................... 9
Section 8.       President ...................................................................................... 9
Section 9.       Vice President ............................................................................. 9
Section 10.     Secretary ..................................................................................... 9
Section 11.     Treasurer ..................................................................................... 9
Section 12.     Executive Director ...................................................................... 9

Article VII       CERTAIN TRANSACTIONS .................................................... 10

Section 1.       Loans ........................................................................................ 10
Section 2.       Self-Dealing Transactions ........................................................ 10
Section 3.       Approval ................................................................................... 10
Section 4.       Compliance with Private Foundation Rules .............................. 10

Article VIII      INDEMNIFICATION AND INSURANCE .................................. 11

Section 1.       Right of Indemnity .................................................................... 11
Section 2.       Approval of Indemnity .............................................................. 11
Section 3.       Advancing Expenses .................................................................. 11
Section 4.       Insurance ................................................................................... 12

Article IX        GRANTS ADMINISTRATION .................................................. 12

Section 1.       Purpose of Grants ...................................................................... 12
Section 2.       Board of Directors Oversight ..................................................... 12
Section 3.       Refusal; Withdrawal .................................................................. 12
Section 4.       Accounting ................................................................................ 12
Section 5.       Restrictions on Contributions .................................................... 12

Article X         MISCELLANEOUS .................................................................. 13

Section 1.       Fiscal Year ................................................................................ 13
Section 2.       Contracts, Notes, and Checks .................................................... 13
Section 3.       Annual Reports to Directors ...................................................... 13
Section 4.       Required Financial Audits ......................................................... 13
Section 5.       Electronic Transmissions ........................................................... 14
Section 6.       Amendments .............................................................................. 14
Section 7.       Governing Law .......................................................................... 14

# BYLAWS
## OF
## SCHWARTZ FOUNDATION

## ARTICLE I
### PRINCIPAL OFFICE

The principal office of this corporation shall be located in the state of California or in any other location to be determined by the Board of Directors.

## ARTICLE II
### MEMBERSHIP

This corporation shall have no voting members, but the Board of Directors may, by resolution, establish one or more classes of nonvoting members and provide for eligibility requirements for membership and rights and duties of members, including the obligation to pay dues.

## ARTICLE III
### DESIGNATORS

Section 1.    <u>Naming of Designator</u>.    The Designators referred to in these Bylaws shall be Margot Schwartz and Noah Schwartz.  Each Designator shall serve for life or until the Designator resigns or becomes incapacitated, as defined in Section 3 below.  After the death, incapacity, or resignation of the last remaining Designator, all rights reserved to the Designator under these Bylaws shall be exercised by the Board of Directors.

Section 2.    <u>Actions of Designator</u>.    Whenever there is more than one Designator, they shall hold the rights and powers granted to the Designators under these Bylaws jointly and shall act by majority vote.  All actions of the Designators shall be evidenced by a writing signed by at least the majority of the Designators and delivered to an officer of this corporation, which shall be filed by the Secretary with the proceedings of the Board of Directors of this corporation.  Any such writing may be signed in counterparts.

Section 3.    <u>Incapacity</u>.    A Designator's incapacity for purposes of these Bylaws shall be deemed to exist when it has been declared by a court of competent jurisdiction, or when a conservator for such Designator has been appointed, or upon execution of a certificate by a physician licensed to practice in the State of California or wherever such Designator may then reside, which states the doctor's opinion that such Designator is, by reason of advanced age, infirmity, mental or physical illness, or other disability, unable adequately to provide for his or her personal needs or to manage his or her financial affairs.  The effective date of such incapacity shall be the date of the decree adjudicating the incapacity, the date of the decree appointing the conservator, or the date of the doctor's certificate, as the case may be.

Section 4.   Authorization for Disclosure of Health Information.  The Board of Directors may request in writing that a Designator provide to the Secretary of this corporation an Authorization for Use or Disclosure of Health Information (an "Authorization") in the form then required by applicable federal and state law, including if applicable the Health Information Portability and Accountability Act of 1996, authorizing such Designator's physician to examine the Designator and to disclose his or her physical or mental condition to this corporation in order to determine such Designator's incapacity or capacity for the purposes of these Bylaws.

Section 5.   Determination of Incapacity by the Board.  If a Designator fails to provide the Authorization within thirty days of receiving a written request from the Board of Directors, or if such Designator's physician refuses to honor such Authorization on the grounds that the Designator is not legally competent to execute an Authorization, the Board of Directors may make a determination of such Designator's incapacity or capacity for the purposes of these Bylaws based on its evaluation of the Designator's physical and mental condition.   Any determination by the Board of a Designator's incapacity shall be made by a majority of directors then in office, and the effective date of such incapacity shall be the date of the Board's action.

## ARTICLE IV
## BOARD OF DIRECTORS

Section 1.   Powers.  This corporation shall have powers to the full extent allowed by law.  All powers and activities of this corporation shall be exercised and managed by the Board of Directors of this corporation directly or, if delegated, under the ultimate direction of the Board.

Section 2.   Number of Directors.  The number of directors shall be not less than one (1) nor more than five (5), with the exact authorized number of directors to be fixed from time to time by action of the Desgnators.

Section 3.   Limitations on Interested Persons.  At all times, not more than 49% of the directors of this corporation may be interested persons.  An interested person means either:

(a)   any person currently being compensated by this corporation for services rendered to it within the previous twelve months, whether as a full-time or part-time employee, independent contractor, or otherwise, excluding any reasonable compensation paid to a director in his or her capacity as director; or

(b)   any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, or father-in-law of any such person.

Section 4.   Designation and Term of Office of Directors.  Except for the initial directors named by the incorporator, the directors of this corporation shall be designated by the Designators from time to time.  The effective date of any such designation shall be as provided therein.  Directors may be designated for any term prescribed in the written designation; if no such term is prescribed, a designated director shall serve until he or she resigns or is removed.

Section 5.     <u>Vacancies</u>.  A vacancy shall be deemed to exist on the Board in the event that the actual number of directors is less than the authorized number for any reason. Vacancies may be filled by the Designators for the unexpired portion of the term.

Section 6.     <u>Resignation and Removal</u>.  Resignations shall be effective upon receipt in writing by the President, or the Secretary of this corporation, unless a later effective date is specified in the resignation.  The Board of Directors, by the vote of a majority of the directors then in office, or the Designators, may remove without cause any director at any time provided that any such removal by the Board shall be effective only with the consent of the Designators.

Section 7.     <u>Annual Meetings</u>.  A meeting of the Board of Directors shall be held at least once a year.  Annual meetings shall be called by the President, or any two directors, and noticed in accordance with Section 9.

Section 8.     <u>Special Meetings</u>.  Special meetings of the Board of Directors may be called by the President, or any two directors, and noticed in accordance with Section 9.

Section 9.     <u>Notice</u>.  Notice of the annual meeting and any special meetings of the Board of Directors shall state the date, place, and time of the meeting and shall be given to each director at least four days before any such meeting if given by first-class mail or forty-eight hours before any such meeting if given personally or by telephone, including a voice messaging system, or by other electronic transmission such as e-mail, in compliance with Article X, Section 5 of these Bylaws.

Section 10.     <u>Waiver of Notice</u>.  The transactions of any meeting of the Board of Directors, however called and noticed and wherever held, shall be valid as though taken at a meeting duly held after proper call and notice, if a quorum is present, and if, either before or after the meeting, each of the directors not present provides a waiver of notice, a consent to holding the meeting, or an approval of the minutes in writing.  The waiver of notice or consent need not specify the purpose of the meeting.  All waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meeting.  Notice of a meeting shall also be deemed given to any director who attends the meeting without protesting the lack of adequate notice before the meeting or at its commencement.

Section 11.     <u>Quorum</u>.  A majority of the total number of directors then in office shall constitute a quorum, provided that in no event shall the required quorum be less than one-fifth of the authorized number of directors or two directors, whichever is larger.  The act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, except as otherwise provided in Article III, Section 5 (determining Designator incapacity); Article IV, Section 6 (removing directors) and Section 12 (taking action without a meeting); Article V, Section 1 (appointing Board Committees); Article VII, Section 3 (approving self-dealing transactions); Article VIII, Section 2 (approving indemnification); and Article X, Section 6 (amending Bylaws), of these Bylaws or in the California Nonprofit Public Benefit Corporation Law.  A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for such meeting.

Section 12.    <u>Action Without a Meeting</u>.  Any action required or permitted to be taken by the Board may be taken without a meeting if all members of the Board shall individually or collectively consent to such action in writing.  Such written consents shall be filed with the minutes of the proceedings of the Board, and shall have the same force and effect as the unanimous vote of such directors.

Section 13.    <u>Telephone and Electronic Meetings</u>.  Directors may participate in a meeting through use of conference telephone, electronic video screen communication, or other electronic transmission in compliance with Article X, Section 5 of these Bylaws so long as all of the following apply:

(a)    each director participating in the meeting can communicate with all of the other directors concurrently, and

(b)    each director is provided with the means of participating in all matters before the Board, including the capacity to propose, or to interpose an objection to, a specific action to be taken by the corporation.

Section 14.    <u>Standard of Care</u>.

A.    <u>General</u>.  A director shall perform the duties of a director, including duties as a member of any Board Committee on which the director may serve, in good faith, in a manner such director believes to be in the best interest of this corporation and with such care, including reasonable inquiry, as an ordinarily prudent person in a like situation would use under similar circumstances.

In performing the duties of a director, a director shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by:

(i)    one or more officers or employees of this corporation whom the director believes to be reliable and competent as to the matters presented;

(ii)    counsel, independent accountants, or other persons as to matters which the director believes to be within such person's professional or expert competence; or

(iii)    a committee upon which the director does not serve that is composed exclusively of any combination of directors or persons described in (i) or (ii) above, as to matters within the committee's designated authority, provided that the director believes such committee merits confidence;

so long as in any such case, the director acts in good faith after reasonable inquiry when the need therefor is indicated by the circumstances and without knowledge that would cause such reliance to be unwarranted.

Except as provided in Article VII below, a person who performs the duties of a director in accordance with this Section shall have no liability based upon any failure or alleged failure to discharge that person's obligations as a director, including, without limiting the

generality of the foregoing, any actions or omissions which exceed or defeat a public or charitable purpose to which a corporation, or assets held by it, are dedicated.

B. **Investments**. Except with respect to assets held for use or used directly in carrying out this corporation's public or charitable activities, in managing and investing this corporation's investments, the Board shall adhere to the standards set forth in the preceding paragraph, and shall: (a) consider the charitable purposes of this corporation; (b) act in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) consider:

(1) General economic conditions;

(2) The possible effect of inflation or deflation;

(3) The expected tax consequences, if any, of investment decisions or strategies;

(4) The role that each investment or course of action plays within the overall portfolio;

(5) The expected total return from income and appreciation of investments;

(6) This corporation's other resources;

(7) The needs of this corporation to make distributions and to preserve capital;

(8) An asset's special relationship or special value, if any, to the charitable purposes of this corporation.

Board decisions about an individual investment shall be made not in isolation but rather in the context of this corporation's portfolio of investments as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to this corporation.

Notwithstanding the above, no investment violates this section where it conforms to: (a) the intent of the donor as expressed in a gift instrument; or (b) provisions authorizing such investment contained in an instrument or agreement pursuant to which the assets were contributed to this corporation.

Section 15. **Inspection**. Every director shall have the absolute right at any reasonable time to inspect and copy all books, records, and documents, and to inspect the physical properties of this corporation.

Section 16. **Director Compensation**. The Board of Directors may authorize, by resolution, the payment to a director of reasonable compensation for services as a director. The Board may authorize the advance or reimbursement to a director of actual reasonable expenses incurred in carrying out his or her duties as a director, such as for attending meetings of the Board and Board Committees.

Section 17.   <u>Executive Compensation Review</u>.   The Board of Directors (or a Board Committee) shall review any compensation packages (including all benefits) of the President or the chief executive officer and the Treasurer or chief financial officer, regardless of job title, and shall approve such compensation only after determining that the compensation is just and reasonable.   This review and approval shall occur when such officer is hired, when the term of employment of such officer is renewed or extended, and when the compensation of such officer is modified, unless the modification applies to substantially all of the employees of this corporation.

## ARTICLE V
## COMMITTEES

Section 1.   <u>Board Committees</u>.   The Board of Directors may, by resolution adopted by a majority of the directors then in office, create any number of Board Committees, each consisting of two or more directors, and only of directors, to serve at the pleasure of the Board.   Appointments to any Board Committee shall be by a majority vote of the directors then in office.   Board Committees may be given all the authority of the Board, except for the powers to:

(a)   set the number of directors within a range specified in these Bylaws;

(b)   elect directors or remove directors without cause;

(c)   fill vacancies on the Board of Directors or on any Board Committee;

(d)   fix compensation of directors for serving on the Board or any Board Committee;

(e)   amend or repeal these Bylaws or adopt new Bylaws;

(f)   adopt amendments to the Articles of Incorporation of this corporation;

(g)   amend or repeal any resolution of the Board of Directors which by its express terms is not so amendable or repealable;

(h)   create any other Board Committees or appoint the members of any Board Committees; or

(i)   approve any merger, reorganization, voluntary dissolution, or disposition of substantially all of the assets of this corporation.

Section 2.   <u>Advisory Committees</u>.   The Board of Directors may establish one or more Advisory Committees to the Board.   The members of any Advisory Committee may consist of directors or non-directors and may be appointed as the Board determines.   Advisory committees may not exercise the authority of the Board to make decisions on behalf of this corporation, but shall be restricted to making recommendations to the Board or Board

Committees, and implementing Board or Board Committee decisions and policies under the supervision and control of the Board or Board Committee.

Section 3.   <u>Committee Supervision and Reliance</u>.  If a committee is composed and appointed as required by Section 1 above (concerning Board Committees), it may act with the authority of the Board to the extent and with the scope provided by the Board.  Otherwise, the Board of Directors shall remain responsible for oversight and supervision of the committee as an Advisory Committee.  If a committee meets the criteria of Article IV, Section 14.A.(iii), the individual directors may rely on it in discharging their fiduciary duties as provided in that Section.

Section 4.   <u>Audit Committee</u>.  For any tax year in which this corporation has gross revenues of $2 million or more, this corporation shall have an Audit Committee whose members shall be appointed by the Board of Directors, and who may include both directors and non-directors, subject to the following limitations:  (a) members of the Finance Committee, if any, shall constitute less than one-half of the membership of the Audit Committee; (b) the chair of the Audit Committee may not be a member of the Finance Committee, if any; (c) the Audit Committee may not include any member of the staff, including the President or chief executive officer and Treasurer or chief financial officer; (d) the Audit Committee may not include any person who has a material financial interest in any entity doing business with this corporation; and (e) Audit Committee members who are not directors may not receive compensation greater than the compensation paid to directors for their Board service.

The Audit Committee shall: (1) recommend to the full Board of Directors for approval the retention and, when appropriate, the termination of an independent certified public accountant to serve as auditor, (2) subject to approval of the full Board, negotiate the compensation of the auditor on behalf of the Board, (3)  confer with the auditor to satisfy the Audit Committee members that the financial affairs of this corporation are in order, (4) review and determine whether to accept the audit, and (5) approve performance of any non-audit services provided to this corporation by the auditor's firm.

Section 5.   <u>Meetings</u>.

A.   <u>Of Board Committees</u>.  Meetings and actions of Board Committees shall be governed by and held and taken in accordance with the provisions of Article IV of these Bylaws concerning meetings and actions of the Board of Directors, with such changes in the content of those Bylaws as are necessary to substitute the Board Committee and its members for the Board of Directors and its members.  Minutes shall be kept of each meeting of any Board Committee and shall be filed with the corporate records.

B.   <u>Of Advisory Committees</u>.  Subject to the authority of the Board of Directors, Advisory Committees may determine their own meeting rules and whether minutes shall be kept.

The Board of Directors may adopt rules for the governance of any Board or Advisory Committee not inconsistent with the provisions of these Bylaws.

# ARTICLE VI
## OFFICERS

Section 1.    <u>Officers</u>.  The officers of this corporation shall be a President, a Secretary, and a Treasurer.  The corporation may also have, at the discretion of the directors, such other officers as may be appointed by the Board of Directors.  Any number of offices may be held by the same person, except that the Secretary, the Treasurer, or the Chief Financial Officer, if any, may not serve concurrently as the President or Chair of the Board, if any.  The President shall be elected from among the directors of the corporation.

Section 2.    <u>Election</u>.    Except for the initial officers appointed by the incorporator, the officers of this corporation shall be elected annually by the Board of Directors, and each shall serve at the pleasure of the Board, subject to the rights, if any, of an officer under any contract of employment.

Section 3.    <u>Removal</u>.  Subject to the rights, if any, of an officer under any contract of employment, any officer may be removed, with or without cause, by the Board of Directors or by an officer on whom such power of removal may be conferred by the Board of Directors.

Section 4.    <u>Resignation</u>.  Any officer may resign at any time by giving written notice to this corporation.  Any resignation shall take effect on receipt of that notice by any other officer than the person resigning or at any later time specified by that notice and, unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective.  Any resignation is without prejudice to the rights, if any, of this corporation under any contract to which the officer is a party.

Section 5.    <u>Vacancies</u>.  A vacancy in any office for any reason shall be filled in the same manner as these Bylaws provide for election to that office.

Section 6.    <u>President</u>.  The President shall be the chief executive officer of this corporation and shall, subject to control of the Board, generally supervise, direct and control the business and other officers of this corporation.  The President shall preside at all meetings of the Board of Directors.  The President shall have the general powers and duties of management usually vested in the office of president of the corporation and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

Section 7.    <u>Secretary</u>.  The Secretary shall supervise the keeping of a full and complete record of the proceedings of the Board of Directors and its committees, shall supervise the giving of such notices as may be proper or necessary, shall supervise the keeping of the minute books of this corporation, and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

Section 8.    <u>Treasurer</u>.  The Treasurer shall be the chief financial officer of this corporation and shall supervise the charge and custody of all funds of this corporation, the deposit of such funds in the manner prescribed by the Board of Directors, and the keeping and maintaining of adequate and correct accounts of this corporation's properties and business

transactions, shall render reports and accountings as required, and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

## ARTICLE VII
## CERTAIN TRANSACTIONS

Section 1.     Loans.  Except as permitted by Section 5236 of the California Nonprofit Public Benefit Corporation Law, this corporation shall not make any loan of money or property to, or guarantee the obligation of, any director or officer; provided, however, that this corporation may advance money to a director or officer of this corporation or any subsidiary for expenses reasonably anticipated to be incurred in performance of the duties of such director or officer so long as such individual would be entitled to be reimbursed for such expenses absent that advance.

Section 2.     Self-Dealing Transactions.  Except as provided in Section 3 below, the Board of Directors shall not approve, or permit the corporation to engage in, any self-dealing transaction.  A self-dealing transaction is a transaction to which this corporation is a party and in which one or more of its directors has a material financial interest, unless the transaction comes within California Corporations Code Section 5233(b).

Section 3.     Approval.  This corporation may engage in a self-dealing transaction if the transaction is approved by a court or by the Attorney General.  This corporation may also engage in a self-dealing transaction if the Board determines, before the transaction, that (a) this corporation is entering into the transaction for its own benefit; (b) the transaction is fair and reasonable to this corporation at the time; and (c) after reasonable investigation, the Board determines that it could not have obtained a more advantageous arrangement with reasonable effort under the circumstances.  Such determinations must be made by the Board in good faith, with knowledge of the material facts concerning the transaction and the director's interest in the transaction, and by a vote of a majority of the directors then in office, without counting the vote of the interested director or directors.

Where it is not reasonably practicable to obtain approval of the Board before entering into a self-dealing transaction, a Board Committee may approve such transaction in a manner consistent with the requirements above; provided that, at its next meeting, the full Board determines in good faith that the Board Committee's approval of the transaction was consistent with the requirements above and that it was not reasonably practical to obtain advance approval by the full Board, and ratifies the transaction by a majority of the directors then in office without the vote of any interested director.

Section 4.     Compliance with Private Foundation Rules.  Any provision of these Bylaws or the Articles of Incorporation of this corporation to the contrary notwithstanding, so long as this corporation is deemed to be a "private foundation" as defined in Section 509 of the Internal Revenue Code of 1986, as amended (the "Code"), this corporation:

(a)     shall distribute its income for each taxable year (and principal, if necessary) at such time and in such manner as not to subject this corporation to tax under Section 4942 of the Code;

(b)     shall not approve of, or engage in, any act of self-dealing as defined in subsection (d) of Section 4941 of the Code;

(c)     shall not retain any excess business holdings as defined in subsection (c) of Section 4943 of the Code;

(d)     shall not make any investments in such a manner as to subject this corporation to tax under Section 4944 of the Code; and

(e)     shall not make any taxable expenditure as defined in subsection (d) of Section 4945 of the Code.

## ARTICLE VIII
## INDEMNIFICATION AND INSURANCE

Section 1.     <u>Right of Indemnity</u>.  To the fullest extent allowed by Section 5238 of the California Nonprofit Public Benefit Corporation Law, this corporation shall indemnify its agents, in connection with any proceeding, and in accordance with Section 5238.  For purposes of this Article, "agent" shall have the same meaning as in Section 5238(a), including directors, officers, employees, other agents, and persons formerly occupying such positions; "proceeding" shall have the same meaning as in Section 5238(a), including any threatened action or investigation under Section 5233 or brought by the Attorney General; and "expenses" shall have the same meaning as in Section 5238(a), including reasonable attorneys' fees.

Section 2.     <u>Approval of Indemnity</u>.  On written request to the Board of Directors in each specific case by any agent seeking indemnification, to the extent that the agent has been successful on the merits, the Board shall promptly authorize indemnification in accordance with Section 5238(d).  Otherwise, the Board shall promptly determine, by a majority vote of a quorum consisting of directors who are not parties to the proceeding, whether, in the specific case, the agent has met the applicable standard of conduct stated in Section 5238(b) or Section 5238(c), and, if so, shall authorize indemnification to the extent permitted thereby.

Section 3.     <u>Advancing Expenses</u>.  The Board of Directors may authorize the advance of expenses incurred by or on behalf of an agent of this corporation in defending any proceeding prior to final disposition, if the Board finds that:

(a)     the requested advances are reasonable in amount under the circumstances; and

(b)     before any advance is made, the agent will submit a written undertaking satisfactory to the Board to repay the advance unless it is ultimately determined that the agent is entitled to indemnification for the expenses under this Article.

The Board shall determine whether the undertaking must be secured, and whether interest shall accrue on the obligation created thereby.

Section 4.    <u>Insurance</u>.    The Board of Directors may adopt a resolution authorizing the purchase of insurance on behalf of any agent against any liability asserted against or incurred by the agent in such capacity or arising out of the agent's status as such, and such insurance may provide for coverage against liabilities beyond this corporation's power to indemnify the agent under law.

## ARTICLE IX
## GRANTS ADMINISTRATION

Section 1.    <u>Purpose of Grants</u>.  This corporation shall have the power to make grants and contributions and to render other financial assistance for the purposes expressed in this corporation's Articles of Incorporation.

Section 2.    <u>Board of Directors Oversight</u>.    The Board of Directors shall exercise itself, or delegate, subject to its supervision, control over grants, contributions, and other financial assistance provided by this corporation.    The Board shall approve a process for reviewing and approving or declining all requests for funds made to this corporation, which shall require such requests to specify the use to which the funds will be put, and include a mechanism for regular Board review of all grants made.  The Board shall similarly approve a process for authorizing payment of duly approved grants to the approved grantee.

Section 3.    <u>Refusal; Withdrawal</u>.    The Board of Directors, in its absolute discretion, shall have the right to refuse to make any grants or contributions, or to render other financial assistance, for any or all of the purposes for which the funds are requested.  In addition, the Board, in its absolute discretion, shall have the right to withdraw its approval of any grant at any time and use the funds for other purposes within the scope of the purposes expressed in this corporation's Articles of Incorporation, subject to any rights of third parties under any contract relating to such grant.

Section 4.    <u>Accounting</u>.  The Board of Directors shall determine under what circumstances to require that grantees furnish a periodic accounting to show that the funds granted by this corporation were expended for the purposes that were approved by the Board.

Section 5.    <u>Restrictions on Contributions</u>.  Unless otherwise determined by resolution of the Board of Directors in particular cases, this corporation shall retain complete control and discretion over the use of all contributions it receives, subject only to any charitable trust restrictions that apply to such contributions, and all contributions received by this corporation from solicitations for specific grants shall be regarded as for the use of this corporation and not for any particular organization or individual mentioned in the solicitation.

## ARTICLE X
## MISCELLANEOUS

Section 1.    <u>Fiscal Year</u>.  The fiscal year of this corporation shall end each year on December 31.

Section 2.    Contracts, Notes, and Checks.  All contracts entered into on behalf of this corporation must be authorized by the Board of Directors or the person or persons on whom such power may be conferred by the Board from time to time, and, except as otherwise provided by law, every check, draft, promissory note, money order, or other evidence of indebtedness of this corporation shall be signed by the person or persons on whom such power may be conferred by the Board from time to time.

Section 3.    Annual Reports to Directors.  The chief executive officer shall furnish an annual written report to all directors of this corporation containing the following information about this corporation's previous fiscal year:

(a)    the assets and liabilities, including the trust funds of this corporation, as of the end of the fiscal year;

(b)    the principal changes in assets and liabilities, including trust funds, during the fiscal year;

(c)    the revenue or receipts of this corporation, both unrestricted and restricted to particular purposes, for the fiscal year;

(d)    the expenses or disbursements of this corporation, for both general and restricted purposes, for the fiscal year; and

(e)    any transaction during the previous fiscal year involving more than $50,000 between this corporation (or its parent or subsidiaries, if any) and any of its directors or officers (or the directors or officers of its parent or subsidiaries, if any) or any holder of more than ten percent of the voting power of this corporation or its parent or subsidiaries, if any, or any of a number of such transactions in which the same person had a direct or indirect material financial interest, and which transactions in the aggregate involved more than $50,000, as well as the amount and circumstances of any indemnifications or advances aggregating more than $10,000 paid during the fiscal year to any director or officer of this corporation.  For each transaction, the report must disclose the names of the interested persons involved in such transaction, stating such person's relationship to this corporation, the nature of such person's interest in the transaction and, where practicable, the value of such interest.

The foregoing report shall be accompanied by any report thereon of independent accountants or, if there is no such report, the certificate of an authorized officer of this corporation that such statements were prepared without an audit from the books and records of this corporation.   The report and any accompanying material may be sent by electronic transmission in compliance with Article X, Section 5 of these Bylaws.

Section 4.    Required Financial Audits.  This corporation shall obtain a financial audit for any tax year in which it receives or accrues gross revenue of $2 million or more, excluding grant or contract income from any governmental entity for which the governmental entity requires an accounting.  Whether or not they are required by law, any audited financial statements obtained by this corporation shall be made available for inspection by the Attorney General and the general public within nine months after the close of the fiscal year to which the statements relate, and shall remain available for three years (1) by making

them available at this corporation's principal, regional, and district offices during regular business hours and (2) either by mailing a copy to any person who so requests in person or in writing or by posting them on this corporation's website.

Section 5.    <u>Electronic Transmissions</u>.    Unless otherwise provided in these Bylaws, and subject to any guidelines and procedures that the Board of Directors may adopt from time to time, the terms "written" and "in writing" as used in these Bylaws include any form of recorded message in the English language capable of comprehension by ordinary visual means, and may include electronic transmissions, such as facsimile or email, provided (i) for electronic transmissions from the corporation, the corporation has obtained an unrevoked written consent from the recipient to the use of such  means of communication; (ii) for electronic transmissions to the corporation, the corporation has in effect reasonable measures to verify that the sender is the individual purporting to have sent such transmission; and (iii) the transmission creates a record that can be retained, retrieved, reviewed, and rendered into clearly legible tangible form.

Section 6.    <u>Amendments</u>.    Proposed amendments to these Bylaws shall be submitted in writing to the directors at least one week in advance of any Board meeting at which they will be considered for adoption.  The vote of a majority of directors then in office or the unanimous written consent of the directors shall be required to adopt a bylaw amendment; provided, however, that no amendment to these Bylaws shall take effect without the written consent of the Designators.

Section 7.    <u>Governing Law</u>.  In all matters not specified in these Bylaws, or in the event these Bylaws shall not comply with applicable law, the California Nonprofit Public Benefit Corporation Law as then in effect shall apply.

CERTIFICATE OF SECRETARY

I, Noah Schwartz, certify that I am presently the duly elected and acting Secretary of the Schwartz Foundation, a California nonprofit public benefit corporation, and that the above Bylaws, consisting of thirteen (13) pages, are the Bylaws of this corporation as adopted by unanimous written consent of the Board of Directors, on _August 27TH, 2020_.

DATED: _August 27TH 2020_

_____
Noah Schwartz, Secretary

# EXHIBIT D



**California Secretary of State**
Electronic Certified Copy

I, ALEX PADILLA, Secretary of State of the State of California, hereby certify that the attached transcript of 2 pages is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.



**IN WITNESS WHEREOF**, I execute this certificate and affix the Great Seal of the State of California on this day of September 13, 2020

**ALEX PADILLA**
**Secretary of State**

Verification Number:   P9B9QXP

Entity (File) Number:   C0967388

To verify the issuance of this Certificate, use the Verification Number above with the Secretary of State Electronic Verification Search available at *bizfile.sos.ca.gov*

**California Secretary of State**
Electronic Filing



# Corporation - Statement of Information

Entity Name: SCHWARTZ FOUNDATION

| | |
|---|---|
| Entity (File) Number: | C0967388 |
| File Date: | 09/11/2020 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GJ42219 |

**Detailed Filing Information**

1. Entity Name:

   SCHWARTZ FOUNDATION

2. Business Addresses:

   a. Street Address of Principal Office in California:

   14665 Washington Avenue #26
   San Leandro, California 94578
   United States of America

   b. Mailing Address:

   14665 Washington Avenue #26
   San Leandro, California 94578
   United States of America

3. Officers:

   a. Chief Executive Officer:

   Margot Duffy Schwartz
   2822 Hillegass Avenue
   Berkeley, California 94705
   United States of America

   b. Secretary:

   Noah Alexander Schwartz
   2822 Hillegass Avenue
   Berkeley, California 94705
   United States of America

Certificate Verification Number: P9B9QXP
Use bizfile.sos.ca.gov to verify the certified copy.

Document ID: GJ42219



## California Secretary of State
Electronic Filing

Officers (Cont'd):

   c.  Chief Financial Officer:

Noah Alexander Schwartz
2822 Hillegass Avenue
Berkeley, California 94705
United States of America

4.  Agent for Service of Process:

Erik  Dryburgh
135 Main Street, 20th Floor
San Francisco, California 94105
United States of America

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:  Max Meregillano

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Certificate Verification Number: P9B9QXP
Use bizfile.sos.ca.gov to verify the certified copy.

Document ID: GJ42219

# EXHIBIT E

3:47

## New iMessage                    Cancel

To: Don Schwartz

iMessage
Wed, Aug 5, 12:26 AM

Hello Margot - Brother Don here. Hope Noah and you are doing well. I am so sorry for your loss. We have all lost both parents in recent years. I cried silently at my desk over our Pops, I miss him so much. And I cried openly when my mom passed. She was so sweet. Please let's talk briefly in the morning. Thanks.



Wed, Aug 5, 12:09 PM

Hey Don, sorry I missed your call. Thanks so much for the message. Yes, it's been very hard the past few weeks. We're all pretty shaken up- this was a shock for everyone and she was much too young for something like this to happen. I'm traveling today so it's not really a

iMessage

3:47

## New iMessage                                    Cancel

To: Don Schwartz

Wed, Aug 5, 12:09 PM

> Hey Don, sorry I missed your call. Thanks so much for the message. Yes, it's been very hard the past few weeks. We're all pretty shaken up- this was a shock for everyone and she was much too young for something like this to happen. I'm traveling today so it's not really a good time to talk. I'll be in touch when I get back to town. Thanks for your understanding!

OK - safe travels

Very important we talk - briefly

Wed, Aug 12, 10:31 PM

Not contacting me is a bad decision

Thu, Aug 13, 12:56 PM

> Didn't forget about you, still on the road. Will be in touch soon!

   iMessage  

      

# EXHIBIT F

From: **Donald Schwartz** donald@lawofficedonaldschwartz.com
Subject: Re: Schwartz Zoom meeting
Date: August 23, 2020 at 6:06 PM
To: Margot Schwartz margotduffyschwartz@gmail.com
Cc: David Schwartz bigdave469@gmail.com, **Noah Schwartz** elschwartzco@gmail.com, paul@schwartzco.biz,
rob@edenrocapartments.com

There is some more information that has been dumped in my lap.

I will be sending under separate cover.

Don

Sent from my iPhone

> On Aug 23, 2020, at 3:42 PM, Margot Schwartz <margotduffyschwartz@gmail.com> wrote:
>
> Don,
>
> Thank you for sharing these ideas with us.
>
> We understand what you are proposing, and while we certainly agree about the merits of a cohesive family unit, we need to let you know unequivocally that we are not interested in participating in this course of action. There is absolutely no doubt in either of our minds that dad's Trust was set up — and continues to be in the process of functioning — exactly as he intended.
>
> Was there anything else you would like to discuss on Tuesday? Of course we are still happy to get together.
>
> M & N
>
> On Sat, Aug 22, 2020 at 6:38 PM Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
>> More:
>>
>> Mr. Corrinet prefers that we meet as family first and decide what we are doing. So he's out of the call.
>>
>> Don
>>
>> Sent from my iPhone
>>
>>> On Aug 22, 2020, at 2:15 PM, Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
>>>
>>> Oh, I forgot to add that Noah has a great business mind (obviously) as do you - and both of you are extremely creative, i.e., right brain!
>>>
>>> We all bring a lot to the table. And we all work well together. What more is there to live for?
>>>
>>> And, as you may be thinking of law school, what better platform upon which to apply newfound legal knowledge than our own Schwartz Asset Portfolio? One thing about working with dad was that we were all exposed to legal-technical-financial issues that we would otherwise never have seen - and failure was never an option. One thing about Dad is that he wanted us all to continue to learn, he was the great hands-on teacher: Peer Teacher.
>>>
>>> And - if you are uncomfortable with Mr. Corrinet, we can save him for another day. (He's harmless and doesn't bite! I actually work with him on many other projects, some might even blow your mind!)
>>>
>>> Love, Don
>>>
>>> On Sat, Aug 22, 2020 at 1:41 PM Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
>>>> Hi Margot,
>>>>
>>>> Great question!!
>>>>
>>>> First, and most importantly, we all wish to express our deepest, heartfelt condolences to Noah and you for the sudden loss of your mother (i.e., our step-mother - or as my kids say: "close-by grandmother" - since we also had a "far-away grand-mother" Kathryn).  I know that my boys (Charlie especially) are very upset about losing another family member.

Life is short. When you get to the age of your oldest siblings (meaning the oldest 4 of us 7), you come to realize life is short. Money is not everything, or even anything perhaps, yet money provides a vehicle to express our common Schwartz values. Which brings us to coming together to decide how we all want the rest of our time on this planet to look like, as well as to another question:

Do we want a super- capitalized Schwartz Foundation or do we want more individual control over such funds (which could also be directed to the Foundation later, if desired).

Are there options?

No one expected your mom to live such a short time after our Pops passed, certainly not your mom or our Pops. Possibly, the idea was that your mom could build her estate over many years and pass it as she saw fit in her estate plan (Noah and you). She would have many years to do so. Her unexpected passing curtailed that plan. Many folks (and all 5 other Schwartzs) believe that it is best for Noah (and his son) and you to have your own control of the capital Eden Roc and Terrace Garden Represent for the remainder of your lives and start building (or continue building) your own estates - with all other 5 Schwartz's together.

Query No. 1: What options do we have under the existing "RADS Trust" document? (I have talked to all 5 'other' Schwartz's and they have expressed a desire to have an attorney opine to all of us what the options could be.)

So . . . Mr. Corrinet is not representing anyone. As an attorney who practices probate law in California, he would be making a voluntary appearance to express his ideas on how various options might be achieved.

The threshold issue is basically to Noah and you: assuming the RADS Trust gives Eden Roc and Terrace Garden to the Schwartz Foundation, are you guys satisfied with such a result?

I would think not and I hope not.  Thusly, two more specific questions arise:

Question [1]: Is the Trust 'stuck' with Mechanics Bank as the Trustee?

Question [2]: Is everyone 'stuck' with the Schwartz Foundation getting the two apartment projects?

Question [3] Is there any benefit to Margot and Noah (and everyone else) to substituting both the Trustee and the beneficiary(ies)?

I have been researching these issues and discussing Question [1] with Mr. Corrient. (We have not broached [2] because no one knew the answer at the time that I spoke with him and I had to do some legal research on my own.

The bottom line is: Question [1]: If **ALL** seven Schwartz siblings agree that no Trustee is necessary (because we all agree on important Trust matters) then the Trustee can be replaced to a Trustee(s) of our own choosing. The reason is that there is no need for a Trustee since we all agree to the basic issues related to the Trust, such as who the replacement Trustee(s) would be or how to select her/him/it, by vote presumably. (Paying for a Trustee is a form of "waste" - meaning it is wasteful to have a third party Trustee and to be paying for the same.)

As to Question [2]: Frankly, I have yet to discuss this with Mr. Corrinet, but I have done some legal research and it is quite evident that the answer is the same thing: If **ALL** seven Schwartz siblings agree, then the beneficiary can be changed as well - meaning to ourselves or our designee(s).

In other words, **if we all agree, then we can get control of the Trust ourselves and directly benefit therefrom.**

What this means is that we would have a pool of cash-flow from which to do other projects and continue on as we have been for the past many decades, e.g., making money for Schwartzs. There is a long, very long, history of how Rob, Stev, Paul, David and I have toiled over those apartments (and the various other businesses through time) and made them what they are today, or could have been. None of us wish to simply have all of this whisked away when we can continue to work as diligently as we all have and continue to make the Schwartz Asset Portfolio far bigger and more profitable than it even is today.

And, the other good news is: we all get to work together. I believe that all of us enjoy working together. There is an extra spring in all our steps when we know we are working for the betterment of the whole: All for one and one for all. If there is anything our father would want is for all of us to get-together and determine our own destiny. If he is watching us from afar, he would be very, very inspired by us all banding together to chart our own path - together. And it makes sense: each of us brings a unique talent to the talent pool, the ensemble, if you will. Rob is the great communicator, business management mind and a person of steller moral values and a person in whom we all place all our complete faith. Stev is also a man of great moral character and a rock of ethical duty - a hard worker - and a man of love and trust. Paul is the tech genius, with multiple other interests worth noting. David has his own tech skills (different than Paul's) and a strong moral, trustworthy person. I have been the outside General Counsel of all of this for some 25 years, i.e., did all of Dad's legal work. Everyone's legal work, it seems.

So, give it some thought and let's continue to discuss. I know this is a lot to take-in all at once. There are some other ancillary issues and I will leave those for another day.

"Life is for the living" Bob Schwartz

Best,

Donald Charles Schwartz, MBA, JD

On Sat, Aug 22, 2020 at 11:57 AM Margot Schwartz <margotduffyschwartz@gmail.com> wrote:
Hi Don,

Who is Mr. Corrinet planning to represent?

When we spoke on the phone a couple weeks ago, you were adamant about the importance of our meeting including "only Schwartzes". We are really looking forward to this chance to get the family together without outside involvement.

M & N

On Sat, Aug 22, 2020 at 1:25 AM Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
I don't see the zoom invite.

Can you also invite Mark Corrinet. He's a Trust attorney. See email.

Stev has no functioning email right now. I'll be with him.

Thanks.

Donald Charles Schwartz, M.B.A., J.D.
Office of Donald C. Schwartz
7960-B Soquel Drive, No. 291
Aptos, CA 95003
donald@lawofficedonaldschwartz.com
(831) 331-9909/Fax: (815) 301-6556

Sent from iPhone

On Aug 19, 2020, at 6:36 PM, Margot Schwartz <margotduffyschwartz@gmail.com> wrote:

I can do it but I will need Stev's email address if someone has it?

On Wed, Aug 19, 2020 at 6:22 PM Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
David says 7:00 p.m. on the 25th (August)

Who will host the Zoom meeting and send out invites?

Donald Charles Schwartz, MBA, JD

On Sat, Aug 15, 2020 at 11:41 AM Margot Schwartz <margotduffyschwartz@gmail.com> wrote:
Hello fellow Schwartzes!

Hope you are well. Don mentioned you're interested in getting together — we don't seem to have Stev's email address so hopefully someone can forward this to him. Does next Tuesday the 25 work for all of you? We're looking forward to seeing everyone!

Margot and Noah

# EXHIBIT G

From: **Donald Schwartz** <donald@lawofficedonaldschwartz.com>
Date: Sun, Aug 23, 2020 at 4:16 PM
Subject: RADS Estate
To: Margot Schwartz <margotduffyschwartz@gmail.com>, Mr. Noah Alexander Schwartz
<elschwartzo@gmail.com>
CC: Mr. Rob D Schwartz <schwartztribe@yahoo.com>, David Schwartz
<bigdave469@gmail.com>, Paul Schwartz <paul@schwartzco.biz>


Margot and Noah,

I am very sorry to have to send this to you. See attached.

I gave you an opportunity to do the right thing. You are choosing otherwise.

I was provided this declaration (I have redacted) which caused me to start looking at some
other things and, yes, some other things have surfaced. This is just the tip of the iceberg,

It is very clear to a lot of people what has happened, including to me.

I suggest we meet to discuss. I can assure you, this is not what I wanted to discuss, but I
cannot simply walk away from this - nor will I - or others.

Once again, we can choose to work together or against each other. The choice is yours.

Donald Charles Schwartz, MBA, JD

## AFFADAVIT OF ▆▆▆▆▆▆▆▆

I, ▆▆▆▆▆▆▆▆, do solemnly swear and affirm:

On or about the period of time starting on or about from February 2017 to the present time, I have had several conversations with Dave Kelvin about his meetings with Debbra Wood Schwartz.  We were not meeting under any attorney confidentiality since I was not being asked to research anything, advise or function as a paralegal in any way. Mr. Kelvin informed me as follows:

Debbra Wood Schwartz was upset because her deceased husband's (Bob Schwartz) estate plan was not satisfactory to her inasmuch as it "put her in business with Don" (meaning Bob's son, Don Schwartz) and that "no one wants to be in business with Don." (The clear meaning is that Don Schwartz was a beneficiary of his father's estate plan other than the probate documents revealed and that result was unacceptable to Debbra Wood Schwartz.)

Debbra Wood Schwartz and David Ira Kelvin talked about "some paperwork" that was unacceptable in the Bob Schwartz estate and had to be redone.

Dave Kelvin is a friend and I am aware that Debbra Schwartz and he were never very close until after these meetings, at which point Dave Kelvin started hanging around Debbra Schwartz' place in the Oakland/Berkeley area – which he never did so before. (Debbra Schwartz also told Dave Kelvin that he could "stay at her home" in the Oakland-Berkeley area at "any time he was in the Bay Area." Dave lives in Clear Lake.

I was led to believe from the conversations that Debbra and Dave worked together to falsify a Trust Instrument whereby Debbra Wood Schwartz would be the sole beneficiary of a Trust and thereby knocking-out Donald Charles Schwartz as a beneficiary of his father's estate plan – and thereby destroying the original Trust instrument.

I informed Donald and Paul Schwartz of these facts (for the first time) on a telephone call during the month of February 2020.

When I asked Dave Kelvin why Debbra Wood-Schwartz and he were manipulating Bob Schwartz' estate, he did not deny it, Dave replied: "Bob would have wanted Debbra to have it all."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 

**NOTARY ATTACHED**

# EXHIBIT H

From: **Donald Schwartz** donald@lawofficedonaldschwartz.com
Subject: Schwartz Foundation
Date: October 22, 2020 at 2:28 PM
To: Margot Schwartz margotduffyschwartz@gmail.com

Hello Margot,

Do you have an attorney on the Schwartz Foundation?

If not, I will address some concerns specific to the Foundation to you.

Donald Charles Schwartz, MBA, JD

# EXHIBIT I

From: **Robert Schwartz** schwartztribe@yahoo.com 📎
Subject: Fw: Schwartz Foundation
Date: February 10, 2021 at 5:54 PM
To: Margot Schwartz margotduffyschwartz@gmail.com

----- Forwarded Message -----
**From:** Donald Schwartz <donald@lawofficedonaldschwartz.com>
**To:** Max Meregillano <max@ksikeyboards.com>
**Cc:** Charles Schwartz <cpschwartz@ucdavis.edu>
**Sent:** Wednesday, February 10, 2021, 7:40:13 AM PST
**Subject:** Schwartz Foundation

Good Morning Max,

In furtherance of our phone conversation yesterday, please find attached the following information pertaining to the Schwartz Foundation:

(1) Santa Cruz County Superior Court Amended Petition and Order;

(2) Board of Directors Meeting Minutes from January 16 and 30, 2021; and

(3) Secretary of State Statement of Officers.

I am also sending for your records the original Articles of Incorporation and Bylaws of the Schwartz Foundation. You have previously confirmed that these documents remain fully operative since no amendments were ever in your files - and no other records of any Board Meetings exist.

Reminder: You are the Custodian of Records for the Schwartz Foundation and have been since at least 1986. You remain as such. (Margot Schwartz took all of your corporate records about one month ago and has not returned them.)

I am instructing you to maintain these records in your files.

I am also instructing you not to release these records to anyone without my written authority.

**Please let me immediately know of any and all banking information for the Schwartz Foundation. I need the name of the Bank, the Branch (if possible), the account numbers and any contact information that you may have. I would like to see the most recent bank balances on the accounts.**

Thank you.

Donald Charles Schwartz, MBA, JD
Law Office of Donald C. Schwartz
7960-B Soquel Drive, No. 291
Aptos, CA  95003
831-331-9909/Fax: 815-301-6556
donald@lawofficedonaldschwartz.com

Confidentiality, Limitation Of Use, And No Binding Effect
The preceding message contents and any attachments (collectively "Contents") are: (i) solely for the benefit of the person(s) or entity(ies) addressed (collectively "Recipient") and may not be relied upon

by any other person(s) or entity(ies) ("Others") for any purpose without specific written permission of Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz;  (ii) confidential, private and contain non-disclosable information for the exclusive use of the Recipient (iii) protected by the Electronic Communications Act (18 U.S.C.§2510-2521) and or the Health Insurance Portability & Accountability Act of 1996 (42 USC 201) & its privacy rules and may also be legally privileged (including attorney-client or attorney work-product privilege), confidential, proprietary or otherwise protected by law and all downloading, photocopying, distributing or otherwise using the Contents by Others in any way is prohibited; (iv) sent for informational purposes only and unless expressly stated not intended to be an electronic signature for purposes of binding any client of or Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz to any contract or agreement under the California Uniform Electronic Transaction Act (CA Civil Code §1633.1-1633.17) and all other similar states & federal laws;  (iv) not intended or written and may not be used for the purpose of avoiding federal taxes or penalties nor used to promote, market or recommend any transaction or matter addressed in the Contents (See IRS Circular 230);  (v) Recipient should not save or file electronic or paper copies of the Contents with publicly accessible records, and  (vi) subject to continued application of the foregoing to any subsequent retransmission, publication or disclosure.



Virus-free. www.avg.com

Schwartz Founda...01.pdf

Schwartz Founda...01.pdf

Schwartz Founda...nal.pdf

Schwartz Founda...01.pdf

Schwartz Founda...an.pdf

Schwartz Founda...an.pdf

Schwartz Founda...ed.pdf

# EXHIBIT J

From:    **Sanchez, Tim** Timothy.Sanchez@morganstanley.com  🔗
Subject:    FW: Schwartz Foundation
Date:    February 11, 2021 at 9:14 AM
To:    Margot Schwartz    margotduffyschwartz@gmail.com

Margot,

Here is the email that Marical received and forwarded to me that includes the items that I referenced.

Tim

Tim M. Sanchez
Vice President, Financial Advisor
Portfolio Management Director
**Morgan Stanley Wealth Management**
1999 Harrison Street, Suite 2200
Oakland, CA  94612
Phone:  510-891-5236  Cell: 510-694-2224
Fax: 925-295-4146
Timothy.Sanchez@morganstanley.com

NMLS #1265181
CA Insurance Lic. #0D45616

https://advisor.morganstanley.com/the-sbt-group

**From:** Sanchez, Marical (Wealth Management Field)
<Marical.Sanchez@morganstanley.com>
**Sent:** Wednesday, February 10, 2021 11:49 AM
**To:** Sanchez, Tim (Wealth Management Field) <Timothy.Sanchez@morganstanley.com>;
Sanchez, Francisca M (Wealth Management Field)
<Francisca.Sanchez@morganstanley.com>
**Subject:** FW: Schwartz Foundation

Hello,

Is this the brother that Margot is referring to?

**Marical Sanchez**
Sr. Client Service Associate

**SBT Group**
Morgan Stanley Wealth Management
1999 Harrison Street, Suite 2200l Oakland, CA 94612
Direct: 510-891-5202l Toll Free:  800-755-1579l Fax: 510-891-0578

**From:** Donald Schwartz <donald@lawofficedonaldschwartz.com>
**Sent:** Wednesday, February 10, 2021 11:46 AM
**To:** Sanchez, Marical (Wealth Management Field)
<Marical.Sanchez@morganstanley.com>
**Subject:** Fwd: Schwartz Foundation

Dear Ms. Sanchez

Dear Ms. Sanchez,

Please find the attached email to John Torpey.

Per his message I am forwarding to you.

Thanks.

Donald Charles Schwartz, JD, MBA
Chairman of the Board
President/Chief Executive Officer
Schwartz Foundation
7960-B Soquel Drive, No. 291
Aptos, CA  95003
831-331-9909/Fax: 815-301-6556
donald@lawofficedonaldschwartz.com

Confidentiality, Limitation Of Use, And No Binding Effect
The preceding message contents and any attachments (collectively "Contents") are: (i) solely for the benefit of the
person(s) or entity(ies) addressed (collectively "Recipient") and may not be relied upon by any other person(s) or
entity(ies) ("Others") for any purpose without specific written permission of Donald Charles Schwartz, Esq. and the
Law Offices of Donald C. Schwartz;  (ii) confidential, private and contain non-disclosable information for the
exclusive use of the Recipient (iii) protected by the Electronic Communications Act (18 U.S.C.§2510-2521) and
or the Health Insurance Portability & Accountability Act of 1996 (42 USC 201) & its privacy rules and may also
be legally privileged (including attorney-client or attorney work-product privilege), confidential, proprietary or
otherwise protected by law and all downloading, photocopying, distributing or otherwise using the Contents by
Others in any way is prohibited; (iv) sent for informational purposes only and unless expressly stated not intended
to be an electronic signature for purposes of binding any client of or Donald Charles Schwartz, Esq. and the Law
Offices of Donald C. Schwartz to any contract or agreement under the California Uniform Electronic Transaction
Act (CA Civil Code §1633.1-1633.17) and all other similar states & federal laws;  (iv) not intended or written and
may not be used for the purpose of avoiding federal taxes or penalties nor used to promote, market or recommend
any transaction or matter addressed in the Contents (See IRS Circular 230);  (v) Recipient should not save or file
electronic or paper copies of the Contents with publicly accessible records, and  (vi) subject to continued
application of the foregoing to any subsequent retransmission, publication or disclosure.


---------- Forwarded message ---------
From: **Donald Schwartz** <donald@lawofficedonaldschwartz.com>
Date: Wed, Feb 10, 2021 at 11:14 AM
Subject: Schwartz Foundation
To: <John.Torpey@morganstanley.com>


Hello Mr. Torpey,

I just left a voice message on your "remote line."

Please be advised that Margot Schwartz and Noah Schwartz corporate
officerships (if any they had) with the Schwartz Foundation have been terminated.

Please see the Statement of Information filed with the Secretary of State of the State of California and copy of void check - attached hereto.

I would like to secure a copy of any and all prior corporate authorizations for the Schwartz Foundation that Morgan Stanley has in its custody and control.

Please contact me to discuss establishing new account privileges or answer any other questions that you may have.

I look forward to working with you and thank you in advance for your anticipated cooperation.

cc: Mark Corrinet, Esq.

Donald Charles Schwartz, JD, MBA
Chairman of the Board
President/Chief Executive Officer
Schwartz Foundation
7960-B Soquel Drive, No. 291
Aptos, CA  95003
831-331-9909/Fax: 815-301-6556
donald@lawofficedonaldschwartz.com

Confidentiality, Limitation Of Use, And No Binding Effect
The preceding message contents and any attachments (collectively "Contents") are: (i) solely for the benefit of the person(s) or entity(ies) addressed (collectively "Recipient") and may not be relied upon by any other person(s) or entity(ies) ("Others") for any purpose without specific written permission of Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz;  (ii) confidential, private and contain non-disclosable information for the exclusive use of the Recipient (iii) protected by the Electronic Communications Act (18 U.S.C.§2510-2521) and or the Health Insurance Portability & Accountability Act of 1996 (42 USC 201) & its privacy rules and may also be legally privileged (including attorney-client or attorney work-product privilege), confidential, proprietary or otherwise protected by law and all downloading, photocopying, distributing or otherwise using the Contents by Others in any way is prohibited; (iv) sent for informational purposes only and unless expressly stated not intended to be an electronic signature for purposes of binding any client of or Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz to any contract or agreement under the California Uniform Electronic Transaction Act (CA Civil Code §1633.1-1633.17) and all other similar states & federal laws;  (iv) not intended or written and may not be used for the purpose of avoiding federal taxes or penalties nor used to promote, market or recommend any transaction or matter addressed in the Contents (See IRS Circular 230);  (v) Recipient should not save or file electronic or paper copies of the Contents with publicly accessible records, and  (vi) subject to continued application of the foregoing to any subsequent retransmission, publication or disclosure.

 Virus-free. www.avg.com

If you would like to unsubscribe from marketing e-mails from Morgan Stanley Wealth Management, you may do so here . Please note, you will still receive service e-mails from Morgan Stanley Wealth Management.

you will still receive service e-mails from Morgan Stanley Wealth Management.

You may have certain rights regarding the information that Morgan Stanley collects about you. Please see our Privacy Pledge https://www.morganstanley.com/privacy-pledge for more information about your rights.

To view Morgan Stanley's Client Relationship Summary and other important disclosures about our accounts and services, please visit www.morganstanley.com/disclosures/account-disclosures



Schwartz
Founda...01.pdf



SCHWARTZ FOUNDATION/ ATTN. MARGOT DUFFY SCHWARTZ                    2554

SCHWARTZ FOUNDATION/ ATTN.MARGOT DUFFY SCHWARTZ                     2554



**California Secretary of State**
Electronic Filing

**FILED**
Secretary of State
State of California

## Corporation - Statement of Information

Entity Name: SCHWARTZ FOUNDATION

| | |
|---|---|
| Entity (File) Number: | C0967388 |
| File Date: | 01/31/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GQ20115 |

**Detailed Filing Information**

1. Entity Name:

   SCHWARTZ FOUNDATION

2. Business Addresses:

   a. Street Address of Principal Office in California:

   7960-B Soquel Drive, No. 291
   Aptos, California 95003
   United States of America

   b. Mailing Address:

   7960-B Soquel Drive, No. 291
   Aptos, California 95003
   United States of America

3. Officers:

   a. Chief Executive Officer:

   Donald Charles Schwartz
   7960-B Soquel Drive, No. 291
   Aptos, California 95003
   United States of America

   b. Secretary:

   David  Richard Schwartz
   7960-B Soquel Drive, No. 291
   Aptos, California 95003
   United States of America

Document ID: GQ20115

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

# California Secretary of State
Electronic Filing

Officers (Cont'd):

c. **Chief Financial Officer:**

Charles Phinehas Schwartz, III
7960-B Soquel Drive, No. 291
Aptos, California 95003
United States of America

4. **Agent for Service of Process:**

Donald Charles Schwartz
7960-B Soquel Drive, No. 291
Aptos, California 95003
United States of America

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:   Donald Charles Schwartz

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GQ20115

# EXHIBIT K



From: **max management-engineering.com** <max@management-engineering.com>
Date: Tue, Feb 16, 2021 at 1:29 PM
Subject: Cease and desist Order
To: Margot Schwartz <margotduffyschwartz@gmail.com>

Do I stop paying Temitayo for her services and inform her to stop working?

# MARK STEVEN CORRINET
## ATTORNEY AT LAW

(ADMITTED IN CALIFORNIA STATE & FEDERAL)
(ADMITTED IN OREGON FEDERAL ONLY)

February 10, 2021

Max Meregillano
Custodian of Records
Schwartz Foundation
14665 Washington Avenue, No. 26
San Leandro, CA 94578

Re:    Schwartz Foundation

Dear Mr. Meregillano,

Please be advised that I have been retained by the Schwartz Foundation to notify you that the Board of Directors of the Schwartz Foundation has terminated any and all officer positions purportedly held by Margot Schwartz and Noah Schwartz. They have been instructed to return all books and records of the Schwartz Foundation to you at your office address as set forth above.

You are hereby instructed to cease and desist from engaging any further corporate activities with Margot Schwartz and Noah Schwartz other than to receive the books and records that they return to you.

If they do return books and records to you, please keep an inventory of what you receive.

Please feel free to contact me at the above contact information or Donald Charles Schwartz at the following address going forward as to Schwartz Foundation matters:

Donald Charles Schwartz
Chairman of the Board/President/Chief Executive Officer
7960-B Soquel Drive, No. 291
Aptos, CA 95003
831-331-9909/831-291-7080
Email: triallaw@cruzio.com

**2210 NW BAYSHORE LOOP • WALDPORT • OREGON 97394**
**(541) 563-5028 • EMAIL: CORRINETLAW@AOL.COM**

donald@lawofficedonaldschwartz.com

Thank you for your anticipated cooperation.

Sincerely

Mark Steven Corrinet
Attorney a law

cc:     Donald Charles Schwartz, Esq.
        Chairman of the Board
        Schwartz Foundation



**California Secretary of State**
Electronic Filing

**FILED**
Secretary of State
State of California

# Corporation - Statement of Information

Entity Name: SCHWARTZ FOUNDATION

| | |
|---|---|
| Entity (File) Number: | C0967388 |
| File Date: | 01/31/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GQ20115 |

**Detailed Filing Information**

1. Entity Name:

   SCHWARTZ FOUNDATION

2. Business Addresses:

   a. Street Address of Principal
      Office in California:

      7960-B Soquel Drive, No. 291
      Aptos, California 95003
      United States of America

   b. Mailing Address:

      7960-B Soquel Drive, No. 291
      Aptos, California 95003
      United States of America

3. Officers:

   a. Chief Executive Officer:

      Donald Charles Schwartz
      7960-B Soquel Drive, No. 291
      Aptos, California 95003
      United States of America

   b. Secretary:

      David Richard Schwartz
      7960-B Soquel Drive, No. 291
      Aptos, California 95003
      United States of America

Document ID: GQ20115

**California Secretary of State**
Electronic Filing

Officers (Cont'd):

   c.  Chief Financial Officer:                Charles Phinehas Schwartz, III
                                            7960-B Soquel Drive, No. 291
                                            Aptos, California 95003
                                            United States of America

4.  Agent for Service of Process:           Donald Charles Schwartz
                                            7960-B Soquel Drive, No. 291
                                          Aptos, California 95003
                                          United States of America

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:    Donald Charles Schwartz

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GQ20115

SUPCV 436

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT AN ATTORNEY (Name, State Bar number, and address):<br>NAME: David A. Stein, SBN 102556; Jessica M. Takano, SBN 184079<br>ADDRESS: Donahue Fitzgerald LLP, 1999 Harrison Street, 26th Floor<br>CITY, STATE, ZIP: Oakland, CA  94612<br><br>TELEPHONE NO: (510) 451-3300<br>FAX NO. (Optional): (510) 451-1527<br>EMAIL ADDRESS (Optional): dstein@donahue.com; jtakano@donahue.com<br>ATTORNEY FOR (Name): Plaintiffs Schwartz Foundation, Margot Schwartz, and Noah Schwartz | FOR COURT USE ONLY<br><br>ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Cruz<br>2/25/2021 2:57 PM<br>Alex Calvo, Clerk<br>By: Dajah de las Santos, Deputy |

**SUPERIOR COURT OF CALIFORNIA COUNTY OF SANTA CRUZ**

☑ 701 Ocean Street, Room 110     ☐ 1 Second Street, Room 300
    Santa Cruz, CA 95060               Watsonville, CA 95076
    Santa Cruz Branch                  Watsonville Branch

PLAINTIFF/PETITIONER: Schwartz Foundation, Margot Schwartz, and Noah Schwart
vs.
DEFENDANT/RESPONDENT: Donald C. Schwartz, et al.

| | |
|---|---|
| **AMENDMENT TO COMPLAINT** | CASE NUMBER:<br>21CV00416 |

## FICTITIOUS NAME (No order required)

       Upon filing the complaint in this case, plaintiff(s) being ignorant of the true name of a defendant, designated such defendant in the complaint by the fictitious name of _Doe 1_ ,

_____

and having discovered the defendants true name to be _Michael Lenor Osterberg_

_____ , plaintiff(s)

amend(s) the complaint by inserting such true name instead of such fictitious name wherever it appears in the complaint.

Date: _February 25, 2021_____

                  ☑ Attorney(s) for Plaintiff(s)     ☐ Party without Attorney

## INCORRECT NAME (Requires order thereon)

       Plaintiff(s) having designated a defendant in the complaint by the incorrect name of _____

_____

and having discovered the true name of the defendant to be _____

_____ amend(s) the complaint by inserting such true name instead of such incorrect name wherever it appears in the complaint.

Date: _____

                  ☐ Attorney(s) for Plaintiff(s)     ☐ Party without Attorney

## ORDER TO AMEND INCORRECT NAME

       Proper cause appearing, the above amendment to the complaint is allowed.

Date: _____      _____

                                Judge of the Superior Court

**EXHIBIT 3**

Mark Steven Corrinet, Esq. (SBN 190471)
Law Office of Mark Steven Corrinet
2210 NW Bayshore Loop
Waldport, OR  97394
541-563-5028
email:  corrinetlaw@aol.com
Fax:  541-275-9630

Donald Charles Schwartz, Esq. (SBN 122476)
Law Offices of Donald C. Schwartz
7960-B Soquel Drive, No. 291
Aptos, CA  95003
831-331-9909; Facsimile 815-301-6556
email: donald@lawofficedonaldschwartz.com

Attorneys for Petitioner
Donald Charles Schwartz

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
1/15/2021 4:59 PM
Alex Calvo, Clerk
By Declan Salsedo, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CRUZ

| | |
|---|---|
| In Re:<br><br>      Schwartz Foundation | ]  No. 21CV00032<br>]<br>]  **AMENDED PETITION FOR**<br>]  **DECLARATORY**<br>]  **RELIEF – VERIFIED**<br>] |

Petitioner Donald Charles Schwartz alleges as follows:

### SUMMARY

[1]    This case pertains to the continued operation and management of the Schwartz Foundation, a non-profit California corporation.

### JURISDICTION AND VENUE

[2]    Jurisdiction and venue exists in Santa Cruz County because petitioner Donald Charles Schwartz is a founding Member of the Board of the Schwartz Foundation with business offices in Santa Cruz County and is conducting the affairs of the Schwartz Foundation in said County.

**PARTIES**

[3]     Petitioner Donald Charles Schwartz, is an individual doing business in the County of Santa Cruz. Petitioner is a duly licensed attorney in the State of California.

[4]     The Schwartz Foundation is a non-profit corporation formed under the laws of the State of California.

**GENERAL ALLEGATIONS**

[5]     The Schwartz Foundation was formed by its founding Members of the Board of Directors: Robert A. D. Schwartz, Donald Charles Schwartz and Thom Picarello. A true and correct copy of the Articles of Incorporation of the Schwartz Foundation filed with the Department of Justice, State of California are attached hereto as Exhibit 1.

[6]     Robert A.D. Schwartz was the father of Donald Charles Schwartz. At the time of the founding of the Schwartz Foundation in 1979, Thom Picarello was the law partner of Robert A. D. Schwartz.

[6]     In February 2017, Robert A. D. Schwartz died at the age of 93-years old, thereby leaving two living Board Members of the Schwartz Foundation, i.e., Donald Charles Schwartz and Thom Picarello.

[7]     At the time of the passing of Robert A. D. Schwartz in 2017, Thom Picarello was no longer engaged in the practice of law and was treating for cancer. Now, as a recent cancer survivor, Thom Picarello has expressed a desire not to be involved *in any way* with the Schwartz Foundation, thereby leaving Donald Charles Schwartz as the only participating Board Member of the Schwartz Foundation.

[8]     The Bylaws of the Schwartz Foundation require a quorum of two Board Members to call and conduct a Board Meeting so that the business of the Schwartz Foundation can be accomplished. Without the cooperation of Thom Picarello, no Board Meeting can be called and conducted. A true and correct copy of the Bylaws of the Schwartz Foundation are attached hereto as Exhibit 2.

[9]     Petitioner Donald Charles Schwartz has no other alternative but to seek judicial

2

relief to re-establish a functioning Board of Directors to carry-on the legacy of the Schwartz Foundation.

## FIRST CAUSE OF ACTION
### [For Appointment of Board Members]

[10]    Plaintiff incorporates by reference herein, as though fully set forth, each of the allegations contained in Paragraphs 1-9 above.

[11]    The Schwartz Foundation traces its roots to The Charles P. and Lavinia Schwartz Citizenship Education Project established in Chicago, Ill. in the 1960s. Charles P. Schwartz graduated from the University of Chicago Law School in 1909.  As the personal attorney for Nobel Peace Prize Laureate Jane Addams, they established the first Juvenile Court in America, promoted the legal rights of immigrants coming to America and began what is now the modern woman's movement. Jane Addams and Charles P. Schwartz founded a Constitutional Study Group with Clarence Darrow and Roger Baldwin that became the American Civil Liberties Union ("ACLU").  As a co-founder of the ACLU, Charles P. Schwartz was also an advisor to President Franklin Delano Roosevelt on issues related to immigration. Charles P. Schwartz was also the President, University of Chicago Law School Alumni Association. Charles P. and Lavinia Schwartz through The Schwartz Citizenship Education Project funded numerous doctoral dissertations in the Department of Education, University of Chicago exploring issues related to barriers of various immigration groups to becoming productive members of the American society (i.e., citizenship). (Indigenous populations were also studied.)

After the passing of his father - Charles P. Schwartz - his son Robert A. D. Schwartz initiated the Schwartz Foundation with his son, Donald Charles Schwartz, and Robert A. D. Schwartz' law partner, Thom Picarello.

//

//

3

As the Chairman, Democratic Party, Northern California, Robert A. D. Schwartz[1] was particularly taken-aback by the perversion of the American democratic systems by then-President Richard M. Nixon and his immediate staff during the wiretap scandal related to the Democratic National Headquarters at the Watergate Complex, Washington, D.C. Robert A. D. Schwartz would often say, "Haldeman, Ehrlichman, Mitchell and Dean were the best and the brightest, and studied at the finest universities, but they had no moral compass." By establishing the Schwartz Foundation, the principal goal was to further Charles P. Schwartz' concept of Citizenship Education through what Robert A. D. Schwartz determined to be an effective way in doing so, i.e., Peer Teaching.

By focusing on the "affective effect" of the process of peer teaching on the tutor (not the tutee), it came to be understood that the tutor actively learned how to care for another human being and in doing so was *learning through action* how to be a good citizen. Through the Schwartz Foundation, Robert A. D. Schwartz funded Peer Teaching conventions in Sacramento and paid for substitute teachers so that every teacher in the entire Oakland Unified School District could attend. Robert A.D. Schwartz would eventually become heralded as Oakland Citizen of the Year 1996 (elected by the New Oakland Committee, the Oakland Chamber of Commerce and the Oakland Board of Realtors). Mayor Libby Schaff and the Oakland City Council would come to designate December 14th as "Bob Schwartz Day" in Oakland, California.[2] In doing so, the concept of Peer Teaching in the public schools has literally spread through the United States, if not the World.

Throughout the many decades, petitioner Donald Charles Schwartz assisted his father, Robert A. D. Schwartz, in pursuing the activities of the Schwartz Foundation.

[12]   By this civil action, Petitioner Donald Charles Schwartz seeks to re-establish a

---

[1] As an M.I.T, Electrical Engineer and State of California licensed attorney, Robert A.D. Schwartz held numerous patents in the field of computers and computer keyboard technology.
[2] Robert A. D. Schwartz would also be instrumental in Berkeley City Councilmember Ronald V. Dellums obtaining a Congressional seat in 1970 as well as *single-handedly* placing Governor Jerry Brown in the Governor's Office in 1975. Bob Schwartz and Governor Jerry Brown were close confidants.

functioning Board of Directors of the Schwartz Foundation to carry on his father's dream of promoting citizenship education, vocational education and music – as stated in the Articles of Incorporation.

The proposed Board Members are Donald Charles Schwartz, Stevon Scott Schwartz and Charles P. Schwartz, III.

[13]   **Donald Charles Schwartz**

As the only active Board Member of the Schwartz Foundation, petitioner Donald Charles Schwartz brings a continuity to the Board of Directors in the spirit of his grandfather's and father's public service. In the 1970s through the 1980s, Donald Charles Schwartz served on the Legislative Staff of the Honorable Ronald V. Dellums and the Congressional Black Caucus. In the words of Donald Hopkins, Congressman Dellums' District Manager:

> "Don Schwartz was instrumental in the passage of the Comprehensive Anti-Apartheid Act of 1986."

This legislation, passed into law by a United States Senate override of a President Ronald Reagan veto, had the immediate effect of freeing Nelson Mandela from the Robben Island Prison, eliminating the apartheid system in South Africa and dismantling a nuclear (and other) arsenal. While in Washington, D.C., Petitioner Donald Charles Schwartz earned a Masters in Business Administration in Finance and Investments (M.B.A.) from the George Washington University and a Juris Doctorate (J.D.) from The Georgetown University Law Center. He also served for some 7-years on Staff of the Assistant Attorney General in Charge of the Antitrust Division, United States of America, Washington, D.C. as a Senior Financial Analyst.

As the personal attorney for several decades to his father related to the family business and real estate operations, Petitioner Donald Charles Schwartz became close to his father. His father would want his sons and grandchildren to carry-on the good works of the Schwartz Foundation.

[14]   **Stevon Scott Schwartz**

A proposed substitution on the Board of Directors of the Schwartz Foundation, Stevon Scott Schwartz, is the brother of Donald Charles Schwartz. Steven Scott Schwartz is a two-

5

degree graduate of the University of California, Berkeley. While at the University of California, Berkeley, Steven Scott Schwartz was a prolific track athlete as, inter alia, the every-day training partner of Eddie Hart, a former World Record Holder in the Men's 110-meter race and recipient of an Olympic Gold Medal at the Munich Olympics in 1972. Committing his life to helping youth, Steven Scott Schwartz has spent a 40-year career as a track and field/football coach at various Oakland Public School High Schools, including Oakland Technical, Oakland High School, Castlemont High School and McClymonds High School. He has numerous alumni coaching and playing professional sports in the National Football League and Major League Baseball as well as universities and colleges. While serving his deep faith and religious beliefs, Stevon Scott Schwartz was a 20-year Lead Singer of the Oakland Interfaith Gospel Choir. Stevon Scott Schwartz has exemplified a life of "good citizenship."

[15]    **Charles P. Schwartz, III**

Named for his great-grandfather, Charles P. Schwartz, III is the grandson of Robert A.D. Schwartz as well as petitioner's son.[1] Charles P. Schwartz was the closest grandchild to Robert A. D. Schwartz. As a scholar-athlete, Charles P. Schwartz, III was a straight-A graduate of Aptos High School and two-time Central Coast Section Football Champion. Charles P. Schwartz, III served as a Congressional Intern in Washington, D.C. for Congressman Jimmy Panetta as well as President, Bernie Sanders Club, University of California, Davis. While earning two degrees at the University of California, Davis, Charles P. Schwartz, III served as a Panelist on the (experimental) Neighborhood Restorative Court operating out the Yolo County District Attorney's Office. Charles P. Schwartz, III has shown an exemplary commitment to "good citizenship."

---

[1] Charles P. Schwartz, Jr. was Robert A. D. Schwartz' brother and graduated Summa Cum Laude, Harvard University Law School, later becoming President/Chairman of the Board, Champion Parts Remanufacturing Corporation.

[14]   Therefore, Petitioner seeks an order of this court affirming his position as a Member of the Board of Directors of the Schwartz Foundation as well as appointing Stevon Scott

Schwartz and Charles P. Schwartz, III to fill the remaining positions on the Board of Directors.

Wherefore, Petitioner prays judgment as set forth below.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment as follows:

[1]   That Donald Charles Schwartz has been since 1979, and continues to be, a Member in good standing of the Board of Directors of the Schwartz Foundation as set forth in the Articles of Incorporation filed with the Department of Justice, State of California;

[2]   That Stevon Scott Schwartz is a Member of the Board of Directors of the Schwartz Foundation as set forth in the Articles of Incorporation filed with the Department of Justice, State of California;

[3]   That Charles P. Schwartz, III is a Member of the Board of Directors of the Schwartz Foundation as set forth in the Articles of Incorporation filed with the Department of Justice, State of California; and

[4]   For such further, and/or different relief as the Court may deem just and proper.

Dated: January 4, 2021.

Mark Steven Corrinet, Esq.
Attorney for Petitioner

7

1
2                                **VERIFICATION**

3        I, Donald Charles Schwartz, declare:

4        I am the petitioner herein.

5
6        I certify under penalty of perjury under the laws of the State of California that the foregoing
    is true and correct, unless as stated on information and belief.

7
8    Date: January 4, 2021

9
10
11                                          _____
                                            Donald Charles Schwartz

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8

**EXHIBIT 1**

ARTICLES OF INCORPORATION

OF

SCHWARTZ FOUNDATION

967388

**ENDORSED**
**F I L E D**
In the office of the Secretary of State
of the State of California

NOV 14 1979

MARCH FONG EU, Secretary of State

Gloria J. Carroll
Deputy

ONE:    The name of this Corporation is:

Schwartz Foundation

TWO:    The purposes for which this corporation is formed are:

(a)  The specific and primary purposes are to promote, encourage and assist the development of vocational, musical and citizenship education.

(b)  The general purposes and powers are to have and exercise all rights and powers conferred on non-profit corporations under the laws of California, including the power to contract, rent, buy, or sell personal or real property; provided, however, that this corporation shall not, except to an insubstantial degree, engage in activities or exercise any powers that are not in furtherance of the primary purposes of this corporation.

(c)  No substantial part of the activities of this corporation shall consist of the carrying on of propaganda or otherwise attempting to influence legislation, nor shall the corporation participate in, or intervene in (including publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

THREE:    This corporation is organized pursuant to the General Non-profit Corporation Law of the State of California, and does not contemplate pecuniary gain or profit to the members of the corporation and is organized for non-profit purposes.

FOUR:    The county in this state where the principal office for the transaction of business of the corporation is located is Alameda County.

FIVE:    The names and addresses of the persons who are to act in the capacity of directors until the selection of their successors are:

Robert A. D. Schwartz

Donald C. Schwartz

81 Kimberlin Hts. Drive
Oakland, California  94621

513 Independent Road
Oakland, California  94621

Thom R. Picarello

4860 Seven Hills Road
Castro Valley, California  94546

SIX:    Any action required or permitted to be taken by the
Board of Directors under any provisions of law may be taken
without a meeting, if all members of the Board shall individually or
collectively consent in writing to such action.  Such written consent
or consents shall be filed with the minutes of the proceedings of the
Board.  Such action by written consent shall have the same force and
effect as the unanimous vote of such Directors.  Any certificate or other
document filed under any provision of law which relates to action so taken
shall state that the action was taken by the unanimous written consent
of the Board of Directors without a meeting and that the Articles of
Incorporation authorize the Directors to so act, and such statement shall
be prima facie evidence of such authority.

SEVEN:    The manner of which Directors shall be chosen and removed from
office, their qualifications, powers, duties, compensation, and tenure of
office, the manner of filling vacancies on the Board, and the manner of
calling and holding meetings of Directors, shall be stated in the Bylaws.

    The authorized number, if any, the qualifications of members of
the corporation, the filling of vacancies, the different classes of membership,
if any, the property, voting, and other rights and privileges of members,
and their liability for dues and assessments and the method of collection
thereof, and the termination of membership or transfer thereof shall be
stated in the Bylaws.

EIGHT:    The property of this corporation is irrevocably dedicated to
charitable purposes and no part of the net income or assets of the organi-
zation shall ever inure to the benefit of any director, officer, or member
thereof or to the benefit of any private persons.

    On the dissolution or winding up of the corporation, its assets
remaining after payment of or provision for payment of, all debts and
liabilities of this corporation, shall be distributed to a non-profit fund,
foundation, or corporation which is organized and operated exclusively for
charitable purposes and which has established its tax-exempt status under
Section 501 (c) (3) of the Internal Revenue Code.

    If this corporation holds any assets on trust, or the
corporation is formed for charitable purposes, such assets shall be disposed
of in such manner as may be directed by the decree of the superior court of
the county in which the corporation has its principal office, on petition
therefore by the Attorney General or by any person concerned in the liquida-
tion, in a proceeding to which the Attorney General is a party.

NINE:     Notwithstanding any other provision of these Articles of Incorporation, if this corporation is classified as a private foundation under Section 509 of the Internal Revenue Code, the corporation shall be, while such status is in effect, subject to the following limitations and restrictions:

(a)   The corporation shall distribute its income for each taxable year at such time and in such manner as not to become subject to the tax on indistributed income imposed by Section 4942 of the Internal Revenue Code of 1954.

(b)   The corporation shall not engage in any act of self-dealing as defined in Section 4941(d) of the Internal Revenue Code of 1954.

(c)   The corporation shall not retain any excess business holdings as defined in Section 4943(c) of the Internal Revenue Code of 1954.

(d)   The corporation shall not make any investments in such manner as to subject it to tax under Section 4944 of the Internal Revenue Code of 1954.

(e)   The corporation shall not make any taxable expenditures as defined in Section 4945(d) of the Internal Revenue Code of 1954.

IN WITNESS WHEREOF, the undersigned, being persons named above as the first Directors, have executed these Articles of Incorporation on _August 14th_, 1979.

Robert A. D. Schwartz

Donald C. Schwartz

Thom. R. Picarello

OFFICIAL SEAL
MARILYN L SOARES
NOTARY PUBLIC - CALIFORNIA
COUNTY OF ALAMEDA
My Commission Expires March 1, 1988

State of California
County of Alameda

On _August 14_____, 1979, before me, _Marilyn L._
_Soares_____, a Notary Public for the State of
California, personally appeared Robert A. D. Schwartz, Donald Schwartz,
and Thom R. Picarello, known to me to be the persons whose names and
subscribed to the foregoing Articles of Incorporation, and acknowledged
that they executed the same.

Notary Public for the State of California.
My Commission expires _3/1_____, ~~1979.~~
1980

**EXHIBIT 2**

BYLAWS OF

SCHWARTZ FOUNDATION

ARTICLE 1.   OFFICES

SECTION 1.   PRINCIPAL OFFICE

The principal office of the corporation for the transaction of its business is located in Alameda County, California.

SECTION 2.   CHANGE OF ADDRESS

The county of the corporation's principal office can be changed only by amendment of the Articles of Incorporation of this corporation and not otherwise.  The Board of Directors may, however, change the principal office from one location to another within the named county by noting the changed address and effective date below, and such changes of address shall not be deemed an amendment of these Bylaws:

| | | |
|---|---|---|
| _____ | Dated: _____ | , 1979 |
| _____ | Dated: _____ | , 1979 |
| _____ | Dated: _____ | , 1979 |

SECTION 3.   OTHER OFFICES

The corporation may also have offices at such other places, within or without the State of California, where it is qualified to do business, as its business may require and as the Board of Directors may, from time to time designate.

ARTICLE 2.   MEMBERS

SECTION 1.   DETERMINATION OF MEMBERS

The corporation shall make no provision for members thereof as such except, however, pursuant to Section 9603 of the Corporations Code of the State of California, for the purpose of any statutory provision or rule of law relating to nonprofit corporations, the persons constituting its Board of Directors shall be considered the members of the corporation and shall exercise all of the rights and powers of members thereof.

ARTICLE 3.   DIRECTORS

SECTION 1.   NUMBER

The corporation shall have three Directors and collectively they shall be known as the Board of Directors.  The number may be changed by amendment of this Bylaw, or by repeal of this Bylaw and adoption of a new Bylaw, as provided in these Bylaws.

## SECTION 2.  POWERS

The Directors shall exercise the powers of the corporation, control its property, and conduct its affairs, except as otherwise provided by law.

## SECTION 3.  DUTIES

It shall be the duty of the Directors to:

(a)  Perform any and all duties imposed on them collectively or individually by law, by the Articles of Incorporation of this corporation, or by these Bylaws.

(b)  Appoint and remove, employ and discharge, and, except as other-wise provided in these Bylaws, prescribe the duties and fix compensation, if any, of all officers, agents and employees of the corporation.

(c)  Supervise all officers, agents, and employees of the corporation to assure that their duties are performed properly.

(d)  Meet at such times and places as required by these Bylaws.

(e)  Register their addresses with the Secretary of the corporation, and notices of meetings mailed or telegraphed to them at such addresses shall be valid notices thereof.

## SECTION 4.  TERMS OF OFFICE

Each Director shall hold office until the next annual meeting for election of the Board of Directors as specified in this Article, and until his or her successor is elected and qualifies.

## SECTION 5.  PLACE OF MEETINGS

Meetings shall be held at the principal office of the corporation unless otherwise provided by the Board or at such place within or without the State of California which has been designated from time to time by resolution of the Board of Directors.  In the absence of such designation, meetings shall be held at the principal office of the corporation, provided that any such meeting held elsewhere shall be valid if held on the written consent of all directors given either before or after the meeting and filed with the Secretary of the corporation.

## SECTION 6.  REGULAR AND ANNUAL MEETINGS

Regular meetings of Directors shall be held on the second Monday of each January at 10:00 a.m., unless such day falls on a legal holiday, in which event the regular meeting shall be held at the same hour and place on the next succeeding day.

At the Annual regular meeting of Directors the Directors shall be elected by the Board of Directors.  Cumulative voting for the election of Directors shall not be permitted.  The candidates receiving the highest number of votes up to the number of Directors to be elected shall be elected.  Each Director shall cost one vote, with voting being by ballot only.

## SECTION 7.  SPECIAL MEETINGS

Special meetings of the Board of Directors may be called by the President, or, if he or she is absent or is unable to refuses to act, by the Vice-President, or by any two Directors, and such meetings shall be held at the place, within or without the State of California, designated by the person or persons calling the meeting, and in the absence of such designation, at the principal office of the corporation.

## SECTION 8.  NOTICE OF MEETINGS

The Secretary of the corporation, or other person designated by the President, shall deliver notice of the time and place of meetings of the Board of Directors to each Director personally or by telegram within three (3) days or by United States mail at least seven (7) days, prior to the day of the meeting, except that notice of all regular meetings of Directors, except for the annual regular meeting of Directors held for the election of Directors, it hereby dispensed with and except as other- wise provided in these Bylaws or under law.  If sent by mail or telegram, the notice shall be deemed to be delivered on its deposit in the United States mail or on its delivery to the telegraph company.  Such notice shall be addressed to each Director at his or her address as shown on the books of the corporation.  If the address of a Director is not so shown and is not readily ascertainable, the notice shall be addressed to him or her at the city or place in which the meetings of Directors are regularly held. Notice of the time and place of holding of an adjourned meeting need not be given to absent Directors if the time and place are fixed at the meeting adjourned.

## SECTION 9.  CONTENT OF NOTICE

Notice of meetings not herein dispensed with shall specify the place, day and hour of the meeting and the general nature of the business to be transacted.

## SECTION 10.  WAIVER OF NOTICE AND CONSENT TO HOLDING MEETINGS

The transactions of any meeting of the Board, however called and noticed or wherever held, are as valid as though the meeting had been duly held after proper call and notice, provided a quorum, as hereinafter defined, is present and provided that either before or after the meeting each Director not present signs a waiver of notice, a consent to holding the meeting, or an approval of the minutes thereof.  All such waivers, consents, or approvals shall be filed with the corporate records or made part of the minutes of the meeting.

## SECTION 11.  QUORUM FOR MEETINGS

A quorum shall consist of a majority of the Board of Directors.

Except as otherwise provided in there Bylaws or in the Articles of Incorporation of the corporation, or by law, no business shall be con- sidered by the Board at any meeting at which a quorum, as hereinafter defined, is not present, and the only motion which the Chair shall enter- tain at such meeting is a motion to adjourn from time to time until the time fixed for the next regular meeting of the Board.

When a meeting is adjourned for lack of a quorum, it shall not be necessary to give any notice of the time and place of the adjourned meeting or of the business to be transacted at such meeting, other than by announcement at the meeting at which the adjournment is taken.

The Directors present at a duly called and held meeting at which a quorum is initially present may continue to do business notwithstanding the loss of a quorum at the meeting due to a withdrawal of Directors from the meeting.

## SECTION 12.   MAJORITY ACTION AS BOARD ACTION

Every act or decision done or made by a majority of the Directors present at a meeting duly held at which a quorum is present is the act of the Board of Directors, unless the law, the Articles of Incorporation of this corporation, or these Bylaws require a greater number.

## SECTION 13.   CONDUCT OF MEETINGS

Meetings of the Board of Directors shall be presided over by the President of the corporation or, in his or her absence, by the Vice-President of the corporation or, in the absence of both, by a Chairman chosen by a majority of the Directors present at the meeting.  The Secretary of the corporation shall act as Secretary of all meetings of the Board, provided that in his or her absence, the presiding officer shall appoint another person to act as Secretary of the meeting.

Meetings shall be governed by Roberts' Rules of Order, as such rules may be revised from time to time, insofar as such rules are not inconsistent with or in conflict with these Bylaws, with the Articles of Incorporation of this corporation, or with law.

## SECTION 14.   ACTION BY UNANIMOUS WRITTEN CONSENT WITHOUT MEETING

Any action required or permitted to be taken by the Board of Directors under any provision of law may be taken without a meeting, if all members of the Board shall individually or collectively consent in writing to such action.  Such written consent or consents shall be filed with the minutes of the proceedings of the Board.  Such action by written consent shall have the same force and effect as the unanimous vote of the Directors.  Any certificate or other document filed under any provision of law which relates to action so taken shall state that the action was taken by unanimous written consent of the Board of Directors without a meeting and that the Articles of Incorporation and Bylaws of this corporation authorize the Directors to so act, and such statement shall be prima facie evidence of such authority.

## SECTION 15.   VACANCIES

Vacancies on the Board of Directors shall exist (1) on the death or resignation of any Director; and (2) whenever the number of authorized Directors is increased.

The Board of Directors may declare vacant the office of a Director (1) if he or she is declared of unsound mind by an order of court; or (2) if within sixty (60) days after notice of his or her election to fill a vacancy he or she does not accept the officer either in writing or by attending a meeting of the Board of Directors.

Vacancies caused by the death or resignation of a Director, or by an amendment of the Articles of Incorporation or of these Bylaws increasing the number of authorized Directors shall be filed by a majority of the remaining Directors.

A person elected to fill a vacancy as provided in this section shall hold office until the annual election of the Board of Directors or until his or her death or resignation from office.

## SECTION 16.   NON-LIABILITY OF DIRECTORS

The Directors shall not be personally liable for the debts, liabilities, or other obligations of the corporation.

## SECTION 17.   INDEMNITY BY CORPORATION FOR LITIGATION EXPENSES OF OFFICER, DIRECTOR, OR EMPLOYEE

Should any person be sued, either alone or with others, because he or she was or is a Director, officer, or employee of the corporation, in any proceeding arising out of his or her alleged misfeasance of nonfeasance in the performance of his or her duties or out of any alleged wrongful act against the corporation, indemnity for his or her reasonable expenses, including attorney's fees incurred in the defense of the proceeding, may be assessed against the corporation, its receiver, or its trustee, by the court in the same or a separate proceeding if (1) the person sued is successful in whole or in part, or the proceeding against him or her is settled with the approval of the court; and (2) the court finds that his or her conduct fairly merits such indemnity. The amount of such indemnity shall be so much of the expenses, including attorney's fees incurred in the defense of the proceeding, as the court finds to be reasonable.

## ARTICLE 4.   OFFICERS

## SECTION 1.   NUMBER OF OFFICERS

The officers of the corporation shall be a President, a Vice-President, a Secretary, and a Treasurer. The corporation may also have, as determined by the Board of Directors, one or more addition Vice-Presidents, Assistant Secretaries, Assistant Treasurers, or other such officers. One person may hold two or more offices, except those of President and Secretary.

## SECTION 2.   QUALIFICATION, ELECTION, AND TERM OF OFFICE

Any person may serve as officer of this corporation. Officers shall be elected by the Board of Directors, at any time, and each officer shall hold office until he or she resigns or is removed or is otherwise disqualified to serve, or until his or her successor shall be elected and qualified, whichever occurs first.

## SECTION 3.   SUBORDINATE OFFICERS

The Board of Directors may appoint such other officers or agents as it may deem desirable, and such officers shall serve such terms, have such authority, and perform such duties as may be prescribed from time to time by the Board of Directors.

## SECTION 4.  REMOVAL AND RESIGNATION

Any officer may be removed, either with or without cause, by the Board of Directors, at any time. Any officer may resign at any time by giving written notice to the Board of Directors or to the President or Secretary of the corporation. Any such resignation shall take effect at the date of the receipt of such notice or at any later date specified therein, and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The above provisions of this section shall be superseded by any conflicting terms of a contract which has been approved or ratified by the Board of Directors relating to the employment of any officer of the corporation.

## SECTION 5.  VACANCIES

Any vacancy caused by the death, resignation, removal, disqualification, or otherwise, of any officer shall be filled by the Board of Directors. In the event of a vacancy in any office other than that of President, such vacancy may be filled temporarily by appointment by the President until such time as the Board shall fill the vacancy. Vacancies occuring in offices of officers appointed at the discretion of the Board may or may not be filled as the Board shall determine.

## SECTION 6.  DUTIES OF PRESIDENT

The President shall be the chief executive officer of the corporation and shall, subject to the control of the Board of Directors, supervise and control the affairs of the corporation. He or she shall perform all duties incident to his or her affairs and such other duties as may be required by law, by the Articles of Incorporation of this corporation, or by these Bylaws, or which may be prescribed from time to time by the Board of Directors. He or she shall preside at all meetings of the Board of Directors and, if applicable, of the members of the corporation. Except as otherwise expressly provided by law, by the Articles of Incorporation, or by these Bylaws, he or she shall, in the name of the corporation, execute such deeds, mortgages, bonds, contracts, checks or other instruments which may from time to time be authorized by the Board of Directors.

## SECTION 7.  DUTIES OF VICE-PRESIDENT

In the absence of the President, or in the event of his or her inability or refusal to act, the Vice-President shall perform all the duties of the President, and when so acting shall have all the powers of, subject to all the restriction on, the President. The Vice-President shall have other such powers and perform such other duties as may be prescribed by law, by the Articles of Incorporation, or by these Bylaws, or as may be prescribed by the Board of Directors.

## SECTION 8.  DUTIES OF SECRETARY

The Secretary shall:

Certify and keep at the principal office of the corporation the original, or a copy, of these Bylaws as amended or otherwise altered to date.

Keep at the principal office of the corporation or at such other place as the Board may determine, a book of minutes of all meetings of the Directors, recording therein the time and place of holding, whether regular or special, and, if special, how called, how notice thereof was given, the names of those

present at the meeting, and the proceedings thereof.

See that all notices are duly given in accordance with the provisions of these Bylaws or as required by law.

Be custodian of the records and of the seal of the corporation and see that the seal is affixed to all duly executed documents, the execution of which on behalf of the corporation under its seal is authorized by law or by these Bylaws.

Keep at the principal office of the corporation a membership book containing the name and address of each and any member, and in the case where any membership has been terminated, he or she shall record such fact in the membership book together with the date on which such membership ceased.

Exhibit at all reasonable times to any Director of the corporation, or to his or her agent or attorney, on request therefore, the Bylaws, the membership book, and the minutes of the proceedings of the Directors of the corporation.

In general, perform all duties incident to the office of Secretary and such other duties as may be required by law, by the Articles of Incorporation of this corporation, or by these Bylaws, or which may be assigned to him or her from time to time by the Board of Directors.

SECTION 9.   DUTIES OF TREASURER

Subject to the provisions of ARTICLE 6 of these Bylaws, the Treasurer shall:

Have charge and custody of, and be responsible for, all funds and securities of the corporation, and deposit all such funds in the name of the corporation in such banks, trust companies, or other depositories as shall be selected by the Board of Directors.

Receive, and give receipt for, monies due and payable to the corporation for any source whatsoever.

Disburse or cause to be disbursed the funds of the corporation as may be directed by the Board of Directors, taking proper vouchers for such disbursements.

Keep and maintain adequate and correct accounts of the corporation's properties and business transactions, including accounts of its assets, liabilities, receipts, disbursements, gains and losses.

Exhibit at all reasonable times the books of account and financial records to any Director of the corporation, or to his or her agent or attorney, on request therefore.

Render to the President and Directors, whenever requested, an account of any or all of his or her transactions as Treasurer and of the financial condition of the corporation.

Prepare, or cause to be prepared, and certify, or cause to be certified, the financial statements to be included in any required reports.

In general, perform all duties incident to the office of Treasurer and such other duties as may be required by law, by the Articles of Incorporation of the corporation, or by these Bylaws, or which may be assigned to him or her from time to time by the Board of Directors.

## ARTICLE 5.  COMMITTEES

### SECTION 1.  EXECUTIVE COMMITTEE

The Board of Directors may, by a majority vote of its members, designate two (2) or more of its members to constitute an Executive Committee and delegate to such Committee any of the powers and authroity of the Board in manage,emt of the business and affairs of the corporation, except the power to adopt, amend, or repeal the Bylaws, and provided that the delegation of such Committee and the delegation thereto of authority shall not operate to relieve the Board of Directors or any individual Director of any responsibility imposed on it or him or her by law, by the Articles of Incorporation of this corporation, or by these Bylaws.  By a majority vote of its members, the Board may at any time revoke or modify any or all of the authority so delegated, increase or decrease but not below two (2) the number of its members, and fill vacancies therein from the members of the Board.  The Committee shall establish rules and regulations for its meetings and meet at such times as it deems necessary, provided that a reasonable notice of all meetings of the Committee shall be given to its members, and no act of the Committee shall be valid unless approved by a vote or written consent of a majority of its members.  The Committee shall keep regular minutes of its proceedings and report the same to the Board from time to time as the Board may require.

### SECTION 2.  STANDING AND AD HOC COMMITTEES

The corporation shall have such Standing and Ad Hoc Committees as may from time to time be designated by resolution of the Board of Directors.

## ARTICLE 6.  EXECUTION OF INSTRUMENTS, DEPOSITS AND FUNDS

### SECTION 1.  EXECUTION OF INSTRUMENTS

The Board of Directors, except as otherwise provided in these Bylaws, may be resolution authorize any officer or agent of the corporation to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.  Unless so authorized, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or engagement or to pledge its credit or to render it liable monetarily for any purpose or in any amount.

### SECTION 2.  CHECKS AND NOTES

Except as otherwise specifically determined by resolution of the Board of Directors, or as otherwise required by law, checks, drafts, promissory notes, orders for payments of money, and other evidence of indebtedness of the corporation shall be signed by the Treasurer and countersigned by the President of the corporation.

### SECTION 3.  DEPOSITS

All funds of the corporation shall be deposited from time to time to the

credit of the corporation in such banks, trust companies, or other depositories as the Board of Directors may select.

## SECTION 4.  GIFTS

The Board of Directors may accept on behalf of the corporation any contribution, gift, bequest, or devise for the general purposes or for any special purpose of the corporation.

## ARTICLE 7.  CORPORATE RECORDS, REPORTS AND SEAL

### SECTION 1.  MINUTES OF MEETINGS

The corporation shall keep at its principal office, or at such other place as the Board of Directors may order, a book of minutes of all meetings of Directors and of all meetings of members, if any, with the time and place of holding, whether regular or special, and, if special, how called, the notice given, the names of those present and the proceedings thereof.

### SECTION 2.  BOOKS OF ACCOUNT

The corporation shall keep and maintain adequate and correct accounts of its properties and business transactions, including accounts of its assets, liabilities, receipts, disbursements, gains, and losses.

### SECTION 3.  INSPECTION BY DIRECTORS

Every Director shall have the absolute right at any reasonable time to inspect all books, records, documents of ebery kind, and the physical properties of the corporation.

### SECTION 4.  CORPORATE SEAL

The Board of Directors may adopt, use, and at will alter, a corporate seal.  Such seal shall be affixed to all corporate instruments, but failure to affix it shall not affect the validity of any such instrument.

## ARTICLE 8.  FISCAL YEAR

### SECTION 1.  FISCAL YEAR OF THE CORPORATION

The fiscal year of the corporation shall begin on the first day of January and end on the last day of December.

## ARTICLE 9.  BYLAWS

### SECTION 1.  AMENDMENT

Subject to any provision of law applicable to the amendment of Bylaws of nonprofit corporations, these Bylaws, or any of them, may be altered, amended, or repealed and new Bylaws adopted as follows:

(a) Subject to the power of the members, if any, to change or repeal them, by the vote of a majority of Directors present at any regular or special meeting of Directors, at which a quorum is present, provided that notice of such meeting and of the intention to change the Bylaws thereat is given each Director as provided in ARTICLE 3, Section 9 of these Bylaws, or by written consent of all Directors without a meeting as provided in

ARTICLE 3, Section 15, of these Bylaws, provided, however that a Bylaw fixing or changing the number of Directors of the corporation may not be adopted, amended, or repealed except as provided in Paragraph (b) of this section; or

(b) By the written consent of a majority of members entitled to vote, if any, or by the vote of a majority of a quorum of members entitled to vote, if any, at a meeting of members called and noticed as a special meeting for the purpose of changing the Bylaws.

## ARTICLE 10.   AMENDMENT OF ARTICLES

### SECTION 1.   AMENDMENT OF ARTICLES BEFORE ADMISSION OF MEMBERS

Before any member, other than the incorporators, have been admitted to the corporation, any amendment of the Articles of Incorporation may be adopted by a writing signed by two-thirds (2/3) of the incorporators of the corporation.

### SECTION 2.   AMENDMENT OF ARTICLES AFTER ADMISSION OF MEMBERS

After members, other than incorporators, have been admitted to the corporation, amendment of the Articles of Incorporation may be adopted by resolution of the Board of Directors and by the vote or written consent of two-thirds (2/3) of the number of voting members representing a quorum of members.

## ARTICLE 11.   PROHIBITION AGAINST SHARING CORPORATE PROFITS AND ASSETS

### SECTION 1.   PROHIBITION AGAINST SHARING CORPORATE PROFITS AND ASSETS

No member, Director, officer, employee, or other person connected with this corporation, or any private individual, shall receive at any time any of the net earnings or pecuniary profit from the operations of the corporation, provided, however, that this provision shall not prevent payment to any such person of reasonable compensation for services performed for the corporation in effecting any of its purposes as shall be fixed by resolution of the Board of Directors; and no such person or persons shall be entitled to share in the distribution of, and shall not receive, any of the corporate assets on dissolution of the corporation.  All members, if any, of the corporation shall be deemed to have expressly consented and agreed that on such dissolution or winding up of the affairs of the corporation, whether voluntarily or involuntarily, the assets of the corporation, after all debts have been satisfied, then remaining in the hands of the Board of Directors shall be distributed as required by the Articles of Incorporation of this corporation and not otherwise.

## WRITTEN CONSENT OF DIRECTORS ADOPTING BYLAWS

We, the undersigned, are all of the persons named as the first Directors in the Articles of Incorporation of Schwartz Foundation, a California corporation, and pursuant to the authority granted to the Directors in ARTICLE SIX of said Articles and by ARTICLE THREE, Section 14 of these Bylaws, to

take action by unanimous written consent without a meeting, consent to, and hereby do, adopt the foregoing Bylaws, consisting of 11 pages, as the Bylaws of said corporation.

DATED: _____12/1/79_____

Robert A. D. Schwartz, Director

Donald C. Schwartz, Director

Thom R. Picarello, Director

**EXHIBIT 4**

ELECTRONICALLY RECEIVED
1/7/2022 9:39 AM

Electronically Filed
Superior Court of California
County of Santa Cruz
January 10, 2022
Alex Calvo, Clerk
By Deputy, Gonzalez, Sandra

1    David A. Stein, SBN# 102556
     dstein@donahue.com
2    Jessica M. Takano, SBN# 184079
     jtakano@donahue.com
3    Diea D. Schum, SBN# 332950
     dschum@donahue.com
4    DONAHUE FITZGERALD LLP
     Attorneys at Law
5    1999 Harrison Street, 26th Floor
     Oakland, California 94612-3520
6    Telephone:      (510) 451-3300
     Facsimile:      (510) 451-1527
7
     Attorneys for Plaintiffs
8    SCHWARTZ FOUNDATION, MARGOT
     SCHWARTZ, and NOAH SCHWARTZ
9

10               SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   IN AND FOR THE COUNTY OF SANTA CRUZ

12

13   Schwartz Foundation, a California       Case No. 21CV00416
     corporation; Margot Schwartz, an
14   individual; and Noah Schwartz, an       **[PROPOSED] ORDER GRANTING
     individual,                             DEFENDANTS' MOTION FOR
15                                           TEMPORARY PROTECTIVE ORDER**
                   Plaintiffs
16
          v.
17
     Donald C. Schwartz, an individual;      Date:       December 17, 2021
18   Paul D. Schwartz, an individual;        Time:       8:30 a.m.
     Charles P. Schwartz, III, an individual; Dept.:     5
19   David Richard Schwartz, an individual;  Judge:      Hon. Timothy Volkmann
     Stevon S. Schwartz, an individual;
20   and DOES 1-50, inclusive,

21                 Defendants.

22

23

24

25

26

27

28

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

2       This matter came on for hearing on December 17, 2021, at 8:30 a.m., in Department 5 of

3   the above-entitled Court, located at 701 Ocean Street, Santa Cruz, California. Daniel J. Russo and

4   Donald C. Schwartz appeared for all Defendants. Jessica M. Takano appeared for all Plaintiffs.

5   Howard A. Slavitt appeared for third party Mechanics Bank.

6       The Court, having duly considered all papers submitted by the parties, as well as the

7   argument presented during the hearing, hereby adopts its tentative ruling issued in advance of the

8   hearing, a true and correct copy of which is attached hereto as Exhibit 1.

9       IT IS SO ORDERED.

10

11  Dated: _____1/7/2022 5:16:38 PM_____            _____

12                                                     Hon. Timothy Volkmann
                                                       Judge of the Superior Court
13

14

15  **Approved as to Form**:

16

17  Dated: _____            _____

18                                              Daniel J. Russo, Esq.
                                                Attorney for Michael L. Osterberg, Donald C.
19                                              Schwartz, Stevon S. Schwartz, Paul D. Schwartz,
                                                David R. Schwartz, Charles P. Schwartz, III
20

21

22

23

24

25

26

27

28

EXHIBIT 1

**LAW AND MOTION TENTATIVE RULINGS**
**DATE: DECEMBER 17, 2021 TIME: 8:30 A.M.**

**MOTION FOR TRO/PRELIMINARY INJUNCTION RESTRAINING PLAINTIFFS FROM SELLING ASSET**

The motion to prevent Plaintiffs from selling the Eden Roc apartment complex is granted.

While the Court acknowledges the additional interest, loan prepayment fees and trustees' fees if the loan is refinanced and the Property held for another three years, mediation and trial are set for February 2022 at which time an agreement will be reached or  determination  made as to who the officers and directors are, whether another election should be held etc.

4

**EXHIBIT 5**

**ELECTRONICALLY RECEIVED**
**1/7/2022 9:39 AM**

Electronically Filed
Superior Court of California
County of Santa Cruz
January 10, 2022
Alex Calvo, Clerk
By Deputy, Gonzalez, Sandra

1   David A. Stein, SBN# 102556
    dstein@donahue.com
2   Jessica M. Takano, SBN# 184079
    jtakano@donahue.com
3   Diea D. Schum, SBN# 332950
    dschum@donahue.com
4   DONAHUE FITZGERALD LLP
    Attorneys at Law
5   1999 Harrison Street, 26th Floor
    Oakland, California 94612-3520
6   Telephone:    (510) 451-3300
    Facsimile:    (510) 451-1527
7
    Attorneys for Plaintiffs
8   SCHWARTZ FOUNDATION, MARGOT
    SCHWARTZ, and NOAH SCHWARTZ
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  IN AND FOR THE COUNTY OF SANTA CRUZ

12

13   Schwartz Foundation, a California          Case No. 21CV00416
     corporation; Margot Schwartz, an
14   individual; and Noah Schwartz, an          **[PROPOSED] ORDER GRANTING**
     individual,                                **DEFENDANTS' MOTION TO PRECLUDE**
15                                              **PLAINTIFFS FROM USING SCHWARTZ**
                     Plaintiffs                 **FOUNDATION FUNDS TO PAY**
16                                              **ATTORNEYS' FEES AND COSTS**
            v.
17
     Donald C. Schwartz, an individual;
18   Paul D. Schwartz, an individual;          Date:        December 17, 2021
     Charles P. Schwartz, III, an individual;  Time:        8:30 a.m.
19   David Richard Schwartz, an individual;    Dept.:       5
     Stevon S. Schwartz, an individual;        Judge:       Hon. Timothy Volkmann
20   and DOES 1-50, inclusive,

21                   Defendants.

22

23

24

25

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

2    This matter came on for hearing on December 17, 2021, at 8:30 a.m., in Department 5 of

3    the above-entitled Court, located at 701 Ocean Street, Santa Cruz, California. Daniel J. Russo and

4    Donald C. Schwartz appeared for all Defendants. Jessica M. Takano appeared for all Plaintiffs.

5    The Court, having duly considered all papers submitted by the parties, as well as the

6    argument presented during the hearing, hereby adopts its tentative ruling issued in advance of the

7    hearing, a true and correct copy of which is attached hereto as Exhibit 1.

8    IT IS SO ORDERED.

9

10   Dated: _____    1/7/2022 5:15:19 PM    _____

11                                                              Hon. Timothy Volkmann
                                                                Judge of the Superior Court

12

13

14   **Approved as to Form**:

15

16   Dated: _____    _____

17                                                              Daniel J. Russo, Esq.
                                                                Attorney for Michael L. Osterberg, Donald C.

18                                                              Schwartz, Stevon S. Schwartz, Paul D. Schwartz,
                                                                David R. Schwartz, Charles P. Schwartz, III

19

20

21

22

23

24

25

26

27

28

-1-

EXHIBIT 1

**LAW AND MOTION TENTATIVE RULINGS**
**DATE: DECEMBER 17, 2021 TIME: 8:30 A.M.**

**MOTION TO PRECLUDE PLAINTIFFS FROM USING SCHWARTZ FOUNDATION FUNDS**

Because Plaintiffs' action is in the nature of an equitable proceeding in which the court will consider all matters necessary to a proper determination of the validity of the contested election, and also all matter necessary to a just direction of the relief required in each instance, (*See Lawrence v. I.N. Parlier Estate Co.* (1940) 15 Cal.2d 220, 227; *Goss v. Edwards* (1977) 68 Cal.App.3d 264; *Haah v. Kim* (2009) 175 Cal.App.4th 45, 53.), going forward,  Plaintiffs may not use any Foundation funds to reimburse their attorney's fees until the Court makes a

**LAW AND MOTION TENTATIVE RULINGS**
**DATE: DECEMBER 17, 2021 TIME: 8:30 A.M.**

determination at the conclusion of trial as to who the officers and directors should be, whether a new election should be held, etc.

**Requests for Judicial Notice**

**Defendants' RJN**

1. Declaration of Margot Schwartz in support of Schwartz Foundation's Ex Parte Application filed in action number 21CV00032: Granted.

2. The Articles of Incorporation filed November 14, 1979 for the Schwartz Foundation: Granted.

3. The Bylaws of the Schwartz Foundation dated December l, 1979: Granted.

4. The minutes of a special meeting of the Board of Directors of the Schwartz Foundation dated November 4, 1983: Granted.

5. Declaration of Shirley McGlaughlin in Support of ex parte application in action number 21CV00032: Granted